# EXHIBIT 1

**To Plaintiff's Motion to Stay**

# Case No. 25-10297-DD

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR 01 2026

David J. Smith
Clerk

**Lawrence Meadows**

*Plaintiff-Appellant*

v.

**American Airlines, Inc.**

*Defendant-Appellee*

Appeal from the United States District Court
for the Southern District of Florida

Case No. 1:24-cv-20518-DPG

---

## APPELLANT'S REPLY BRIEF

---

Dated: March 30th, 2026

Lawrence M. Meadows
1900 Sunset Harbour Dr., 2112
Miami Beach, FL33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com
**Pro Se Appellant**

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, Lawrence M. Meadows ("Meadows"), pursuant to Eleventh Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate Disclosure Statement. The following parties have an interest in the outcome of this case or appeal:

1. American Airlines, Inc. (Appellee);

2. American Airlines Group Inc. (corporate parent of Appellee);

3. DellaBetta, Matthew M. (Appellee's counsel);

4. Gayles, Hon. Darrin P. (United States District Judge);

5. Goodman, Hon. Jonathan (United States Magistrate Judge);

6. Kolaya, Timothy A. (Appellee's counsel);

7. Meadows, Lawrence (pro se Appellant);

8. O'Melveny & Myers LLP (Appellee's counsel's firm);

9. Robertson, Mark W. (Appellee's counsel);

10. Stumphauzer Kolaya Nadler & Sloman, PLLC (Appellee's counsel's firm);

11. Stumphauzer, Ryan K. (Appellee's counsel);

12. Wood, Kelly S. (Appellee's counsel); and

13. Zarrow, Jason (Appellee's counsel).

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned

certifies that he is a natural person and not a corporation.

Lawrence M. Meadows

*Pro Se* Appellant

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT...................................................................... C1

TABLE OF CONTENTS...................................................................... i

TABLE OF AUTHORITIES.................................................................. iii

ARGUMENT............................................................................... 1

I. INTRODUCTION: AMERICAN'S DEFENSES COLLAPSE UNDER THE
WEIGHT OF ITS FRAUD ON THIS COURT............................................. 1

II. AMERICAN PERPETRATED A FRAUD ON THIS COURT BY
PROFFERING A SETTLEMENT AGREEMENT PREDICATED ON A
DEMONSTRABLY FALSE PRETEXT................................................... 3

A. American Knowingly Misrepresented the Status of Grievance 12-011........... 4

B. American Mischaracterized Grievance 12-012 to Create a False Distinction.... 5

III. AMERICAN'S FRAUD IS IRREFUTABLE PROOF OF PRETEXT, AND
ITS SUBSTANTIVE DEFENSES FAIL AS A MATTER OF LAW AND
EQUITY.................................................................................. 6

A. The Doctrine of Unclean Hands Bars American's Reliance on Estoppel......... 6

B. The Settlement Agreement Is a New, Discrete Act of Retaliation That Renders
Appellant's Claims Timely and Establishes a Viable ADA Claim.................. 8

C. American's Reliance on *Stanley* Is Eviscerated by its Own Discriminatory
Actions.................................................................................. 9

D. Appellant's ADA Claims Are Not Preempted by the Railway Labor Act...... 10

CONCLUSION............................................................................ 12

CERTIFICATE OF COMPLIANCE....................................................... 14

CERTFICATE OF SERVICE……….…………………………....………….. 16

## <u>**TABLE OF AUTHORITIES**</u>

### <u>**Cases**</u>

*Batuyong v. Gates*, 337 F. App'x 451 (6th Cir. 2009)..................................... 10

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)........................... 3

*Brown v. Illinois Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001)................... 11

*Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994)................................ 11

*In re AMR Corp.*, 2022 WL 1556398, at *1.................................................. 4

*Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005)... 11

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)........................ 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........................................... 7

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806 (1945)... 8

*Pyles v. United Air Lines, Inc.*, 79 F.3d 1046 (11th Cir. 1996)...................... 11

*Rozier v. Ford Motor Co.*, 573 F.2d 1332 (5th Cir. 1978)............................. 3

*Stanley v. City of Sanford*, 83 F.4th 1333 (11th Cir. 2023).............. 1, 3, 9, 10

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir. 1997)............................................................................................... 9

*Williams v. Montgomery*, 742 F.2d 586 (11th Cir. 1984)............................. 9

### <u>**Statutes**</u>

42 U.S.C. § 12111(8) Americans with Disabilities Act ("ADA").................... 10

45 U.S.C. §151 et. seq. Railway Labor Act ("RLA").................................. 10

### <u>**Rules**</u>

Fed. R. App. P. 32...................................................................... 14

Fed. R. Civ. P. 11(b)(3)................................................................. 3

**ARGUMENT**

## I. INTRODUCTION: AMERICAN'S DEFENSES COLLAPSE UNDER THE WEIGHT OF ITS FRAUD ON THIS COURT

Appellee American Airlines, Inc. ("American") asks this Court to affirm a dismissal predicated on procedural defenses - estoppel, timeliness, and a flawed misapplication of *Stanley v. City of Sanford*, 83 F.4th 1333 (11th Cir. 2023). These arguments are a smokescreen designed to obscure the merits of its discriminatory and retaliatory refusal to reinstate formerly disabled Appellant Lawrence Meadows - now a fully qualified individual who meets all essential job functions of an American Airlines pilot — who was targeted for engaging in protected activity. This strategy of obstruction, however, has now crossed into sanctionable misconduct before this very Court.

At its own request, American moved to supplement the record with a settlement agreement it claims justifies its actions (ECF No. 30). This Court granted the motion, making the agreement part of the appellate record (ECF No. 40). That agreement is a confession of pretext. It is predicated on a material and demonstrably false statement: that Appellant's individual reinstatement "Grievance 12-011" seeking reinstatement was "disposed of and closed … in 2013." (Appellant's Supplemental Appendix ["ASA"] at 2, ¶ 2).[1] As this brief will demonstrate, record

---

[1] All citations to the Appellant's Appendix filed with the opening brief are designated as "(AA, Vol. [I, II, or III], Tab [##], at [p. ##])," referencing the

evidence - including prior federal court orders to which American was a party and which were explicitly cited in Appellant's Opening Brief - proves this is a fabrication.

American's fraud is the ultimate proof of pretext.

It shows American had to invent a reason to exclude Appellant from the return-to-work process ("RTW") it offered to the other formerly disabled MDD[2] pilots who were "Identified Individuals" in the settlement agreement - proving its true motive was retaliatory. This misconduct eviscerates American's procedural defenses. A party that comes to Court with unclean hands cannot seek refuge in equitable doctrines like estoppel.

---

district court ECF docket number used as the tab and the page number from that specific district court pleading. Citations to the separately filed Appellant's Supplemental Appendix are designated as "(ASA at [p. #])."

[2]    MDD ("Medically Disability Dropped from AA Seniority List") is the classification for pilots administratively dropped from the seniority list for exceeding five years on disability, which the pilots' union, the APA, protested was a violation of the American pilots' collective bargaining agreement ("CBA') and past practice. The "Identified Individuals" in the settlement agreement were all MDD pilots. (ASA at 2, ¶ 1). Of the 55 MDD pilots who obtained FAA medical certification and sought reinstatement, only three were denied: Appellant, Kathy Emery, and Susan Twitchell. All three had sued American and their union, the APA, and filed EEOC charges. Emery and Twitchell took settlements waiving reemployment rights, leaving Appellant as the only MDD pilot denied reinstatement. (AA, Vol. I, Doc 22, at p. 6, n.2).

The fraudulent settlement agreement itself is a new, discrete act of retaliation, rendering Appellant's claims timely and viable. And American's reinstatement of other MDD pilots proves its reliance on *Stanley* is disingenuous. For these reasons, the district court's judgment must be reversed.

## II. AMERICAN PERPETRATED A FRAUD ON THIS COURT BY PROFFERING A SETTLEMENT AGREEMENT PREDICATED ON A DEMONSTRABLY FALSE PRETEXT

An attorney's duty of candor to the tribunal is paramount.

By filing its Motion to Supplement, American's counsel certified that its factual contentions had evidentiary support after a reasonable inquiry. Fed. R. Civ. P. 11(b)(3). American's failure to adhere to this basic standard is spectacular. Such conduct amounts to a fraud on the court, which is "distinguished by the fact that it is a wrong against the institutions set up to protect and safeguard the public." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).[3] By proffering a settlement agreement predicated on a demonstrably false statement of fact, American has engaged in precisely such a scheme.

This conduct is not merely sanctionable; it provides this Court with dispositive, record-based evidence that American's stated rationale for its actions was pretextual.

---

[3]    Decisions of the former Fifth Circuit handed down prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

3

**A. American Knowingly Misrepresented the Status of Grievance 12-011.**

The settlement agreement states the reason for Appellant's exclusion is that his **individual reinstament "Grievance 12-011" was "disposed of and closed… in 2013…"** (ASA at 2, ¶ 2). This is false, and the record proves it.

**First,** on September 5, 2014 - a year after the Appellant's individual reinstament grievance 12-011was supposedly "closed" - the Honorable Judge Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York ordered that, notwithstanding any injunction, **"Meadows shall be permitted to arbitrate Grievance 12-011…"** (AA, Vol. II, Tab 76, Ex. D, at p. 22).

**Second,** on November 8, 2021, Judge Lane issued a subsequent order stating: **"The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence) …** and the parties retain their respective legal positions on the validity and status of those grievances." (AA, Vol. II, Tab 76, Ex. E, at p. 25).

**Third,** the record reflects that Appellant's **Grievance 12-011 specifically alleged that American, in response to Appellant's disability, had engaged in "improper assertions and actions" related to his "employment status, seniority, and discharge" in violation of the CBA and the ADA.** (*In re AMR Corp.*, 2022 WL 1556398, at *1, cited in AA, Vol. II, Tab 76, at p. 9). Furthermore, in a 2022 proceeding related to the bankruptcy, American's own counsel confirmed on the record that **"the process of fully litigating Grievance 12-011 … is unaffected by**

debtors' objection…[and] is on a separate track." (*Id.*, cited in AA, Vol. II, Tab 76, at p. 11).

Appellant's Opening Brief put American on direct notice of this history. (Op. Br. at 11-12, 14, 16, 38-39, n.8). For counsel to then proffer a document claiming the opposite is not an innocent mistake. It is an intentional misrepresentation.

## B. American Mischaracterized Grievance 12-012 to Create a False Distinction.

American's motion to supplement focused exclusively on the **collective, class-action style reinstatement Grievance 12-012**, arguing Appellant was different from the reinstated pilots because he received a "notice of termination" and they did not. (ECF No. 30 at 2). This argument is defective for two reasons.

**First,** American deliberately ignores the dual nature of Grievance 12-012, which not only protested the company's violation of the CBA and past practice not only for **"failing to provide pilots notice of termination prior to terminating employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years"**, but also for **"failing to reinstate pilots to the Pilots' Seniority System List."** (AA, Vol. I, Doc 67, Ex. 5). The grievance was always about seeking reinstatement of MDD pilots like Appellant, a fact American now conveniently omits.

**Second,** the settlement agreement itself concedes the sole initial notice Appellant received from a non-supervisory administrator "may not have been

5

compliant in form." (ASA at 2, ¶ 2). The record shows why: it was not issued by

Appellant's supervisor, his Miami Base Chief Pilot (the only individual with

authority to terminate a pilot), and failed to provide him the "just cause" due

process rights of initial notice, investigation, hearing and final written notice

guaranteed by Section 21 of the CBA. (AA, Vol. I, Doc 67, ¶ 31). American's

attempt to build a wall between Appellant and the other pilots is based on a "non-

compliant" notice they admit was likely invalid.

## III. AMERICAN'S FRAUD IS IRREFUTABLE PROOF OF PRETEXT, AND ITS SUBSTANTIVE DEFENSES FAIL AS A MATTER OF LAW AND EQUITY

### A. The Doctrine of Unclean Hands Bars American's Reliance on Estoppel.

American's primary defense is that Appellant is judicially estopped from

pursuing his claims because a prior court deemed him "terminated." (Appellee Br.

at 19-25). This argument fails on the facts, misrepresents the prior court's ruling,

and is barred by American's own misconduct.

**First,** American's factual premise is flawed. Notwithstanding the

"terminated" label, Appellant has, since 2011, continuously received collectively

bargained long-term disability benefits, under American's Pilot Long Term

Disability Plan and Retirement Benefit Plan, in the form of taxable "Pilot Employee"

W-2 wages, a full "Active Pilot Employee" benefits package, and continuous

uninterrupted accrual of pension "Credited Service." (AA, Vol. I, Doc 67, ¶¶ 41-47,

Exs. 7-15). As detailed in Appellant's Opening Brief, the governing collectively bargained plan documents for these benefits define participants as "Employees" and provide that participation ceases upon "Resignation or Discharge." (Op. Br. at 42-43). American's attempt to use a single word taken out of context to erase Appellant's substantive and ongoing employment relationship is disingenuous; under the plain and unambiguous  terms of these plans, Appellant remains a "Participant" and an "Employee."

**Second,** American misrepresents the bankruptcy court's holding. While Judge Lane did use the term "terminated," he immediately qualified it by holding that Appellant's status did not extinguish his right to be reinstated. As the record reflects, Judge Lane stated: "[G]iven your status, whether it's an administrative separation or a termination, you're somebody who has it sounds like has a right to seek a position if you get [FAA] medical clearance..." (AA, Vol. I, Doc 67, Ex. G at 66:22-67:4) (emphasis added). American's estoppel argument conveniently ignores this crucial context, which recognizes the very "changed circumstance" - obtaining an FAA medical certificate - that gives rise to this ADA claim.

Finally, even if American's argument were not so factually and legally flawed, the equitable doctrine of judicial estoppel is unavailable to a party who has acted in bad faith. Judicial estoppel is an equitable doctrine whose purpose is to "protect the integrity of the judicial process." *New Hampshire v. Maine,* 532 U.S. 742, 749-50

(2001). It is not a technical trap for the unwary. Here, American seeks to benefit from this equitable doctrine while simultaneously perpetrating a fraud on this very Court. The overriding doctrine of unclean hands dictates that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

American's blatant and documented misrepresentation to this Court regarding the status of Appellant's Grievance 12-011 constitutes precisely the type of inequitable conduct that bars equitable relief. American cannot defraud this Court with one hand while asking for the equitable protection of estoppel with the other.

## B. The Settlement Agreement Is a New, Discrete Act of Retaliation That Renders Appellant's Claims Timely and Establishes a Viable ADA Claim

American argues that Appellant's claims are time-barred and that he fails to state a viable claim for post-termination retaliation. (Appellee Br. at 28-38). This is wrong. The 2025 settlement agreement, which reinstated three similarly situated formerly long term disabled MDD pilots but excluded Appellant based on a fraudulent pretext, is a **new and discrete act of discrimination and retaliation**. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (each discrete discriminatory act starts a new clock).

Moreover, the ADA's anti-retaliation provision protects former employees from post-employment adverse actions. This Court has long recognized that a former employee states a viable claim for retaliation when an employer's post-employment

8

actions - such as providing a negative reference, a refusal to hire or rehire, or, as here, blacklisting an individual from a reinstatement process - harm the former employee's prospects.

> In *Williams v. Montgomery*, this Court held that **"a former employee may bring a suit against his former employer for acts of retaliation ... for exercising his Title VII rights."** 742 F.2d 586, 588 (11th Cir. 1984). **This framework applies with equal force to the ADA**. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). [Emphasis Added].

American's 2025 refusal to reinstate Appellant, predicated on a fraudulent settlement, is a classic example of post-termination retaliation against a former employee for engaging in protected activity (filing whistleblower complaints involving American's pilot disability cost savings scheme, EEOC charges of ADA discrimination and retaliation, and federal lawsuits). It is a new, actionable wrong, and Appellant's claims are therefore timely and viable.

## C. American's Reliance on *Stanley* Is Eviscerated by its Own Discriminatory Actions.

American's argument that Appellant is not a "qualified individual" under the ADA rests on its flawed analogy to the retiree plaintiff in *Stanley*. (Appellee Br. at 33-38). This fails for two dispositive reasons.

**First,** unlike the plaintiff in *Stanley* who "neither held nor desired to hold an employment position," Appellant has consistently and actively sought reinstatement through American's RTW process. The very existence of his individual Grievance

9

12-011, a grievance alleging both CBA and ADA violations, is protected activity and undeniable proof that Appellant "desires" employment. 42 U.S.C. § 12111(8) American's with Disabilities Act ("ADA"); *see also Batuyong v. Gates*, 337 F. App'x 451, 456 (6th Cir. 2009) (**grievances can be Title VII protected activity if they are related to employment discrimination**). [Empasis added].

**Second,** American's argument is fatally contradicted by its own actions. By creating a reinstatement process for the other "Identified Individuals" who were similarly "on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company," before American's bankruptcy pre-petition date, (ASA at 2, ¶ 1); American judicially admitted that a return-to-work path existed and that these individuals were qualified candidates, and not barred by the bankruptcy injunction.

American's argument that Appellant - who was equally qualified and actively seeking reinstatement - is somehow disqualified is legally incoherent. The only material distinction between Appellant and the reinstated pilots is that Appellant engaged in protected activity by filing EEOC charges and federal lawsuits against American and its pilots' union, the APA. (Op. Br. at 6, n.2). Proving American's reliance on *Stanley* was disingenuous.

**D. Appellant's ADA Claims Are Not Preempted by the Railway Labor Act.**

10

American argues that Appellant's claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §151 et. seq., because they require interpretation of the CBA. (Appellee Br. at 40-42). This argument misapprehends the controlling law. The Supreme Court in *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994), established that while claims that are "substantially dependent" on an analysis of a CBA are preempted, claims that allege violations of independent federal statutory rights are not. Id. at 266.

This Circuit, applying *Hawaiian*, has been clear that preemption is a narrow exception. Citing *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046 (11th Cir. 1996), American argues for preemption but omits the Eleventh Circuit's crucial caution: "The fact that reference to a CBA may be required, particularly where factual issues are involved, is insufficient of itself to preempt...; only where interpretation of a CBA is required will the claim be preempted." *Id.* at 1050 (citation omitted).

Appellant's claims fall squarely into the non-preempted category. He alleges disparate treatment and retaliation in violation of the ADA - rights that are created by federal statute, not by the CBA. Here, the CBA and the grievances are referenced not to interpret disputed contractual rights, but as factual evidence of American's discriminatory conduct, its pretextual reasoning, and its retaliatory motive. As the Seventh Circuit clarified in *Brown v. Illinois Central R.R. Co.*, a disparate treatment or retaliation claim is not preempted where the CBA is merely consulted for context.

254 F.3d 654, 668 (7th Cir. 2001). Because Appellant's claims are not "substantially dependent" on interpreting the CBA, they are not preempted. See *Hawaiian Airlines,* 512 U.S. at 266.

In sum, this Court has long held that a plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). Here, **American's explanation for excluding Appellant - that his individual "grievance 12-011" was "disposed of and closed ... in 2013" - is not merely "unworthy of credence"; it is a proven falsehood based on the appellate record.**

The pretext is manifest.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's judgment of dismissal and remand this case for proceedings on the merits.

Respectfully submitted,

Dated: March 30, 2026

12

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-4, I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 2,723 words, excluding the parts of the motion exempted by Rule 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 30th day of March 2026,

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, **Lawrence M. Meadows, Pro Se Appellant, hereby certify,** that on

March 30, 2026, a true and correct copy of the foregoing was filed via Federal

Express with the Eleventh Circuit Clerk, and also served via Federal Express upon

counsel of record in the Service List below.

_____
Signature of Filer

### SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329
Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19

15

LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy A. Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

USCA11 Case: 25-10297    Document: 44-1    Date Filed: 04/01/2026    Page: 24 of 24

Part # 156297-435 RRD52 EXP 02/27

SHIP DATE: 30MAR26
ACTWGT: 0.95 LB
CAD: 6570517/ROSA2710

ORIGIN ID:MPBA  (516) 982-7718
LAWRENCE MEADOWS
1900 SUNSET HARBOUR DR 2112

MIAMI BEACH, FL 33139
UNITED STATES US

TO US COURT OF APPEALS 11TH CIR.
ATTN: CLERK OF COURT
56 FORSYTH STREET NORTHWEST

ATLANTA GA 30303
(404) 335-6100

INV:
PO:                    DEPT:

REF:

FedEx
Express

WED – 01 APR 10:30A
MORNING 2DAY

30303
GA-US    ATL

TRK#  8701 3445 6058
0201

SP QFEA

Envelope

Recycle me.

529-2008

# EXHIBIT 2
### To Plaintiff's Motion to Stay

# No. 25-10297-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



**LAWRENCE MEADOWS,**
Plaintiff-Appellant,

v.

**AMERICAN AIRLINES, INC.,**
Defendant-Appellee.

Appeal from the U.S. District Court
for the Southern District of Florida
Hon. Darrin P. Gayles
No. 1:24-cv-20518-DPG

## APPELLANT'S MOTION FOR SANCTIONS AGAINST APPELLEE AND ITS COUNSEL PURSUANT TO FED. R. CIV. P. 11, FED. R. APP. P. 46, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant, Lawrence M. Meadows ("Meadows"), pursuant to Eleventh

Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate

Disclosure Statement. The following parties have an interest in the outcome of this

case or appeal:

1. American Airlines, Inc. (Appellee);

2. American Airlines Group Inc. (corporate parent of Appellee);

3. DellaBetta, Matthew M. (Appellee's counsel);

4. Gayles, Hon. Darrin P. (United States District Judge);

5. Goodman, Hon. Jonathan (United States Magistrate Judge);

6. Kolaya, Timothy A. (Appellee's counsel);

7. Meadows, Lawrence (pro se Appellant);

8. O'Melveny & Myers LLP (Appellee's counsel's firm);

9. Robertson, Mark W. (Appellee's counsel);

10. Stumphauzer Kolaya Nadler & Sloman, PLLC (Appellee's counsel's firm);

11. Stumphauzer, Ryan K. (Appellee's counsel);

12. Wood, Kelly S. (Appellee's counsel); and

13. Zarrow, Jason (Appellee's counsel).

1Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned certifies

that he is a natural person and not a corporation.

C1 of C2

**Lawrence M. Meadows**
*Pro Se* Appellant

**APPELLANT'S MOTION FOR SANCTIONS AGAINST APPELLEE AND ITS COUNSEL PURSUANT TO FED. R. CIV. P. 11, FED. R. APP. P. 46, 28 U.S.C. § 1927, AND THE COURT'S INHERENT AUTHORITY**

## PRELIMINARY STATEMENT

Plaintiff-Appellant Lawrence M. Meadows, proceeding *pro se*, respectfully moves for an order imposing sanctions on Defendant-Appellee American Airlines, Inc. ("American") and its counsel of record, Mark W. Roberston, Kelly S. Wood, and Jason Zarrow, of O'Melveny & Myers LLP; and Ryan K. Stumphauzer, Timothy A. Kolaya, and Matthew M. Dellabetta of Stumphauzer Kolaya Nadler & Sloman, PLLC, for conduct violating Federal Rule of Civil Procedure 11, as made applicable by Federal Rule of Appellate Procedure 46, as well as 28 U.S.C. § 1927 and this Court's inherent authority to sanction bad-faith litigation conduct.

Counsel for American has perpetrated a fraud on this Court by filing a motion to supplement the record (ECF No. 30) that contained a material and demonstrably false statement of fact.

## FACTUAL BACKGROUND

1.     On October 6, 2025, counsel for American filed a "Motion to Supplement the Record on Appeal" (ECF No. 30), which this Court granted on March 16, 2026 (ECF No. 40). The motion's central purpose was to introduce a 2025 Settlement Agreement to explain why Appellant was excluded from a reinstatement process.

2.      Specifically, the Settlement Agreement paragraph 2. states as the express pretext for excluding Appellant that **his individual grievance, "Grievance 12-011",** was **"disposed of and closed…in 2013."** A true and correct copy of the Settlement Agreement is attached as **Exhibit A**.

3.      This representation is demonstrably false and is directly contradicted by multiple judicial records to which American and its counsel were parties, all of which are part of the record on appeal.

4.      **The 2014 Order:** On September 5, 2014 - *after* the grievance was supposedly "closed" - the Honorable Judge Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York **issued an order stating that Appellant "shall be permitted to arbitrate Grievance 12-011."** (AA, Vol. II, Tab 76-2, Ex. D, at p. 22). A true and correct copy of the 2014 Order is attached hereto as **Exhibit B**.

5.      **The 2021 Order:** On November 8, 2021, Judge Lane issued a subsequent order stating: **"The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence)…** and the parties retain their respective legal positions on the validity and status of those grievances." (AA, Vol. II, Tab 76-2, Ex. E, at p. 25, ¶ 3). A true and correct copy of the 2021 Order is attached hereto as **Exhibit C**.

6. **The 2022 Admission:** The record further reflects that Grievance 12-011 specifically alleged that American, in response to Appellant's disability, had engaged in "improper assertions and actions" related to his "employment status, seniority, and discharge" in violation of the CBA and the ADA. (*In re AMR Corp.*, 2022 WL 1556398, at *1, cited in AA, Vol. II, Tab 76, at p. 9). Furthermore, in a 2022 proceeding related to the bankruptcy, American's own counsel confirmed on the record that "**the process of fully litigating Grievance 12-011 … is unaffected by debtors' objection…[and] is on a separate track.**" (*Id.*, cited in AA, Vol. II, Tab 76, at p. 11).

7. **The 2024 Corroboration:** Finally, these judicial records and admissions are corroborated by the sworn declaration of former APA President, Captain Edward Sicher, submitted on January 28, 2026, in the parallel litigation of *Meadows v. Allied Pilots Ass'n*. (S.D. Fla., No. 17-cv-22589-EA, ECF No. 180-3, ¶¶ 27, 30). **Captain Sicher attests that he directed Grievance 12-011 to be moved forward for arbitration in June 2024, and that it was still active awaiting an arbitration hearing as of October 7, 2024.** A true and correct copy of Captain Sicher's declaration is attached as **Exhibit D.**

8. American's counsel, particularly Mark W. Robertson, was deeply involved in these proceedings. The representation to this Court that Appellant

3

Meadows Grievance 12-011 was "disposed of closed...in 2013", was therefore made either with knowledge of its falsity or with a reckless disregard for the truth that falls far below the standard of "reasonable inquiry" required by Rule 11.

## ARGUMENT

By submitting a filing containing a material falsehood, American's counsel has violated multiple rules of professional conduct.

### I. **Violation of Rule 11.**

Federal Rule of Civil Procedure 11(b)(3), made applicable to this Court by Fed. R. App. P. 46, requires an attorney to certify that factual contentions in a filing have evidentiary support after a reasonable inquiry. Counsel's representation was directly contradicted by multiple orders and admissions on their own client's litigation dockets, which were also part of the record in this very case. This conduct is sanctionable.

### II. **Violation of 28 U.S.C. § 1927.**

By submitting a document with a false pretext, counsel has "unreasonably and vexatiously" multiplied these proceedings, forcing Appellant to expend significant resources to refute a fabricated justification.

### III. **Fraud on the Court.**

This conduct is not a mere mistake but rises to the level of a fraud on the court - a "fraud that is directed to the judicial machinery itself." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Counsel sought to have a false statement formally entered into the appellate record to gain an unfair litigation advantage, thereby subverting the integrity of the appellate process.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the Court enter an order imposing sanctions on Appellee American Airlines, Inc. and its counsel, and granting any other relief this Court deems just and proper.

Respectfully submitted,

Dated: March 25, 2026

Lawrence M. Meadows
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-4, I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains   words, excluding the parts of the motion exempted by Rule 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 25th day of March 2026,

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant, hereby certify,** that on

March 25, 2026, a true and correct copy of the foregoing was served via Email and

Federal Express upon all counsel of record at the addresses listed on the Service

List below, pursuant to Fed. R. Civ. P. 11(c)(2).

Signature of Filer

## SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329
Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19

LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

## SECOND CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant, hereby certify**, that:

1.       On March 25, 2026, at 4:17 PM EDT, the foregoing Motion for Sanctions was served upon all counsel of record for Appellee via Email and Federal Express Overnight Delivery, pursuant to the 21-day safe harbor provision of Federal Rule of Civil Procedure 11(c)(2).

2.       On March 31, 2026, Appellee's counsel notified Appellant that they did not intend to withdraw the challenged filing.

3.       The 21-day safe harbor period having now expired, on this 16th day of April, 2026, a true and correct copy of the foregoing Motion for Sanctions was filed with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit via Federal Express and was served upon all counsel of record via Email and Federal Express to their respective firms' addresses of record.

Signature of Filer

### SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329

9

Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19
LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

10

**Exhibits:**

**A.** Settlement Agreement (from ECF No. 30-1)
**B.** Bankruptcy Court Order dated September 5, 2014
**C.** Bankruptcy Court Order dated November 8, 2021
**D.** Declaration of Edward Sicher (ECF 180-3, *Meadows v. APA*

**EXHIBIT A**

## SETTLEMENT AGREEMENT

### Between

### AMERICAN AIRLINES, INC.

### and the

### ALLIED PILOTS ASSOCIATION

American Airlines, Inc., including its subsidiaries, affiliates, and parent companies, (collectively "American" or "Company"), and the Allied Pilots Association ("APA" or "Union") (collectively referred to as the "Parties"), mutually desire to settle and resolve Sicher Expedited Presidential Grievance 23-031 (converted from DFW Domicile Grievance No. 12-012). Accordingly, the Parties hereby agree to the following terms to compromise, settle, fully and finally resolve Sicher Expedited Presidential Grievance 23-031, including the underlying DFW Domicile Grievance No. 12-012, in its entirety, as follows:

WHEREAS, on May 22, 2012, the APA DFW Domicile Representatives filed Grievance No. 12-012 protesting the Company's alleged violation of the 2003 Collectively Bargained Agreement for failing to provide pilots notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five (5) years; and

WHEREAS, on March 13, 2023, the APA converted the DFW Domicile Grievance No. 12-012 into Sicher Expedited Presidential Grievance 23-031 (collectively with DFW Domicile Grievance No. 12-012, the "Presidential Grievance"). The Presidential Grievance continued to protest the Company's alleged violation of the Collectively Bargained Agreement for failing to provide pilot notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years; and

WHEREAS, in the Presidential Grievance the APA contended that the Company's failure to provide notice to pilots of their impending removal from the seniority list and separation from employment precluded those pilots from either attempting to return to service prior to being dropped from the seniority list and separated from their employment, and/or filing a grievance challenging the Company's decision to drop them from the seniority list and separate them from employment; and

WHEREAS, the remedy sought in the Presidential Grievance was an award ordering the Company to provide affected individuals with notice of their removal from the seniority list and separation from service thereby allowing them to then file a grievance challenging that action based upon the facts that existed at the time the original notice should have been given; and

WHEREAS, the Company contends the APA may not convert a domicile grievance into a presidential grievance and the APA disagrees with same;

WHEREAS, the Company contends the Presidential Grievance is without merit; and

WHEREAS, the Parties conducted a mediation on November 7, 2024, before a Neutral, and

Settlement Agreement                                                                Page 1 of 6

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 43 of 126 PageID
USCA11 Case: 25-10297   Document: #8276 Date Filed: 04/17/2026   Page: 17 of 48

USCA11 Case: 25-10297   Document: 30   Date Filed: 10/06/2025   Page: 13 of 17

through subsequent discussions, reached an agreement to resolve the Presidential Grievance; and

WHEREAS, the Parties desire to avoid further controversy and fully settle and compromise the Presidential Grievance, without any further proceedings.

NOW, THEREFORE, in exchange for the mutual considerations described herein, the sufficiency of which is hereby acknowledged, the Parties agree to fully resolve the Presidential Grievance, as follows:

1. Although no specific pilots are referenced in the Presidential Grievance or the underlying Domicile Grievance, the Parties have identified the following four (4) individuals who were on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company, and have represented that they have since obtained, or have filed paperwork to obtain, an FAA First Class Medical Certificate, and expressed a desire to be reinstated to employment as a pilot with the Company: Timothy Curren (354581), Dale Churovich (354629), Lawrence Meadows (332713), and Roger Wagner (318588) (collectively the "Identified Individuals").

2. One of the Identified Individuals, however, Lawrence Meadows, was provided and received the notice attached as Exhibit A during his prior employment in advance of his removal from the seniority list and separation from employment in 2011, and the Parties agree that none of the other Identified Individuals received similar communications from the Company prior to their separation from employment. Following Mr. Meadows' removal from the seniority list and separation from employment, he filed two grievances challenging the Company's actions. The Company disputes that the notice given was required by the CBA while the APA contends that the notice was required and that the provided notice may not have been compliant in form. However, the APA has concluded that, under the totality of circumstances of this case, it is unlikely to prevail on its argument before the System Board, particularly in light of the fact that Mr. Meadows filed Grievance 12-011 and Grievance 13-064 challenging the Company's decision to separate him from employment at the time. Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them in 2013 and 2014, respectively. As a result, Mr. Meadows is deemed not to be an Eligible Individual under this Agreement, and thus, he is not eligible for reinstatement under this Agreement.

3. Based on the Parties' knowledge, Timothy Curren (354581), Dale Churovich (354629), and Roger Wagner (318588) (collectively "Eligible Individuals") did not receive notice prior to their removal from the seniority list and separation from employment and did not file a grievance challenging the Company's actions at the time. The Eligible Individuals may elect to utilize the process detailed below for possible reinstatement to the Pilot Seniority List and return to employment and active status at the Company, provided they satisfy the conditions detailed below.

4. The Parties agree to offer a one-time opportunity to the Eligible Individuals to utilize the following process for possible reinstatement to the Pilot Seniority List and return to

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 44 of 126 PageID
USCA11 Case: 25-10297    Document: 48277 Date Filed: 04/17/2026    Page: 18 of 48

USCA11 Case: 25-10297    Document: 30    Date Filed: 10/06/2025    Page: 14 of 17

employment with the Company (the "Process for Possible Reinstatement"). The Process for Possible Reinstatement must commence within thirty (30) days of the full execution of this Settlement Agreement. Each Eligible Individual may elect to pursue or may decline to pursue this one-time opportunity to pursue the Process for Possible Reinstatement as described below.

a.    The APA will provide each Eligible Individual with the terms of the Process for Possible Reinstatement and advise them of their right to opt into pursuing reinstatement through the Process for Possible Reinstatement and that, regardless of whether they seek reinstatement, the Presidential Grievance will be withdrawn with prejudice pursuant to this Agreement. In the event an Eligible Individual does not timely and properly opt to pursue the Process for Possible Reinstatement, then the Eligible Individual will have waived his right to pursue the Process for Possible Reinstatement and will have elected not to return to employment with the Company and the APA will not advance any subsequent request for reinstatement, reemployment, or rehire on their behalf.

5.    Process for Possible Reinstatement. The Parties agree the following steps comprise the Process for Possible Reinstatement for the Eligible Individuals:

a.    **Step 1**: In the event an Eligible Individual opts to pursue the Process for Possible Reinstatement, the Eligible Individual must send an email to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org) so indicating no later than thirty (30) consecutive calendar days after the date this Settlement Agreement is fully executed. The Eligible Individual must include a true and correct copy of his First Class Medical Certificate along with the email.

b.    **Step 2**: Within 14 days of providing the Notice in Step 1, the Eligible Individual must execute a General Release (attached as Exhibit B) and email it to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org).

c.    **Step 3**: The Eligible Individual shall submit to and successfully clear the standard pre-employment background checks for American pilots, including PRIA records review, submission to the Rap Back Program, fingerprinting, drug and alcohol testing, and any other standard, pre-employment requirement for New Hire American pilots.

d.    **Step 4**: The Eligible Individual shall execute and submit a request to the FAA for a complete copy of their medical file (commonly referred to as a "Blue Ribbon File") to be released and sent to Natasha Narayan, MD, American's Corporate Medical Director. Dr. Narayan will review the Blue Ribbon File received from the FAA. Dr. Narayan shall have twenty (20) days to review the file upon receipt of same. In the event American's Corporate Medical Director concludes that the Blue Ribbon File is complete and accurate on its face, the Company will accept the determination rendered by the FAA in granting the medical certificate.

In the event American's Corporate Medical Director determines that the Blue Ribbon File indicates a need for further information or clarification in order for the Eligible Individual to continue on the Process for Possible Reinstatement, the Company will notify the Eligible Individual and APA in writing and identify the information/clarification needed. The criteria used in determining whether further information/clarification is necessary will be limited to: (a) suspected non-disclosure of material information; (b) evidence of non-compliance with an established treatment plan, (c) a prescribed treatment plan being inconsistent with a diagnosis or evaluation, or (d) clearance reports from a physician or specialist whose credentials are not consistent with the reported diagnosis. The Eligible Individual will then have the opportunity to provide additional information/clarification in response to the item(s) identified by the Medical Director.

Within ten (10) days of receipt of a response from the Eligible Individual, the Company will notify the Eligible Individual and APA in writing if additional information/clarification is needed and detail the basis for such determination. The Eligible Individual will be given an opportunity to withdraw their reinstatement request in writing to both the Company and the APA within ten (10) days of receipt of notification. If the Eligible Individual elects to withdraw their reinstatement request, then the Company will not take any further action. If the Eligible Individual does not withdraw his request for reinstatement or affirmatively confirms in writing his intention to continue with the reinstatement process under this Agreement, the Company shall copy the pilot on an email submission of Dr. Narayan's request for an FAA aeromedical general review at 9-AMC-GRCustomerSvc@faa.gov. An FAA request for information is not a denial. If the FAA denies the Eligible Individual's medical certificate, such Eligible Individual's reinstatement request shall be denied. If the FAA does not deny the Eligible Individual's medical certificate in response to the request for review, then the FAA determination on the medical certificate will be deemed final and binding with regard to reinstatement of the Eligible Individual.

If the Company seeks a general review of an Eligible Individual's medical certificate and the FAA confirms the medical certificate, the Eligible Individual will be entitled to be paid retroactive to the date the request for FAA general review was made at the hourly pay rate based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold. This period of retro pay will not be included in the 18-month guarantee provided in paragraph 6(b) below. In the event the FAA requests information directly from the Eligible Individual during the general review process, the period of time between when the request is made and when the Eligible Individual responds to the request will not be considered compensable in the event retroactive pay is required under this paragraph.

e.    **Step 5**: If an Eligible Individual successfully completes Steps 1 through 4, he will be reinstated to employment with the Company and placed on the Pilot Seniority list at the number representing approximately where he would have

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 46 of 126 PageID
USCA11 Case: 25-10297    Document: #8279 Date Filed: 04/17/2026    Page: 20 of 48

USCA11 Case: 25-10297    Document: 30    Date Filed: 10/06/2025    Page: 16 of 17

been had he remained continuously employed by the Company ("relative seniority"). Reinstatement will begin effective with the commencement of training.

f.   **Step 6**: The Eligible Individual shall be assigned the first available training spot within three (3) months of the date reinstatement is approved, and will be given five (5) days' notice of same. The Eligible Individual will receive the standard AQP training course proffered to New Hire American pilots, inclusive of the standard remedial training offered to New Hire American pilots. Once the Eligible Individual successfully completes his training, he is considered an active employee and governed by the 2023 AA-APA Agreement and Company policies except as noted herein. In the event the Eligible Individual does not successfully complete training due to a training failure, he will not advance any further on the Process for Possible Reinstatement, and APA will not advance any subsequent request for reinstatement, reemployment, or rehire on his behalf.

6.   The following terms apply to each Eligible Individual who successfully completes the Process for Possible Reinstatement ("Reinstated Pilot"):

a.   Upon successful completion of training, each Reinstated Pilot shall be assigned as a First Officer on a narrow body aircraft until such time as the Reinstated Pilot has accomplished 1,000 hours of flight time as a narrowbody First Officer. After the completion of the required 1,000 hours of flight time, the Reinstated Pilot may exercise his seniority to bid for and be awarded whatever bid status his relative seniority can hold in the first vacancy bid award following completion. Prior to assigning the Reinstated Pilot a narrow body bid status, the Company shall confer with the Reinstated Pilot about his aircraft and base preferences and take such preferences into consideration when assigning the Reinstated Pilot a narrow body bid status.

b.   Compensation will commence once the Eligible Individual successfully completes Steps 1 through 4 above and timely reports for training as directed and described in this Settlement Agreement. Regardless of what seat and equipment is being flown, the Reinstated Pilot's hourly pay rate will be based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold for the first 18 months of his reinstatement. At the conclusion of the first 18 months, the Reinstated Pilot will assume the pay rate associated with whatever bid status the Reinstated Pilot holds at that time.

c.   Upon completion of training, the Reinstated Pilot's vacation bank and sick bank will reflect zero hours and will begin to accrue based upon the pilot's length of service in accordance with the 2023 Agreement. The Parties agree that the terms of LOA 18-001 do not apply to the Eligible Individuals. The Parties agree that the Reinstated Pilot's length of service will reflect the following upon timely reporting for training at the Training Academy:

Timothy Curren (354581) – updated Class Date 1/20/2016 – 9 years

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 47 of 126 PageID
USCA11 Case: 25-10297   Document: #8280 Date Filed: 04/17/2026   Page: 21 of 48

USCA11 Case: 25-10297   Document: 30   Date Filed: 10/06/2025   Page: 17 of 17

Dale Churovich (354629) – updated Class Date 1/29/2017 – 8 years
Roger Wagner (318588) – updated Class Date 2/16/2020 – 5 years

7.  The Parties agree that the Eligible Individuals defined above cannot be changed, expanded, or modified in any way.

8.  The APA agrees to immediately withdraw with prejudice the Presidential Grievance and is resolved on a no citation and no precedence setting basis.

9.  This Agreement does not constitute an admission of any kind by the Company or the APA and is being entered into to avoid the expense and uncertainty of arbitrating the Presidential Grievance.

10. The Parties agree that this Agreement constitutes the complete agreement between the Parties concerning the Presidential Grievance and that no other representations or promises have been made by the Parties in that regard.

11. This Agreement may not be modified in any manner except in a writing signed by both Parties.

**ALLIED PILOTS ASSOCIATION**

By: _____
First Officer Nick Silva
President

Dated: January 15, 2025

**AMERICAN AIRLINES, INC.**

By: _____
Maranda Rosenthal
Managing Director, Labor Relations/Flight
Assoc. General Counsel

Dated: January 15 , 2025

# EXHIBIT B

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 49 of 126 PageID
USCA11 Case: 25-10297    Document: #8282 Date Filed: 04/17/2026    Page: 23 of 48
Case 15-463 sh 205 Doc 12258 Doc Filed 09/05/14 Entered 09/05/14 13:43:58 05 Main Document 1 of
USCA11 Case: 25-10297    Document: (35849 70 6) e Filed: 06/27/2025    Page: 114 of 248

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————x

In re             :     **Chapter 11 Case No.**

                :

**AMR CORPORATION,** *et al.,*     :     **11-15463 (SHL)**

                :

         **Debtors.**    :     **(Jointly Administered)**

                :

————————————————————————x

## ORDER PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 DISALLOWING AND EXPUNGING PROOF OF CLAIM NOS. 13478, 13788, AND 13865 FILED BY LAWRENCE M. MEADOWS

1.  Upon the Objection, dated March 17, 2014 (the "Objection"),[1] of AMR

Corporation and its related debtors, as debtors and reorganized debtors (collectively, the

"Debtors"), pursuant to section 502(b) of title 11 of the United States Code and Rule 3007(a) of

the Federal Rules of Bankruptcy Procedure, seeking to disallow and expunge Proof of Claim

Nos. 13478, 13788, and 13865 filed by Lawrence M. Meadows, all as more fully described in the

Objection; and the Court having jurisdiction to consider the Objection and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and Amended Standing Order of

Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Objection and

the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and

proper notice of the Objection having been provided, and it appearing that no other or further

notice need be provided; and a hearing having been held to consider the relief requested in the

Objection (the "Hearing"); and upon the record of the Hearing and all of the proceedings had

before the Court; and the Court having found and determined that the relief sought in the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 50 of 126 PageID
#8283
USCA11 Case: 25-10297    Document: 48    Date Filed: 04/17/2026    Page: 24 of 48
Case 15-263-sh 05186 12258Doc 0970524 Entered 09/05/14 ot 5c330505/Main DBeg a 2t of
USCA11 Case: 25-10297    Document:(36/29/063e Filed: 06/27/2025    Page: 115 of 248

Objection is in the best interests of the Debtors, creditors, and all parties in interest, and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Objection is granted as provided herein; and it is further

ORDERED that Proof of Claim Nos. 13478, 13788, and 13865 are disallowed and expunged in their entirety; and it is further

ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent ~~that such arbitration is limited in scope to claims involving the interpretation of the CBA and provides remedies, if any and if appropriate, that are customary under the grievance procedures created by the RLA~~ *permitted by applicable law*; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
       September 5, 2014

/s/ Sean H. Lane
United States Bankruptcy Judge

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————x
                                    :
In re                               :        **Chapter 11**
                                    :
**AMR CORPORATION**, *et al.*,        :        **Case No. 11-15463 (SHL)**
                                    :
                **Reorganized Debtor.**  :        **(Jointly Administered)**
                                    :
————————————————————x

### ORDER AUTHORIZING THE STIPULATION AND
### AGREED ORDER FOR PROOF OF CLAIM FILED BY
### THE ALLIED PILOTS ASSOCIATION

Upon the Stipulation and Agreed Order dated September 30, 2021, (Dkt No. 13364)[1] of

AMR Corporation as the reorganized debtor (the "Reorganized Debtor" or "American") and

the Allied Pilots Association (the "APA" and, together with American, the "Parties"), for entry

of an agreed order resolving the Amended Claim, all as described more fully in the Stipulation;

and this Court having jurisdiction to consider the Stipulation and the relief requested under 28

U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated

January 31, 2012 (Preska, C.J.); and consideration of the Stipulation and the requested relief

being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before the

Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Stipulation having been provided, and it appearing that no other or further notice need be

provided; and a hearing having been held to consider the relief requested in the Stipulation

(the "Hearing"); and upon the record of the Hearing and the proceedings had before the

Bankruptcy Court; and the Bankruptcy Court having overruled any objections for the reasons

_____

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Stipulation.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 53 of 126 PageID #8286
USCA11 Case: 25-10297    Document: 48    Date Filed: 04/17/2026    Page: 27 of 48
Case 1:24-cv-20516-DPG    Document 76-21    Entered on FLSD Docket 11/08/20 18:48:09705MainDocument 25 of
USCA11 Case: 25-10297    Document: 130-3    Page Filed: 06/27/2025    Page: 118 of 248

stated on the record of the Hearing; and the Bankruptcy Court having found and determined that the relief sought in the Stipulation is in the best interests of the Reorganized Debtor, creditors, and all parties in interest, and that the legal and factual bases in the Stipulation establish just cause for the relief granted; and after due deliberation and sufficient cause appearing, it is ordered that:

1.      The Stipulation shall become effective on the date that it is "So Ordered" by the Bankruptcy Court and shall inure to the benefit of the Parties and their respective successors.

2.      The Amended Claim will be allowed in the amount of $625,000.

3.      Except for the right to receive a distribution for allowance of the Amended Claim set forth in paragraph 2 above pursuant to the Stipulation and the Plan, the APA fully, finally, and forever releases, relinquishes, and discharges the Debtors, their principals, officers, directors, agents, assigns, administrators, and representatives, from all rights, claims, demands, damages of any kind, and causes of action of every nature, whether known or unknown, asserted or unasserted, arising from or relating to the Amended Claim. The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence) and Grievance No. 12-012 (05/22/12 DFW Domicile) identified on Exhibit 1 to the Letter of Agreement, and the parties retain their respective legal positions on the validity and status of those grievances.

4.      Nothing in the Stipulation shall be construed as an admission of liability or constitute, imply, or evidence the validity of any claim, allegation, objection, defense, asserted right or remedy at law or equity, raised, or that could be raised, by any party in connection with the Amended Claim.

5.      The Stipulation may not be modified, amended, or vacated other than by a signed writing executed by the Parties. The Stipulation contains all of the terms agreed upon by the

Parties regarding the subject of the Stipulation. Any prior agreements, promises, negotiations, or representations, either oral or written, relating to the subject of the Stipulation that are not set forth or referred to in the Stipulation are of no force or effect.

6.    Each person who executes the Stipulation on behalf of a Party represents that he or she is duly authorized to execute the Stipulation on behalf of that Party.

7.    The Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Evidence of execution of the Stipulation may be exchanged by electronic transmission of a scanned copy of the signature pages or by exchange of an originally signed document, each of which shall be fully binding on the Party as a signed original.

8.    The claims agent in the Debtors' chapter 11 cases is authorized to adjust the claims register in accordance with the Stipulation.

9.    The Bankruptcy Court shall retain jurisdiction to interpret, implement, and enforce the provisions of the Stipulation.

**APPROVED AND SO ORDERED**
this 8th day of November 2021

**BY THE COURT:**

/s/ Sean H. Lane
Honorable Sean H. Lane
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE M. MEADOWS,**
    Plaintiff,

    v.

**ALLIED PILOTS ASSOCIATION, et al.,**
  Defendants.

**CASE NO. 17-cv-22589-EA**
**Honorable Judge Ed Artau**

                         /

## DECLARATION OF CAPTAIN EDWARD F. SICHER

I, Captain Edward F. Sicher, declare as follows pursuant to 28 U.S.C. § 1746:

1.     I am over the age of eighteen and all statements made herein are true and correct to the best of my knowledge.

2.     I am a veteran who served over 20-years as a U.S. Air Force Officer, am a decorated combat fighter pilot, who retired at the rank of Lt. Colonel, and was hired as a pilot for American Airlines in 1998, where I've worked for over 27 years, and am currently a B-777 Captain (CA) flying intentional routes.

3.     During my military career I was disabled and grounded from flying to due to being temporarily paralyzed as the result of a vaccine reaction during Desert Storm. My wife was pregnant with my first-born at the time and the Air Force threatened me with removal. Thus, I have experienced first-hand what it means to be a long-term disabled (LTD) pilot who has lost their flying career and suffered the associated difficulties and long fight to get medically re-certified and return to the cockpit. This is a primary reason why I am a staunch advocate for American Airline's LTD and MDD (Medical Disabled Dropped from AA seniority list) pilots.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 57 of 126 PageID
USCA11 Case: 25-10297    Document: #8290 Date Filed: 04/17/2026    Page: 31 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 17 of 85

4.      I devoted over a decade of my 27+ year career at American Airlines (AA) as a volunteer and elected representative at the American Airlines Pilots' union, the Allied Pilots Association (APA) which serves the 16000+ pilots of American Airlines, serving both at the Miami domicile and national level. Some of my many involvements in the pilot union include serving as the Miami (MIA) domicile Contract Compliance Chair (CH), as a MIA domicile Strike Preparedness Committee member, as an elected MIA domicile base representative (three times as the Miami Domicile Vice Chair (VC) and one time as the MIA Domicile Chair), at the national level as one of APA's Board of Directors (BOD), and finally as the elected President of the Allied Pilots Association 16000+ pilots where I had the privilege of representing the world's largest independent pilots' union at a unique time while we negotiated our most recent Contractual Bargaining Agreement (CBA).

5.      As President, and in keeping with my commitment to more aggressively represent our disabled pilots, I formed several ad hoc committees to advocate for them, as is my right as President to do. I also expanded our outreach programs to our over 800 disabled pilots who were then on disability. I also hired additional outside legal advisors specialized in this area to help us more forcefully and properly advocate for our disabled pilots. I also spoke directly to American Airline's CEO Robert Isom, Chief Strategist and founding member Steve Johnson, and Chief Legal Counsel, Lucretia Guia, specifically about this issue and Larry Meadows.

6.      In August 2023, as APA President, I obtained what was at that time the most lucrative pilots' collective barging agreement ever in the history of the airline-labor collective bargaining, adding an estimated additional $9.6 billion of contractual improvements over five years to our CBA to include amongst other things, industry leading pilot long-term disability (LTD) benefits.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 58 of 126 PageID
USCA11 Case: 25-10297    Document: 48-1    Date Filed: 04/17/2026    Page: 32 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 18 of 85

7.      As an APA BOD member and National Officer, I routinely communicated union business via text message and signal (during contract negotiations) on my personal electronic devices, with other APA members, committeemen, officers, and attorneys. I also primarily used my APA email hosted on APA servers, to which I was denied access after I left office.

8.      Based on my extensive and longstanding union experience listed above, and for the reasons stated below, I am considered to be one of the foremost subject matter experts (SME) on the AA-APA's most recent collective bargaining agreement (CBA), the arguments and positions at the table which resulted in the gains we made and the items we were denied, American Airline's pilot union representation, APA's governance, and American's disabled pilots' LTD benefits and MDD pilots grievances, and associated statutes of the Railway Labor Act (RLA), Labor Management Reporting and Disclosure Act (LMRDA), Americans' with Disabilities Act (ADA), and the National Mediation Board (NMB), all of which I had to know and navigate as President of the labor association during this critical time.

9.      On or around 2014 while serving my first term as MIA domicile's VC, I first met the Plaintiff, First Officer (FO) Lawrence Meadows, who was a disabled MIA pilot on LTD and MDD. As FO Meadow's local union representative I was given responsibility for the LTD and MDD issue by then MIA CH CA Thomas Copeland. FO Meadows engaged in significant protected activity, as a whistleblower, and an outspoken advocate for his fellow LTD and MDD union brothers and sisters, who were openly critical of their representation by APA during 2007-2011 time period for reasons which I will explain.

10.     This was a particularly critical time for the MDD pilots due to the fact that AA had recently declared bankruptcy and was in the process of merging with US Air, leaving in doubt these pilots' positions on the new combined seniority list with the US Air Pilots and the America West Pilots,

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 59 of 126 PageID
USCA11 Case: 25-10297    Document: 48-2    Date Filed: 04/17/2026    Page: 33 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 19 of 85

if any position at all, should these pilots ever regain their medicals and be reinstated. It also left in question the status of the MDD pilots' many pending grievances such as DFW Domicile Grievance 20-012 (see attachments) over wrongful termination. Finally, it was also an increasingly unpopular topic to breach at the board table during the intensive merger negotiations as it increasingly appeared that APA had failed in achieving one of its most fundamental objectives and one which is sought by every labor union; the protection of it's members employment. It appeared that APA was complicit in allowing AA management to selectively choose which pilots it wanted to reinstate and which they did not (the company claiming that these pilots were "administratively removed"), while simultaneously allowing others to be reinstated. There was never any contractual provision for removal from employment for this reason nor was any proper notice given to these pilots. It also appeared to me that all of the pilots who were being refused reinstatement, at least all of them that I could identify, were those pilots that chose to fight AA in court instead of accepting AA management's decisions regarding their status and benefits without question. This disparate treatment appeared to be retaliation by the company and I was adamant that our union should be strongly advocating for each and every one of them.

11.    In 2016, while serving as the MIA VC, and in an effort to get our union more aligned with the objective of reinstating our MDD pilots, I proposed a Resolution (R2016-30; see attachments) which sought to more clearly define our official union policy towards these MDD pilots and expedite the grievances which had been filed seeking their reinstatement to the seniority list. Although the legislation eventually passed, I was personally surprised at the push-back from APA's legal department. The only reason this legislation passed, after more than a year of deliberation by the BOD and objection by APA In-House Legal, was that President Dan Carey

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 60 of 126 PageID
    USCA11 Case: 25-10297    Document: 48293 Date Filed: 04/17/2026    Page: 34 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 20 of 85

had recently won the election for President of APA and summarily replaced the long-standing General Counsel of the union, Ed James from James and Hoffman, with Mr. George Buckley. Mr. Buckley had a fresh perspective and was willing to put the union on the right side of the issue. Also, at or about this time, long-serving Chief In-House Legal Counsel, Mr. Bennett Boggess, was replaced. Mr. Boggess had been the catalyst in allowing the company to pick and choose which pilots they chose to reinstate instead of advocating equally for all of them. Once he was gone progress towards getting APA to advocate for it's disabled members could begin

12.     In performing my due-diligence in preparing Resolution R2016-30 for debate, I talked via telephone with American Airline's Director of Flight Administration, Mr. Scott Hanson, on whether I could expect his support on reinstating the MDD pilots to the seniority list, and he replied "Absolutely not". When I inquired as to why he replied, "Because I have a business to run". It was then I realized that I was going to fight a mostly uphill battle in the next several years to make any progress at all on this issue.

13.     Also in researching this issue, I interviewed prior APA President Lloyd Hill, another MIA domicile member who served as national President from approximately 2008 until 2010. He and I discussed, amongst other issues, the hiring of an ERISA counsel in the 2008 to help APA fight this battle but then the union soon dismissed the counsel. When asked directly why this issue was abandoned Lloyd remarked that the union was in an increasingly precarious financial situation in the late 2000's and difficult decisions had to made concerning APA's expenses. For this reason he chose to concentrate APA's resources on those pilots still on the seniority list. Lloyd Hill, not coincidentally, was also the President who chose to reinstate Bennett Boggess as Chief In-House Legal counsel after he was fired in the mid-2000's.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 61 of 126 PageID
USCA11 Case: 25-10297    Document: 48294Date Filed: 04/17/2026    Page: 35 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 21 of 85

14.     On May 14 2012, and before I took my seat on the APA BOD, APA filed a collective LTD MDD Pilot seniority reinstatement grievance, DFW Domicile Grievance 12-012; "protesting the Company's violation of Sections 11.D, Supplement F(1), and all other related sections of the Agreement as well as past practice, for failing to reinstate pilots to the Pilots' Seniority System List and for failing to provide pilots notice of termination prior to terminating employment status of pilots who have been in inactive status, unpaid sick, or disability for more than five years." (Grievance 12-012 is attached as an exhibit). This grievance was fortunately preserved through the bankruptcy proceedings and still on the books when I started as a BOD member in 2014 (See attachment preserving the grievance through the bankruptcy). Unfortunately, American Airlines did not want to hear the grievance and therefore, with APA's complicity, continually pushed back on the hearing of the grievance for almost a decade. The union allowed the continual dismissal of the hearing and arbitration of this grievance until I became President and put additional resources and emphasis into the closure on this issue, rolling it into an expedited Presidential Grievance (G2023-31). A copy of Grievance 12-012 and it Sicher Presidential Expedited version 23-031 1 is attached hereto as **Exhibits A and B.**

15.     Of noticeable importance during the 2014-2016 timeframe when I was starting my elective service to APA, was that the three pilot groups merging into the new American Airlines (Legacy American Airlines pilots, US Air pilots, and America West pilots) were all being treated in disparate manners in the forming of the new combined seniority list integration (SLI). Legacy AA Pilots were sometimes being denied reinstatement after 5-years off of the seniority list for an LTD condition, US Air Pilots were allowed to retain their position on the merged seniority list despite not possessing a current FAA medical until mandatory retirement age of 65, and America West pilots were removed without any provision to regain their seniority after 8-years LTD.

16.     APA had chosen to lockout the MDD pilots from the social media and chat platforms of the union at the time so getting the membership and other board members to hear all sides of the story was increasingly difficult. As the Miami VC with responsibility for the LTD/MDD issue in MIA, I was Kathy Emery's representative in her objections to the unions lock-out of her ability to access the social media platforms. With the new General Counsel in place we soon reached agreement on a settlement for Emery's lock out. Unfortunately, the agreement, although getting Kathy an undisclosed settlement, did not include the other LTD pilots who were likewise locked out. I did not consider this a victory. A copy of AUD Newsletter and *Emery* v. APA Court Order and is attached hereto as **Exhibits C and D.**

17.     Also, of interest during the timeframe that I worked to get APA to change it's position on the MDD pilots and was attempting to achieve passage of R2016-30, work was done behind the scenes by APA Attorney Mark Meyers, Director of Negotiations, and unknown to those on the Board of Directors such as myself. Myers solicited the legal opinion of an outside law firm, Babbs-Denison. This law firm issued a legal opinion letter justifying APA's abandonment of its MDD pilots (Babbs-Dennison legal opinion letter attached). However, this opinion was based on the information that had been provided to them by Myers, and it was later discovered during my representation of another MDD pilot, Wallace Preitz, that Babbs-Dennison was never provided with the key piece of information being that APA had previously filed multiple grievances on behalf of these pilots seeking their reinstatement and protesting their wrongful termination, thus giving these pilots "rays of hope" that the union would advocate for them. I believe that there is various case-law deliberating on this very issue and stating that by establishing these "rays of hope", the union had, "by default", established a Duty of Fair Representation (DFR), although I am no longer in possession of my electronic notes kept on APA

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 63 of 126 PageID
    USCA11 Case: 25-10297   Document: 48    #8296Date Filed: 04/17/2026   Page: 37 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 23 of 85

servers regarding this issue, I believe this letter, as flawed as it was, was used to justify the APA's

Legal Department abandonment of the representation of these MDD pilots. Furthermore, the

Babbs-Dennison legal opinion letter stated that although APA did not owe these pilots a duty of

fair representation (DFR), a duty would be in order if action or representation was taken on behalf

of any one of them, hence the importance of reporting the grievances that APA had filed when

soliciting Babbs-Dennison for an opinion. A copy of Babb-Dennison legal opinion is attached

hereto as **Exhibit E.**

18.    Immediately after receiving the Babbs-Dennison letter, APA legal switched from

obstructing my Resolution R2016-30, to reluctantly allowing its passage. On December 13,

2026, the APA Board of Directors ("BOD") voted in 19-3 to approve R2016-30 which stated in

part;

> "the three separate contracts prior to the merger of US Air East, America West, and
> American Airlines **treated disability retirements differently**...the American Airlines
> contract, which has been subjectively reinterpreted by the Company to allow the removal
> of a pilot from the seniority list after five (5) years of continuous disability...**the merging
> of the seniority lists is creating a disparate treatment amongst the individual pilot
> groups**...the most beneficial treatment of all of our disabled pilots is **to allow them
> reinstatement from long-term disability in as expeditious and fair a manner as
> possible**... there has been some evidence indicating that the **company has unfairly
> withheld reinstatement to long-term disabled pilots** who have regained their Class A
> medicals from being reinstated if they were **considered problematic employees...**"...
> [Emphasis Added].

And further created a BOD directive to the APA negotiating committee, which stated;

> **BE IT RESOLVED, that the Negotiating Committee expeditiously engage the company
> in negotiations which seek to: 3. Negotiate contractual language that provides for
> the immediate reinstatement and return to the Pilot System Seniority List of all pilots
> who are currently out sick or on disability and who have been removed from the seniority
> list...** [Emphasis Added].

A copy of APA BOD Resolution 2016-30 is attached hereto as **Exhibit F.**

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 64 of 126 PageID
USCA11 Case: 25-10297   Document: #8297   Date Filed: 04/17/2026   Page: 38 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 24 of 85

19.     During the January 2020 investigation of the MDD issue (and before I was President of the union but serving as the MIA domicile CH and BOD Member), the committee I chaired interviewed two APA attorneys, Director of Negotiations Mark Myers, and APA Director of Representation, James Clark, who both made material misstatements of the facts with respect to the existence of the legal department's secret December 12, 2016, Babb-Denison legal opinion letter obtained without knowledge or authorization from APA's Board of Directors, which appeared to be used as justification of APA legal's prior abandonment of the duty of representation of the over 240 MDD pilots; to include, improperly excluding them from their full share payout of the $1.1B Equity Distribution, estimated to be approximately $100,000.00 per MDD pilot, or $24M collectively. I informed then President Ferguson of these attorney's ethical violations and recommended they be terminated due to ethics violations of the APA Constitution and Bylaws (C&B"), but he declined, stating he "must safeguard the best interests of APA", and instead abruptly disbanded the committee before it could issue its findings. I therefore re-started the committee up as an ad-hoc committee immediately upon my winning of the Presidential election, this time under a different name. See Deposition transcript of Edward Sicher in; *Preitz v. APA* (Case No. 2:17-cv-01166-MSG, Doc 107-4, Jan 6, 2021) stating both Mr. Myers and Clark both lied about Babb-Denison letter).

20.     In or around April 2022, while serving as the Miami Domicile representative, I appointed FO Meadows to the APA National Aeromedical Committee, Disabled Pilots Awareness Sub-Committee (DPASC), to serve as the MIA Domicile Pilot LTD Coordinator to assist other disabled pilots. The APA legal department pushed back on this appointment, arguing that FO Meadows was not a "member in good standing" and was therefore ineligible to serve on a national committee. This disagreement boiled out in my issuance of a Presidential

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 65 of 126 PageID
USCA11 Case: 25-10297   Document: #8298   Date Filed: 04/17/2026   Page: 39 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 25 of 85

Interpretation on Sep 2, 2022, defining "members in good standing" (The APA President is the only union official allowed to interpret the Constitution and By-Laws at APA).

21.    The formal Constitutional Interpretation (see attachment) confirmed that inactive members, including MDD pilots, like FO Meadows, who had fulfilled all prior membership requirements, were "members in good standing." And could certainly serve on APA committees and in official APA capacities. A copy of that Presidential interpretation is attached hereto as **Exhibit G.**

22.    As a direct result of my Constitutional Interpretation FO Meadows, as a member in good standing, was able to serve as the MIA Domicile LTD Coordinator, where he sponsored and helped scores of disabled pilots.

23.    As APA President, I also took steps to address FO Meadows' long-pending individual and collective seniority reinstatement grievances. On March 13, 2023, at FO Meadows request, I converted the collective Grievance 12-012 into expedited Presidential Grievance 23-031. A copy of G-23-031 is previously attached as **Exhibit B.**

24.    I also created the National Dropped Reinstatement ad hoc Committee ("NDRC"), and around April 2023, I appointed First Officer ("FO") Thomas Rempfer as Chairman, to ensure that APA leaves "no pilot behind". The NDRC was tasked with finding avenues of reinstatement for those who have been dropped from the seniority list, by virtue of disability, merger, or other reason, not including retirement or discipline. This was intended to help obtain reinstatement of FO Meadows and other similarly situated MDD pilots. A copy of the NDRC power point presentation that FO Rempfer created in collaboration with MDD pilots FOs Meadows and Preitz is attached hereto as **Exhibit H.**

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 66 of 126 PageID
USCA11 Case: 25-10297    Document: 48299 Date Filed: 04/17/2026    Page: 40 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 26 of 85

25.    During the AOA Spring BOD Meeting, FO Rempfer presented the NDRC PowerPoint to the BOD, and APA Attorney Tricia Kennedy and Former APA BOD CA Thomas Westbrook attempted to orchestrate a recall of MDD advocate FO Rempfer. A copy of FO Rempfer's Memo For Record is attached hereto as **Exhibit I.**

26.    In early 2024, and due to the fact that it increasingly appeared that AA was unwilling to reinstate Larry Meadows without a legal fight, I hired attorney Sue Edwards, Esq., to personally represent FO Meadows in his individually filed ADA lawsuit against American Airlines. The objective was to put a set of professional eyes on Meadow's filings as he had up to then primarily been representing himself pro-se. Sue Edwards was trusted by the MDD pilots and had recently achieved a win for APA in a prior lawsuit against the FAA for the wrongful termination of one of our pilots for being improperly notified of a drug test. I felt that to truly succeed in court he would need professional guidance. Victory in court would hopefully persuade AA to drop its obstruction to reinstating our MDD pilots and result in the mutually beneficial outcome to both our pilots and the company. As President and the primary fiduciary of the APA, the reason I gave to the Board of Directors and legal counsel for this expenditure was that I had reached an agreement with Meadows that he would drop the lawsuits against APA if the union put the bulk of its collective resources behind what was increasingly becoming an individual fight. Meadows had originally agreed to this "quid pro quo", but when it became clear to him that he would have to drop his claims against APA before he would receive surety that his claims for reinstatement as a pilot against AA would succeed he reneged and declined to drop his claims against APA. When this occurred I directed Ms. Edwards to terminate her representation of Meadows.

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 67 of 126 PageID
USCA11 Case: 25-10297    Document: 48300 Date Filed: 04/17/2026    Page: 41 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 27 of 85

27.    Furthermore, on or about June 13, 2024, I directed the APA Director Of Grievances, Tricia Kennedy, to move FO Meadows' individual Grievance 12-011 forward and schedule it for an arbitration hearing. To my knowledge, that grievance was still open, active, and in the queue for a an arbitration hearing at least until I left office on October of 2024. Text messages between myself and Tom Remper attached hereto as **Exhibit J.**

28.    On or around late September 2024, I was presented with a proposed settlement agreement with American Airlines concerning Grievances 12-012 and 23-031. That proposal would have reinstated several other MDD pilots, some out on disability for much as 24-years, but explicitly excluded FO Meadows, despite the fact he was holding an FAA Airman's First Class Medical Certificate and working as current and qualified B-777 Captain and Instructor pilot in Boeings Miami Flight Training Center. I refused to sign because it was a "go-no-go decision point" to leave any pilot behind. I truly felt that to have continued the fight to this point and finally settle by letting the company decide who to reinstate and who to refuse would have left this issue unresolved, thus resulting in returning right back to where we started.

29.    In late 2024 and after an internal battle with my Board of Directors over the possible merger of our union with the Air Line Pilots Association (ALPA), a merger which I was adamantly against, I was removed from office by the Board of Directors. The Board of Directors was able to install another President they were allowed to choose due to the short remaining time left on my tenure. The replacement they chose, FO Nick Silva, had never served in a membership elected position and had very little experience, particularly dealing with APA grievances or its legal department. He had only served as a costing analyst on the negotiating committee. He summoned me down to APA to discuss the handoff from one President to the next. Despite the fact that there were hundreds of issues in play at the time, such as staff issues,

12

IT upgrades. problems with AA's Safety program and the FAA oversight of the airline, etc. etc. all Nick wanted to discuss was the issue of Larry Meadows. This was a huge surprise to me and indicative of how much pressure he was under by the APA legal department to fold on APA's advocacy for Meadows and the grievances I had filed as President. The question he dwelled on for most of the 45' he had scheduled for me was "Why wouldn't you approve the proposed MDD settlement by removing Larry Meadows?"

30.     I have since learned that on January 15, 2025, the new APA President FO Silva executed a settlement that finalized the exclusion of FO Meadows and falsely claimed that his individual Grievance 12-011, the very same grievance I had ordered to arbitration months earlier, was now being declared "closed since 2013." A copy of this January 15. 2025 Grievance 12-012/23-031 Settlement are attached hereto as **Exhibit K.**

31.     I have also been informed by FO Meadows that on or around May 1, 2025. the current APA President Nick Silva. terminated Meadows 34-years of APA membership via a letter, in response his request to speak during membership guest hour at the 2025 Spring Board of Directors Meeting. A copy of this correspondence is attached hereto as **Exhibit L.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of January, 2026.

Captain Edward F. Sicher
MIA/777/International

Case 2:26-cv-00679-EK-ARL   Document 31-1   Filed 05/04/26   Page 69 of 126 PageID
USCA11 Case: 25-10297   Document: 48302 Date Filed: 04/17/2026   Page: 43 of 48
Case 1:17-cv-22589-EA   Document 180   Entered on FLSD Docket 01/29/2026   Page 74 of 85

## EXHIBIT J

Messages - Tom Rempfer (+15208696590)                    +13053339534, annamaria717@yahoo.com, annamaria717@icloud.com

10/9/2025 5:13:40 AM

Tom Rempfer (+15208696590)

Missed your call, Landing sim early, talk after

10/10/2025 2:13:22 PM

Tom Rempfer (+15208696590)

June 14, 2024, assume the below text was from Ed to Larry, relayed to me via text from Larry:

No. I have had it with you. I have done no to king but expend time, money and resources despite the fact I have been left twisting in the wind. I have been warned by APA legal that you would do just what you are doing right now. Should have e listened to them a long time ago. They were right all along. It is about the $$
I've held up multimillion dollar grievances for you. I've held up the probable reinstatement of other pilots for you. I've cut across the wishes of my own board to advocate and find outside counsel to advocate for you. And at the end of the day you will give nothing to help me make your case. It's over Larry. You're on your own. I'll drop your grievance. You can make the case that APA isn't advocating for you now. Treat the union as your enemy.
I've given official word to Sue and Jim to expend no more resources on you. You are on your own now Larry. APA will slot your grievance and that's all. Good luck

 Next was from me to Larry:

Only update is a fourteen or fifteen october grievance scheduling request for 12-12, 12-11 still in the cue with over 50 other unresolved grievances.

Next was from Larry to me:

In agreed to Additional 14-day on the condition we discuss...

"tAPA taking two actions on my behalf;

1) an immediate vigorous good faith effort for the APA President to meet with AA CEO within the next 14-days, to negotiate and obtain my reinstatement as an active line pilot at my relative seniority at B777 CA pay, and

2), also simultaneously immediately moving my individual Grievance 12-011 to a System Board on Presidential Expedited Basis in accordance were CBA Sec 23, to be heard in the next available

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 71 of 126 PageID
#: 304
USCA11 Case: 25-10297    Document: 48    Date Filed: 04/17/2026    Page: 45 of 48
Case 1:17-cv-22589-EA    Document 180    Entered on FLSD Docket 01/29/2026    Page 76 of 85

Messages - Tom Rempfer (+15208696590)                    +13053339534, annamaria717@yahoo.com, annamaria717@icloud.com

arbitration slot with a pilot friendly arbitrator, using unconflicted outside counsel of my choice, with a System Board panel members picked by me or subject to my approval. The second step will put pressure on AA,"

→ Sicher text to me was apparently on the same day he texted Larry on June 14, 2024

→ We will slot his grievance 12-11 for hearing. That is all.

Conclusion, my testimony is actually irrelevant. You evidently received the same text info and commitment directly from Ed via text re 12-011 that you shared with me above. And evidently had the same commitment or expectation from your 14-day extension conference call. Plus I also gave you the same impression related to the October grievance scheduling, which indicated your grievance was in the cue, probably verifiable based on union records from that committee. Perhaps check with Tracy Parrella?

Bottom line, second hand info from your committee chairman is likely irrelevant compared to direct communications from your union President and the grievance resolution docket records. If you're grievance was closed how could it be in the queue?

Suggest you cnx my deposition and save that money since I've coordinated with legal as you suggested and they've relayed extensive restrictions on what I can testify about.

Flying tmrw morning.

10/10/2025 5:53:00 PM

Tom Rempfer (+15208696590)

Themselves

Case 2:26-cv-00679-EK-ARL Document 31-1 Filed 05/04/26 Page 72 of 126 PageID
USCA11 Case: 25-10297 Document: 48305 Date Filed: 04/17/2026 Page: 46 of 48

Align top of FedEx® shipping label here.

ORIGIN ID:MPBA  (516) 982-7718
LAWRENCE MEADOWS

1900 SUNSET HARBOUR DR 2112

MIAMI BEACH, FL 33139
UNITED STATES US

SHIP DATE: 16APR26
ACTWGT: 0.55 LB
CAD: 6570517/ROSA2710

TO **11TH CIR. U.S. COURT OF APPEALS**
**ATTN: CLERK—CASE# 25—10297**
**56 FORSYTH STREET NORTHWEST**

**ATLANTA GA 30303**
(404) 335—6100        REF:
INV:
PO:                    DEPT:

FedEx
Express

E

REL#
3785346

TRK# 8707 4178 7421
0201

FRI – 17 APR 10:30A
PRIORITY OVERNIGHT

XG QFEA

30303
GA-US    ATL



4314 FRI 04/17  07:10
56 FORSYTH ST NW
PRIORITY OVERNIGHT
**529-2572**
ETP: 9    SP:PD:100 Y

30303-2218-56
ATLANTA,GA

APR 17 2026

U.S. MARSHALS SERVICE
11th Circuit Court of Appeals (COA)

Envelope

Recycle me

# EXHIBIT 3

**To Plaintiff's Motion to Stay**

Case 2:26-cv-00679-EK-ARL    Document 31-1    Filed 05/04/26    Page 75 of 126 PageID #: 308

**No. 25-10297**

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

LAWRENCE MEADOWS,
*Plaintiff/Appellant,*

v.

AMERICAN AIRLINES, INC.,
*Defendant/Appellee.*

---

Appeal from the United States District Court
for the Southern District of Florida
Hon. Darrin P. Gayles
No. 1:24-cv-20518-DPG

---

## AMERICAN AIRLINES, INC.'S OPPOSITION TO APPELLANT'S MOTION FOR SANCTIONS

---

| | |
|---|---|
| Mark W. Robertson | Jason Zarrow |
| O'Melveny & Myers LLP | O'Melveny & Myers LLP |
| 1301 Avenue of the Americas | 400 South Hope Street, Suite 1900 |
| Suite 1700 | Los Angeles, CA 90071 |
| New York, NY 10019 | (213) 430-6000 |
| (212) 326-2000 | |
| | Ryan K. Stumphauzer |
| Kelly S. Wood | Timothy A. Kolaya |
| O'Melveny & Myers LLP | Matthew M. DellaBetta |
| 610 Newport Center Drive | Stumphauzer Kolaya |
| 17th Floor | Nadler & Sloman, PLLC |
| Newport Beach, CA 92660 | Two South Biscayne Blvd., Suite 1600 |
| (949) 823-6900 | Miami, FL 33131 |
| | (305) 614-1400 |

*Counsel for Appellee American Airlines, Inc.*

## INTRODUCTION

Plaintiff-Appellant Lawrence Meadows's motion for sanctions is frivolous. Meadows does not contend that American misstated any facts or law in its briefing before this Court. Rather, the sole basis for Meadows's sanctions motion is an allegedly inaccurate factual recital in a paragraph of a Settlement Agreement that American entered with his union and submitted to this Court in an unopposed motion to supplement the record. Specifically, Meadows claims the Settlement Agreement's recital that his union closed grievance No. 12-011 in 2013 is false. As detailed below, that statement is true—as Meadows himself acknowledged—and is entirely irrelevant to American's arguments in this appeal in any event.

In 2011, American terminated Meadows's employment. As is evident from the parties' merits briefing, Meadows then began a litigation crusade in courts around the country to get his job back. In this suit, Meadows claims that American violated the Americans with Disabilities Act when it refused to accede to his demand for reinstatement beginning in 2018. According to Meadows, American acted with discriminatory and retaliatory intent, which he claims is shown by the fact that American offered reinstatement to other, allegedly similarly-situated pilots. *See, e.g.*, ECF No. 67 ¶¶ 108-09; *see also* Doc. 22 at 39, 41, 48 n.10.[1]

---

[1] Citations to "Doc." refer to entries on this Court's docket. Citations to "ECF No." refer to entries on the district court's docket.

As set out in American's merits brief, Meadows's claims fail because he did not allege that any other pilot was similarly situated to him.  *See* Doc. 28 at 37-39. In support of that argument, American explained that several other American pilots were offered a potential path to reinstatement pursuant to a 2025 Settlement Agreement with his former union, the Allied Pilots Association ("APA"), because those pilots did not receive notice that APA alleged they were entitled to under the governing collective bargaining agreement ("CBA"), whereas Meadows did receive notice in advance of his termination in 2011.  *See id*.; *see also* Doc. 30, Ex. A ¶¶ 2-3.    Thus, American argued, the Settlement Agreement is confirmation that "American treated Meadows differently than those comparator pilots, not because of any protected activity, but because of his rights under the pilot CBA."  Doc. 28 at 38.

Because the Settlement Agreement was executed after the district court dismissed Meadows's claims, it was not part of the record on appeal.  American filed a motion to supplement the record on appeal to include the Settlement Agreement. *See* Doc. 30.  Meadows did not oppose American's motion, *see id.* at 1, which, on March 16, 2026, this Court granted, *see* Doc. 40.

Having acquiesced to American's motion to supplement the record, Meadows now claims American committed a "fraud on the court" because a factual recital in the Settlement Agreement—which American does not rely on or even reference in

2

its merits brief—is, in Meadows's view, inaccurate.  Doc. 48 at 4-5.

After the "Now, Therefore" clause, paragraph 2 of the Settlement Agreement states that Meadows was "not eligible for reinstatement under this Agreement" because Meadows (unlike the other pilots covered by the Agreement, *see* Doc. 30, Ex. A ¶ 3) received notice "in advance of his removal from the seniority list and separation from employment in 2011 … ."  *Id.* ¶ 2.  As further confirmation that Meadows actually received the notice of his termination, the Settlement Agreement then notes that Meadows filed two grievances—Nos. 12-011 and 13-064— "challenging the Company's decision to separate him from employment at the time." *Id*.  The next sentence then merely recites the history of those grievances:  "Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them [to arbitration] in 2013 and 2014, respectively."  *Id*. (emphasis added).

The basis for Meadows's sanctions motion is his claim that the underlined factual recital—which, again, is irrelevant to American's arguments on appeal—is inaccurate.  According to Meadows, grievance No. 12-011 was not in fact closed in 2013.  *See* Doc. 48 at 2.

Meadows's motion is baseless.  Indeed, in correspondence with APA, Meadows himself stated that "I understand that 12-011 is closed" after APA specifically told him it was closed and that it would not be taking any further action

3

on it.  *See* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3.[2]  That is, after all, why Meadows sued APA in 2014 in the District of Utah, alleging APA breached its duty of fair representation by "refus[ing] to arbitrate" grievance 12-011.  Compl. ¶ 8, *Meadows v. Allied Pilots Ass'n*, 2:14-cv-00115-DS (D. Utah Feb. 19, 2014), ECF No. 1.   Meadows's assertion that American's bankruptcy proceedings show otherwise seriously misrepresents the record.

Meadows's reliance on the declaration of former union president, Edward Sicher, is also misplaced.  Sicher stated that, in 2024, he directed the union to process Meadows's grievance.  At most, that would show Sicher re-opened the grievance in 2024.  But Sicher was later replaced, and APA's new president did not prosecute Meadows's grievance.  Instead, he reverted to the *status quo ante*—namely, that Meadows's grievance was and is closed.  Thus, even if Sicher's declaration were credited, it would show only that Meadows's grievance may have been re-opened in 2024, not that it was open when the Settlement Agreement was reached in 2025 nor in 2013, as the Settlement Agreement states.

To obtain sanctions, Meadows is required to show that American acted in bad

---

[2] APA attached this email as an exhibit in support of its summary judgment motion recently filed in pending litigation brought by Meadows against APA in the Southern District of Florida.  American has attached a copy of this email to its brief for the Court's convenience as Exhibit 1.

faith. But the only party possibly acting in bad faith here is Meadows. If Meadows had genuine concerns with this Court considering the 2025 Settlement Agreement, he should have raised them in opposition to American's motion to supplement the record. Instead, he has attempted to use the Settlement Agreement to his tactical advantage, making a mountain out of far less than a molehill.

For these reasons, and as detailed below, this Court should summarily deny Meadows's motion.

## BACKGROUND

The following background regarding Meadows's history litigating his termination from American is necessary to understand the instant motion.

1.   In 2012, Meadows filed grievance No. 12-011 challenging his 2011 termination. After initial proceedings under the CBA's grievance process, Meadows's union, APA, declined to pursue the grievance further. In correspondence with Meadows, APA thus explained that grievance No. 12-011 "has been closed." *See* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3. In response, and contrary to the entire premise of Meadows's sanctions motion, Meadows stated: "I understand that 12-011 is closed, but I still have legal remedies that flow from it." *Id*.

2.   In 2014, Meadows sued APA in the District of Utah alleging that APA

5

breached its duty of fair representation by "refus[ing] to arbitrate his company termination grievance claim before a System Board of Adjustment," Compl. ¶ 8, *Meadows v. Allied Pilots Ass'n*, 2:14-cv-00115-DS (D. Utah Feb. 19, 2014), ECF No. 1, a specialized arbitral body for adjudicating airline grievances under the Railway Labor Act, *see generally* Doc. 28 at Part II.B (discussing RLA preemption). As American explained in its merits brief—and as Meadows does not dispute—the District of Utah "dismissed his complaint and the Tenth Circuit affirmed." Doc. 28 at 12 (citing decisions); *see also In re AMR Corp.*, 2023 WL 2770228, at *1 n.1 (2d Cir. Apr. 4, 2023).

3. Also in 2012, the APA filed a grievance (No. 12-012) alleging, among other things, that American failed to provide notice to pilots on extended medical leave before terminating them. *See* Doc. 28 at 12-13. That is the grievance that APA and American settled in 2025 in the Settlement Agreement filed with this Court as a supplement to the record. *See* Doc. 30, Ex. A.

A factual recital in that Settlement Agreement forms the basis for Meadows's sanctions motion. In the Settlement Agreement, American and APA agreed to provide a path for reinstatement for pilots who did not receive pre-termination notice. *See* Doc. 30, Ex. A ¶ 3. But the Settlement Agreement did not provide Meadows a path for reinstatement because he had received notice, as confirmed by the fact that Meadows filed grievance No. 12-011, as well as another grievance (No.

13-064), challenging his termination. *See id.* ¶ 2. The Settlement Agreement then recited what happened to those grievances: They were "disposed of and closed after the APA declined to advance them in 2013 and 2014 [to the system board arbitration], respectively." *Id*.

4. Notwithstanding Meadows's own admission that "12-011 is closed," and his unsuccessful litigation in Utah to compel his union to re-open and process that grievance to system board arbitration, Meadows claims that American committed sanctionable misconduct by submitting the 2025 Settlement Agreement to this Court because it recites that APA closed grievance 12-011 in 2013. The primary basis for Meadows's motion is his assertion that statements in American's bankruptcy proceedings show that the grievance was still open. Those statements, however, do nothing more than confirm that Meadows was entitled to pursue litigation to compel APA to move grievance No. 12-011 to arbitration—they have nothing to do with whether the grievance was open or closed, which merely refers to whether APA intended to take further action on the grievance.

In 2011, American filed for bankruptcy in the Southern District of New York. *See* Voluntary Pet., *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 29, 2011), ECF No. 1. The matter was assigned to Judge Sean H. Lane. *See* Minute Order, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 29, 2011). Meadows was an active participant in the bankruptcy, asserting several proofs of claim against American.

*See, e.g.*, Modified Bench Ruling at 21:21-22:16, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288.

American objected to most of Meadows's asserted proofs of claim in March 2014, on the grounds that (i) they were untimely and (ii) American had already prevailed on one of them. *See* Modified Bench Ruling at 15:10-21, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288. But American did not object to Meadows's continued pursuit of grievance No. 12-011, which was then being litigated in the District of Utah. American agreed that grievance No. 12-011 was on "its own separate track and nothing in [American's] objection would change that." Transcript of Proceeding at 37:11-12, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012. In September 2014, Judge Lane issued an order sustaining American's objection. *See* Doc. 48, Ex. B at 2.

Because American did not object to grievance No. 12-011, Judge Lane excluded it from his order: "ORDERED that, notwithstanding the foregoing, Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent … *permitted by applicable law*." *Id.* (emphasis in original). Judge Lane held that Meadows retained "whatever rights in the grievance process he should have by virtue of Grievance 12-011 … ." Modified Bench Ruling at 31:8-9, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 9, 2014), ECF No. 12288.

In September 2021, American and APA reached an agreement to settle a

different set of grievances. *See* Notice of Presentment of Stipulation ¶¶ 2-3, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Sept. 17, 2021), ECF No. 13364. They asked Judge Lane to approve a stipulation allowing them to enter into the settlement. *See id.* at 5. Grievance No. 12-011 was not part of the settlement, so American and APA included a generic statement that their stipulation "does not affect" grievance No. 12-011, "and the parties retain their respective legal positions on the validity and status of th[at] grievance[.]" *Id.* ¶ 3. American and APA added this provision, even though APA had declined to pursue the grievance (i.e., closed the grievance), because Meadows was a frequent objector in American's bankruptcy proceedings. Unsurprisingly, Meadows objected, *see* Creditor Lawrence M. Meadows' Objection to Notice of Presentment of Stipulation, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Oct. 1, 2021), ECF No. 13371, and Judge Lane made clear on the record that the stipulation did not affect whatever rights Meadows thought he had in the grievance, *see* Transcript of Proceedings at 22:15-16, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Nov. 9, 2021), ECF No. 13400 (refusing to insert "language [that may] be misconstrued … as gloss on what's happening" with "the actual grievance").

In May 2022, the Southern District of New York rejected Meadows's appeal of the bankruptcy court's approval of a settlement between American and the Equal Employment Opportunity Commission. *See In re AMR Corp.*, 2022 WL 1556398,

9

at *1 (S.D.N.Y. May 16, 2022).   In the course of ruling against Meadows, the Southern District of New York noted that "[a]lthough the APA settled its proof of claim, there is some ambiguity in the record as to the status of Meadows' grievance following that settlement."  *Id.*  The Southern District of New York then quoted Judge Lane's ruling on American's objection to Meadows's proofs of claim, which in turn quoted American's counsel as stating in 2014 that: "Counsel for AMR confirmed that the process of fully litigating Grievance 12-011, including [a pending lawsuit to compel arbitration], is unaffected by the debtors' objection ... [and] is on a separate track."  *Id.* at *1 (quotations omitted) (brackets and ellipses in original).  This observation was "background," *id*. (capitalization omitted), as the Southern District of New York's ruling had nothing to do with that grievance.

5.   Captain Edward F. Sicher was elected as APA's President in 2022.  *See* Doc. 48, Ex. D ¶ 4.  Sicher states in a declaration that in June 2024 he "directed [APA's lawyer] … to move FO Meadows' individual Grievance 12-011 forward … ."  *Id.* ¶ 27.  Sicher admits that after he was removed from office in 2024, the current APA President (Nick Silva) took the position that grievance No. 12-011 was closed since 2013, as stated in the Settlement Agreement.  *See id.* ¶ 30.

## ARGUMENT

Meadows accuses American and its counsel of committing a "fraud on this Court" by supplementing the record with a Settlement Agreement that states

10

grievance No. 12-011 was closed in 2013.  Doc. 48 at 1.  Meadows's motion is nonsense.  As Meadows himself admitted in January 2014, his grievance *was* "closed" because his union had decided not to pursue it, although that did not foreclose him from bringing claims—like his District of Utah lawsuit—related to APA's decision.  Meadows's contrary argument rests mainly on a mischaracterization of statements in American's bankruptcy proceedings, which only confirm Meadows remained free to pursue those legal remedies, but do not address whether the grievance was open or closed.  Meadows offers no non-frivolous argument for how American's unopposed submission of a Settlement Agreement could rise to the level of sanctionable misconduct.

## I.     THE SETTLEMENT RECITAL IS FACTUALLY ACCURATE

Meadows misrepresents the record in arguing that the 2025 Settlement Agreement inaccurately recites that grievance No. 12-011 was closed in 2013.

**A. "The 2014 Order."**  Meadows first asserts that grievance No. 12-011 must have been open in September 2014 because Judge Lane "issued an order stating that [Meadows] 'shall be permitted to arbitrate Grievance 12-011.'"  Doc. 48 ¶ 4 (quoting *id.* Ex. B).  Meadows disingenuously omits the rest of Judge Lane's order, which states: "Meadows shall be permitted to arbitrate Grievance 12-011 before the System Board to the extent … *permitted by applicable law*."  *Id.*, Ex. B (emphasis in original).  In other words, Judge Lane authorized Meadows to continue to pursue his

11

litigation in Utah seeking to compel APA to take grievance No. 12-011 to arbitration, which Meadows would not have pursued if the grievance was open.

The context surrounding Judge Lane's order further confirms this. American objected to Meadows's assertion of various claims in its bankruptcy, but not to grievance No. 12-011. *See supra* at 8. As to grievance No. 12-011, American informed the court of Meadows's "pending suit to compel arbitration," and agreed the "process of fully litigating the grievance" was unaffected by its objection. Transcript of Proceeding at 36:17-18, 37:3-4, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012. Judge Lane's order reflects nothing more. Although Meadows's grievance was closed by APA in 2013 when it declined to take the grievance to arbitration, Meadows was permitted by Judge Lane to pursue whatever legal remedies he might have, notwithstanding American's objection to his other claims—which Meadows did pursue before the District of Utah and Tenth Circuit, which both ruled against him. *See supra* at 6.

**B. "The 2021 Order."** Meadows next cites (at ¶ 5) a November 2021 order from Judge Lane approving a stipulation, which stated: "The Stipulation does not affect Grievance No. 12-011 (02/04/12 Meadows, Lawrence) … and the parties retain their respective legal positions on the validity and status of those grievances." Doc. 48, Ex. C. That stipulation and order likewise does not contradict the fact that APA closed grievance No. 12-011 in 2013. As mentioned above, *see supra* at 8-9,

the quoted language from the stipulation merely reflected that it left grievance No. 12-011 untouched—i.e., that "the parties retain their respective legal positions on the validity and status" of Meadows's grievance.

**C.  "The 2022 Admission."**  Meadows again misrepresents the record in suggesting that American "confirmed on the record" "in a 2022 proceeding" that Meadows's grievance was still being litigated. Doc. 48 ¶ 6.  The statement Meadows cites as a "2022" admission was actually *from 2014*.  In 2014, American's counsel stated that American's objection to Meadows's proofs of claim did not extend to his pending litigation in the District of Utah to compel APA to process Meadows's grievance. *See supra* at 8.  As background, the 2022 order cited by Meadows quoted that 2014 statement:  "Counsel for AMR confirmed that the process of fully litigating Grievance 12-011, including [a pending lawsuit to compel arbitration], is unaffected by the debtors' objection ... [and] is on a separate track." *In re AMR Corp.*, 2022 WL 1556398, at *1 (bracketed language and ellipses in original); *see also supra* at 6 (discussing District of Utah litigation).

**D.  "The 2024 Corroboration."**  Finally, Meadows relies (at ¶ 7) on Sicher's declaration claiming grievance No. 12-011 was "in the queue for an arbitration hearing" at the time he left office in 2024.  Doc. 48, Ex. D ¶ 27.  Although APA's then-President Sicher may have directed that the closed grievance be re-opened and placed in the queue for arbitration, that does nothing to change the fact that APA's

position both in 2013 and at the time it entered the Settlement Agreement in January 2025 was that grievance No. 12-011 was closed in 2013, *see* Doc. 48, Ex. D ¶ 30; *see also* Decl. of Joshua B. Shiffrin at DX20, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 1, 2026), ECF No. 238-3; Transcript of Proceeding at 70:22-71:2, *In re AMR Corp.*, 1:11-bk-15463 (Bankr. S.D.N.Y. Apr. 21, 2014), ECF No. 12012 (APA's attorney telling bankruptcy court that "the APA decided, and in August of 2013 when it decided, informed Mr. Meadows that it would not be taking this grievance to arbitration. … At that point the process ended").

## II.   MEADOWS'S MOTION IS FRIVOLOUS

Meadows argues American should be sanctioned under Civil Rule 11(b)(3), 28 U.S.C. § 1927, and the Court's inherent authority.  But he presents no non-frivolous argument in support—in fact, he presents no developed argument at all. As explained above, the Settlement Agreement's factual recital is completely accurate.  Even assuming for the sake of argument that grievance No. 12-011 was not closed in 2013, Meadows has not come close to demonstrating sanctionable misconduct.

### A.   American Plainly Did Not Violate Rule 11(b)(3)

Rule 11(b)(3) provides that by presenting "a pleading, written motion, or other paper," an attorney certifies that "the factual contentions" in that filing "have

evidentiary support." Fed. R. Civ. P. 11(b)(3).[3]  As the Rule's text makes plain, it prohibits lawyers from making unsupported "factual contentions" in court filings— i.e., assertions by a lawyer to the court that a certain fact is true.  Here, American made no "factual contentions" about the closure of Meadows's grievance in any of its filings because that fact is irrelevant to American's arguments on appeal.  Thus, American did not mention the closure of Meadows's grievance in its merits brief. *See* Doc. 28.[4]

Contrary to Meadows's argument, Rule 11(b)(3), by its terms, does not apply to the factual content of evidence offered to a court.  Obviously, attorneys should not knowingly present false evidence.  But that concern is addressed by other rules and statutes, not Rule 11(b)(3).

Even if Rule 11(b)(3) applied, under Rule 11, "[a] factual claim is frivolous when it has no reasonable factual basis." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).  Rule 11(b)(3) is violated only "when the attorney exhibits 'a deliberate indifference to obvious facts.'" *Id.* (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).  Here, American clearly did not exhibit a deliberate

---

[3] Rule 11 does not by its own terms apply to appeals. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990).  Meadows asserts it applies here by virtue of Federal Rule of Appellate Procedure 46. *See* Doc. 48 at 4.

[4] American mentioned the history of the grievance culminating in the Utah litigation in the background section of its brief, *see* Doc. 28 at 12, which Meadows does not allege is inaccurate.

15

indifference to obvious facts.  Meadows's union agrees with American that the grievance was closed as of 2013.  Meadows himself admitted the same.  And Meadows unsuccessfully attempted to force his union to process his grievance in litigation in Utah, which he would not have done if the grievance remained open. Even if there were some merit to Meadows's position that the grievance was open, *but see* Part I, there is absolutely no merit to Meadows's position that American should be sanctioned for submitting evidence stating otherwise.

### B.      American Plainly Did Not Violate Section 1927

"For a court to justify an award of sanctions under § 1927, three conditions must be satisfied: (1) the attorney must engage in unreasonable and vexatious conduct, (2) that conduct must have multiplied the proceedings, and (3) the amount of sanctions must bear a financial nexus to the excess proceedings."  *Barnhart v. Lamar Advertising Co.*, 523 F. App'x 635, 638 (11th Cir. 2013) (citing *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997)).  None of these elements is satisfied here.

*First*, Meadows has identified no conduct by American even remotely approaching "objective bad faith."  *Nat'l Christmas Prods., Inc. v. OJ Commerce, LLC*, 2026 WL 773192, at *4 (11th Cir. Mar. 19, 2026); *see also Barnhart*, 523 F. App'x at 638.  As explained above, the Settlement Agreement's recitation that Meadows's grievance was closed by APA *is true*.  At absolute most that point is

16

contested, and submitting evidence that recites a contested fact is not sanctionable misconduct, particularly when the fact is immaterial, as here.

*Second*, American's submission of the Settlement Agreement did not multiply proceedings. A filing multiplies proceedings when it "results in proceedings that would not have been conducted otherwise." *Peterson*, 124 F.3d at 1396; *see also Celsius Holdings, Inc. v. A SHOC Beverage, LLC*, 2025 WL 2887300, at *6 (11th Cir. Oct. 10, 2025) (same). Here, Meadows did not oppose American's motion to supplement the record, so he was not obligated to file any additional briefs.

The only additional litigation generated by the Settlement Agreement is Meadows's motion for sanctions. But it is Meadows, not American, who multiplied proceedings in this respect. It is objectively unreasonable for a litigant to acquiesce to the submission of evidence and then turn around and argue that submitting the evidence is a basis for sanctions. If Meadows genuinely believed that the Settlement Agreement contained an inaccurate factual recital, his proper recourse was to oppose American's motion to supplement the record, not to lie in wait and move for sanctions once American's motion was granted. *Cf. Hyde v. Irish*, 962 F.3d 1306, 1311 (11th Cir. 2020) ("If Irish were right that the falsity of the allegations was so obvious from the face of the complaint, then he should have raised that concern when the complaint was first filed (or at least closer in time to that point).").

*Third*, sanctions under Section 1927 are limited to "the excess costs, expenses,

17

and attorneys' fees reasonably incurred" because of the offending filing.  28 U.S.C. § 1927.  Meadows does not argue he incurred any excess costs.  Nor could he, as he filed no brief in opposition to American's motion to supplement the record.

For all these reasons, Meadows's accusation of "false pretext," Doc. 48 at 4, rings hollow.  American could not have acted pretextually by submitting a settlement agreement with an allegedly false factual recital, when that factual recital is immaterial to its arguments on appeal.

Meadows, by contrast, seeks to use the Settlement Agreement to his tactical advantage.  Although legally irrelevant both to American's arguments on appeal and the reason for Meadows's exclusion from the Settlement Agreement, Meadows has made the Settlement Agreement's recital that his grievance was closed in 2013 the centerpiece of his reply brief on the merits.  *See, e.g.*, Doc. 44 at 1-5, 7-9, 12.[5]  And he has sought to use his filings in this case to his advantage in a separate pending lawsuit against APA.  There, he has argued that the Southern District of Florida should defer ruling on APA's summary judgment motion because the Settlement

---

[5] Meadows claims in his reply brief that the Settlement Agreement is a "new and discrete act of discrimination and retaliation."  Doc. 44 at 8 (emphasis removed). Meadows does not challenge the Settlement Agreement in his Amended Complaint here, *see* ECF No. 67, but he recently filed yet another lawsuit against American and APA (and others) asserting multiple claims based on the Settlement Agreement in the Eastern District of New York.  *See* Compl., *Meadows v. Am. Airlines, Inc.*, 2:26-cv-00679-EK-ARL (E.D.N.Y. Feb. 6, 2026), ECF No. 1.

Agreement "is currently the subject of a fraud-on-the-court investigation in the U.S. Court of Appeals for the Eleventh Circuit." Pl.'s Opp. to Def.'s Mot. for Summary Judgment and Mot. for Relief Under Fed. R. Civ. P. 56(d) at 1, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 15, 2026), ECF No. 249. Meadows even filed a supplemental authority notice, submitting his reply brief and sanctions motion from this case, in which he argued the Southern District of Florida should defer ruling on summary judgment because, he claims, this Court "is now actively seized with determining whether the January 15, 2025 settlement agreement is the product of a fraud on the court." Pl.'s Notice of Filing Supp. Auth. at 2, *Meadows v. Allied Pilots Ass'n*, 1:17-cv-22589-EA (S.D. Fla. Apr. 22, 2026), ECF No. 255.

**C.      American Plainly Did Not Commit A Fraud On The Court**

Finally, Meadows asks this Court to invoke its inherent authority to sanction American for committing a fraud on the court. As explained throughout, there is no fraud. And the only party potentially acting in "bad faith," as required for an inherent-authority sanction, *Hyde*, 962 F.3d at 1310, is Meadows.

## CONCLUSION

For these reasons, Meadows's motion should be denied.

Dated: April 27, 2026                    Respectfully submitted,

**STUMPHAUZER KOLAYA**          **O'MELVENY & MYERS LLP**
**NADLER & SLOMAN, PLLC**
                                        By: */s/ Mark W. Robertson*
Ryan K. Stumphauzer, Esq.               Mark W. Robertson

Fla. Bar No. 12176
Email: rstumphauzer@sknlaw.com
Timothy A. Kolaya
Fla. Bar No. 056140
Email: tkolaya@sknlaw.com
Matthew M. DellaBetta
Fla. Bar No. 1031216
Email: mdellabetta@sknlaw.com
2 South Biscayne Boulevard
Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400
Fax: (305) 614-1425

1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000
mrobertson@omm.com

Kelly S. Wood
610 Newport Center Drive
Newport Beach, CA 92660
(949) 823-6900
kwood@omm.com

Jason Zarrow
O'Melveny & Myers LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
(213) 430-6000
jzarrow@omm.com

*Counsel for Appellee American Airlines, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-1(a)(10), I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 4,557 words.  This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared using Microsoft Word in proportionally spaced, Times New Roman, 14-point font.

/s/ Mark W. Robertson
Mark W. Robertson

*Counsel for Defendant-Appellee*
*American Airlines, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on Plaintiff-Appellant Lawrence M. Meadows by U.S. mail to 1900 Sunset Harbour Drive, #2112, Miami Beach, FL 33139.

/s/ Mark W. Robertson
Mark W. Robertson

*Counsel for Defendant-Appellee*
*American Airlines, Inc.*

22

# EXHIBIT 1

# EXHIBIT DX20
# for Shiffrin Declaration

**1**



Defendant Exhibit
Exhibit No.: **20**
Name: **Meadows, L.**
Date: **1/13/2026**
ESQUIRE

**From:**   "Hairston, Charles R." <chairston@alliedpilots.org>
**Sent:**   Mon, 20 Jan 2014 15:16:30 +0000 (GMT)
**To:**   "Meadows, Lawrence M." <lawrencemeadows@yahoo.com>; "Copeland, Thomas J."<copelandthomas@hotmail.com>; "Rivera, Ivan - Sec" <ivanmad@aol.com>
**Subject:** RE: POC, Grievance Hearing Date, BOD Meeting

Larry –

APA will be taking no further action to support Grievance No. 12-011, which is closed and has no value associated with it at this point.


Charles R. Hairston
Attorney / Election Administrator
Allied Pilots Association
14600 Trinity Boulevard
Suite 500
Fort Worth, Texas 76155-2512
Telephone: (817) 302-2178
Facsimile: (817) 302-2187
THIS E-MAIL MAY CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION.  IF YOU BELIEVE YOU HAVE RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.

---

**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Friday, January 17, 2014 5:33 PM
**To:** Hairston, Charles R.; Copeland, Thomas J.; Rivera, Ivan - Sec
**Subject:** Re: POC, Grievance Hearing Date, BOD Meeting

Chuck,

I understand that 12-011 is closed, but I still have legal remedies that flow from it. Therefore, I want to ensure that to the extent APA's originally filed POC preserved that grievance and the actions which flow from it;  that if APA does in fact amend its POC by the 24th, that my grievance #12-011 remains included in it to protect my ability to pursue any other legal remedies associated with it.

Additionally, I will have to respectfully disagree with APA's position in regards to my status, because I believe I am still a member of the bargaining unit and owed a duty. Hence, the reason why I filed #13-064 for abrogation of my seniority and termination in violation of Sec.13 of the CBA. If as you contend that I have no rights under the CBA, then why is it that the company has agreed to hear my current my grievance; which is only a right to which members of the bargaining unit are entitled to under the CBA. Thus, I dispute APA's  ignoring its duty to me.

As to the hearing I want to be clear that I could attend on Jan 16th due to a personal issue, and that I did not elect not to proceed, but simply requested to reschedule it. To be clear I do want my grievance heard, and exercise my right to attend and be represented by a pilot of my choice at the hearing.

Thanks,
Larry


On Friday, January 17, 2014 2:56 PM, "Hairston, Charles R." <chairston@alliedpilots.org> wrote:
Larry –

As you know, Grievance No. 12-011 was not advanced to the System Board and has been closed.  Your most recent grievance, No. 13-064, is pending appeal hearing.  You are free to pursue whatever remedies you wish during that hearing.  As we have discussed, APA does not represent you since you are no longer a member of the bargaining unit.

Case 2:26-cv-25639-EK-ARL Document 288-6 Entered on Filed 05/04/26 Docket Page 01/22/26 Page 81 of USCA11 Case: 25-10297    Document: #9345    Date Filed: 04/27/2026    Page: 27 of 27

**2**

As far as scheduling, you elected not to proceed with the hearing on the previously scheduled date of January 16, 2013. It is my understanding that Tom and Ivan are waiting for schedules to come out on the 18th to see whether February is workable from their end. We will let you know what the schedule looks like.

Charles R. Hairston
Attorney / Election Administrator
Allied Pilots Association
14600 Trinity Boulevard
Suite 500
Fort Worth, Texas 76155-2512
Telephone: (817) 302-2178
Facsimile: (817) 302-2187
THIS E-MAIL MAY CONTAIN CONFIDENTIAL OR PRIVILEGED INFORMATION. IF YOU BELIEVE YOU HAVE
RECEIVED THIS E-MAIL IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY.

---

**From:** Lawrence Meadows [mailto:lawrencemeadows@yahoo.com]
**Sent:** Friday, January 17, 2014 3:27 PM
**To:** Hairston, Charles R.; Copeland, Thomas J.; Rivera, Ivan - Sec
**Subject:** POC, Grievance Hearing Date, BOD Meeting

Hello Chuck,

I just wanted to follow-up with you on a few items;

1.  It is my understanding that the SDNY issued an order that all claims arising under the rejection of executory contracts (CBA) must be filed by Jan 24th, and that APA is amending/updating its umbrella Proof of Claim. I just want to be sure that my legal remedies under my previously preserved grievance #12-011 continue to be preserved, and that the contractual and legal remedies under my pending grievance #13-064 are also fully preserved. Please let me know what action APA is taking related to preservation all of my grievance claims against AA related to my termination and removal form the seniority list, which arose under the CBA pre-commencement.

2.  Any word on scheduling for my grievance? I understand Feb. is bad for Thomas, but just want to let you know that I can be available anytime in Feb.or March, and would like to re-schedule at the earliest date possible that works for everyone involved.

3.  Finally, I saw brief blurb in the APA news digest that yesterday Bennett had briefed the BOD on the LTD 5 year rule, and the possibility of an extension or reinstatement to the seniority list. Could you elaborate more on that matter, and let me know what it means as it relates to me and my current grievance.

Thanks,
Larry

# EXHIBIT 4

**To Plaintiff's Motion to Stay**

# Case No. 25-10297-DD

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

Lawrence Meadows

*Plaintiff-Appellant*

v.

American Airlines, Inc.

*Defendant-Appellee*

Appeal from the United States District Court
for the Southern District of Florida

Case No. 1:24-cv-20518-DPG

## APPELLANT'S REPLY IN SUPPORT OF MOTON FOR SANCTIONS

Dated: April 29th, 2026

Lawrence M. Meadows
1900 Sunset Harbour Dr., 2112
Miami Beach, FL33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Appellant, Lawrence M. Meadows ("Meadows"), pursuant to Eleventh Circuit Rule 26.1-1, submits this Certificate of Interested Persons and Corporate Disclosure Statement. The following parties have an interest in the outcome of this case or appeal:

1. American Airlines, Inc. (Appellee);

2. American Airlines Group Inc. (corporate parent of Appellee);

3. DellaBetta, Matthew M. (Appellee's counsel);

4. Gayles, Hon. Darrin P. (United States District Judge);

5. Goodman, Hon. Jonathan (United States Magistrate Judge);

6. Kolaya, Timothy A. (Appellee's counsel);

7. Meadows, Lawrence (pro se Appellant);

8. O'Melveny & Myers LLP (Appellee's counsel's firm);

9. Robertson, Mark W. (Appellee's counsel);

10. Stumphauzer Kolaya Nadler & Sloman, PLLC (Appellee's counsel's firm);

11. Stumphauzer, Ryan K. (Appellee's counsel);

12. Wood, Kelly S. (Appellee's counsel); and

13. Zarrow, Jason (Appellee's counsel).

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned

C1 of C2

certifies that he is a natural person and not a corporation.


Lawrence M. Meadows
*Pro Se* Appellant

## APPELLANT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS

### PRELIMINARY MATTER: APPELLEE'S PROCEDURALLY IMPROPER REQUEST FOR SANCTIONS

As a preliminary matter, the Court should summarily disregard American's request for attorneys' fees (Opp. at 18), which is predicated on the baseless accusation that Plaintiff-Appellant Meadows is the party acting in bad faith (Opp. at 19). This is a procedurally improper attempt to seek sanctions. Federal Rule of Civil Procedure 11(c)(2) requires that a motion for sanctions "must be made separately from any other motion" and must be served on the opposing party 21 days before filing to provide a "safe harbor" period. American has not complied with these mandatory requirements. Their request is jurisdictionally defective and must be denied.

### ARGUMENT

Appellee American Airlines, Inc. ("American") and its counsel ask this Court to excuse their material misrepresentation by claiming they had a "good-faith basis" to believe Grievance 12-011 was closed in 2013. This defense rests on a single, out-of-context email while ignoring a decade of contrary judicial orders and, most damningly, American's own judicial admissions. Defendant- Appellee Americans opposition is not a defense; it is a continuation of the very misconduct the sanctions motion seeks to address.

### I. American's Defenses Fail as a Matter of Law and Logic.

1

American's opposition is built on two legally bankrupt arguments: that Appellant should have protected the airline from its own fraud, and that Appellant is the one multiplying the proceedings.

First, American's argument that Appellant should have opposed its Motion to Supplement (Opp. at 17) is a stunning attempt to shift the blame for Appellee American's own misconduct. There is no duty for a litigant to prevent his opponent from committing a fraud on the court. The obligation under Rule 11 rests exclusively with the filing party to ensure his submissions are factually accurate. Appellee's attorneys cannot absolve themselves of their manifest violation of their duty of candor by blaming their opponent for not catching their misrepresentation sooner.

Second, American's claim that this Motion, rather than its own fraudulent filing, "multiplied the proceedings" (Opp. at 17) defies logic. American initiated this collateral dispute the moment it filed a motion to supplement the record with the Settlement Agreement containing a material falsehood. As a litigant, Appellant has a duty to bring such conduct to the Court's attention, as a fraud on the court is a "wrong against the institutions set up to protect and safeguard the public." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944). This Motion is not a multiplication of the proceedings; it is the necessary remedy for the fraud that Appellee's counsel injected into this case.

**II. American's "Good-Faith" Defense Is Based on a Disingenuous Reading of Its Own Exhibit.**

2

First, the entirety of Appellee-American's "good-faith" defense rests on a disingenuous reading of a 2014 email from Appellant dated January 17, 2014. Appellee claims this email shows Appellant acknowledged that grievance 12-011 was closed. This is a gross mischaracterization – taken out of context. A plain and full reading of their own exhibit proves the opposite. In the email, Appellant actually states, "**I understand grievance12-011 is closed, <u>but I still have legal remedies</u> <u>that flow from it.</u>**" (Opp. At 26, Ex. 1, ¶ 2). This is not an admission; it is a clear recitation of the union's then-hostile position, which Appellant was preparing to challenge. The very same email confirms Appellant's intent to continue his effort to enforce his grievance rights through the legal process. American cannot credibly claim a "good-faith belief" a grievance was closed based on an email where the grievant explicitly states his intent to pursue legal remedies move it to arbitration.

Second, on September 16, 2014 - a full year after American's counsel now claims they believed Appellant's grievance 12-011 was "disposed of and closed in...2013" (Opp. At 3) - American's counsel filed a pleading in the U.S. District Court for the District of Utah explicitly agreeing to arbitrate grievance 12-011. In that filing, American stated:

> **American has informed Meadows and the APA that it will comply with any agreement of the parties to submit the grievances to a System Board hearing...**(Pleading, *Meadows v. Allied Pilots Ass'n*, No. 2:14-cv-00115 (D. Utah), ECF No. 31, at 3) [emphasis added] (Attached hereto as **Exhibit 1**).

3

This is a binding judicial admission. American cannot, in a 2014 federal court filing, agree to arbitrate Grievance 12-011, while telling this Court in its opposition (Opp. At 3) and its Motion to Supplement the Record with the Settlement Agreement that it was "disposed of and closed…in 2013" (ECF 30 at 12, ¶ 2).

## III. The Record Contains a Cascading Chain of Evidence That Destroys American's "Good-Faith" Defense.

Appellee-American's opposition cherry-picks a single email from January 2014 – to disengenuously assert Grievance 12-011 was "closed…in 2013" - while ignoring the mountain of contrary evidence detailed in the Motion for Sanctions. This evidence demonstrates an unbroken cascading chain of court orders, admissions, and even the corroboration from APA's own President, proving Grievance 12-011 remained open, active, and awaiting arbitration:

- **The 2014 Order:** On September 5, 2014 - a year after the grievance was supposedly "closed" - the Honorable Sean H. Lane of the U.S. Bankruptcy Court for the Southern District of New York issued an order stating Appellant **"shall be permitted to arbitrate Grievance 12-011."** (ECF No. 48, Ex. B).

- **The 2014 Admission:** On September 16, 2014, just nine days after Judge Lane's order, American's own counsel admitted in a filing in the U.S. District Court for the District of Utah that American **"will comply with any agreement of the parties to submit the grievances to a System Board hearing."** (Pleading,

4

*Meadows v. Allied Pilots Ass'n*, No. 2:14-cv-00115 (D. Utah), ECF No. 31, at 3) (Attached hereto as **Exhibit 1**).

- **The 2021 Order:** On November 8, 2021, Judge Lane again explicitly preserved the grievance, stating the stipulation **"does not affect Grievance No. 12-011."** (ECF No. 48, Ex. C).

- **The 2022 Admission:** In a 2022 proceeding before the Second Circuit, American's counsel again confirmed on the record that **"the process of fully litigating Grievance 12-011 … is unaffected by debtors' objection…[and] is on a separate track."** (ECF No. 48, ¶ 6).

- **The 2024 Corroboration:** Finally, the sworn declaration of former APA President, Captain Edward Sicher, confirms he directed Grievance 12-011 to be moved forward for arbitration in June 2024 and that it was **"still open active, and in the queue for an arbitration hearing"** as of October 7, 2024. (ECF No. 48, Ex. D, ¶ 27). Specifically, on January 28, 2026, Captain Sicher attested;

> Furthermore, on or about June 13, 2024, I directed the APA Director of Grievances, Tricia Kennedy, to move FO Meadows' individual Grievance 12-011 forward and schedule it for an arbitration hearing. To my knowledge, that grievance was still open, active, and in the queue for an arbitration hearing at least until I left office on October 7, 2024.

*Id.*

Any claim that counsel had a good-faith belief the grievance was "closed" in 2013 - in the face of this overwhelming decade long record evidence to the contrary

5

– is simply not credible. Particularly considering that Appellant's lead counsel, Mark Robertson, has been continuously involved in American's bankruptcy proceedings and associated litigation involving Appellant's Grievances since January 2015.

Moreover, American's reliance on the fact that Captain Sicher's successor, Nick Silva, later reverted to the false narrative that "grievance 12-011 was closed in 2013" (Opp. at 10) is not a defense - it is a confession of the collusive scheme. It does not retroactively justify a decade-old lie.

## V. American's Reliance on Nick Silva's Subsequent Conduct Is a Confession of the Collusive Scheme, Not a Defense.

In a desperate attempt to justify their misrepresentation, Apellee-American highlights paragraph 30 of Captain Sicher's declaration to argue that even he "admits" his successor, Nick Silva, now deems the grievance closed. (Opp. at 10). To the contrary, Captain Sicher attested Silva "falsely claimed" grievance 12-011 was closed, specifically:

> "I have since learned that on January 15. 2025, the new APA President **FO Silva executed à settlement that finalized the exclusion of FO <u>Meadows and falsely claimed that his individual Grievance 12-011, the very same grievance I had ordered to arbitration months earlier, was now being declared "closed since 2013."</u>**

(Sicher Decl., ECF 48, Ex. D, ¶ 30) [Emphasis Added].

This argument is a stunning confession of the very collusive scheme Appellant has alleged, not a defense to counsel's fraud. It fails for two dispositive reasons.

6

First, it conflates two separate time periods to create a false equivalency. The core issue of the Motion for Sanctions is whether American's counsel lied to this Court by claiming that a 2025 Settlement Agreement – which successfully obtained the reinstatement of three pilots on the strength of the grievance - confirmed that Grievance 12-011 was "disposed of and closed…in 2013." The fact that a new, company-compliant union president reverted to this false narrative in the January 2025 Settlement Agreement - after former APA Presidnet, Captain Sicher, who was actively prosecuting the grievance 12-011, was summarily removed from office after refusing to sign the Settlement Agreement - does not retroactively make the 2013 statement true. It is a classic "fruit of the poisonous tree" argument that asks this Court to ignore the initial fraud.

Second, it ignores the substance of Captain Sicher's sworn testimony. The central and damning point of Captain Sicher's declaration is that, as of October 7, 2024, Grievance 12-011 was active, open, and awaiting arbitration. (ECF No. 48, Ex. D, ¶ 27). What his successor, Nick Silva, did after President Sicher was removed is not evidence that American had a good-faith belief in the grievance was closed in 2013; rather, it is evidence of the continuing breach of the duty of fair representation, which culminated in the 2025 agreement to finalize the collusive scheme.

American's argument is effectively this: "Our statement that the grievance was closed in 2013 is credible because, after the union president who was actively

7

pursuing the grievance was removed from office, his successor agreed with our false premise." This is not a defense - it is an admission of the conspiracy.

## IV. This Court Possesses Broad Authority to Sanction Appellant's Counsel's Bad-Faith Conduct.

Appellee-American's conduct constitutes a fraud on the court and is sanctionable under multiple sources of authority. Counsel had a duty under Rule 11 to conduct a reasonable inquiry before proffering the settlement agreement to this Court. A reasonable inquiry would have included reviewing their own prior court filings. Their failure to do so, or their decision to ignore what those filings plainly stated, is the definition of reckless and sanctionable conduct. Appellee's opposition brief, which continues to ignore these dispositive facts, only compounds the initial violation. Rule 11 sanctions are warranted when a filing contains factual contentions lacking evidentiary support after a reasonable inquiry. *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010).

Here, American's counsel's representation had no reasonable factual basis. Furthermore, this Court has inherent authority to sanction conduct that abuses the judicial process. *Trump v. Clinton*, 161 F.4th 671, 688 (11th Cir. 2025). While American argues that the applicable standard is bad faith, its conduct here meets that high standard. "A finding of bad faith is warranted where an attorney or a client knowingly or recklessly raises a frivolous argument, or argues a meritorious claim

8

for the purpose of harassing an opponent." *Byrne v. Nezhat*, 261 F.3d 1075, 1121 (11th Cir. 2001).

Knowingly or recklessly submitting a court filing containing a material falsehood - a falsehood contradicted by a decade of federal court orders involving Appellant's counsel - is the very definition of bad-faith conduct.

## CONCLUSION

In closing, Appellee American's Opposition fails to account for the mountain of record evidence proving its counsel's misrepresentation to this Court. Their defense rests on a single, out-of-context email, while ignoring a decade their own judicial contrary admissions and federal court orders. This is not a good-faith error; it is a continuation of the bad-faith conduct that necessitated this motion, and amounts to a fraud on the court.

Because this conduct has vexatiously multiplied these proceedings and subverted the integrity of this Court, Appellant respectfully requests that the Motion for Sanctions be granted in its entirety, and this honorable Court grant any other relief it deems just and proper. Additionally, American's improper attempt for a cross-motion for sanctions should be denied.

Respectfully submitted,

Dated this 29th day of April 2026,

9

**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Eleventh Circuit Rule 27-4, I hereby certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because this document contains 9-pages consisting of 2,063 words, excluding the parts of the motion exempted by Rule 32(f). This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated this 29th day of March 2026,

_____
**Lawrence M. Meadows**
*Pro Se* Appellant
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

11

## CERTIFICATE OF SERVICE

**I, Lawrence M. Meadows, Pro Se Appellant, hereby certify,** that on April 29, 2026, a true and correct copy of the foregoing was served via Email and Federal Express upon all counsel of record at the firm addresses listed on the Service List below, pursuant to Fed. R. Civ. P. 11(c)(2).

Lawrence m Meadows

## SERVICE LIST

**Mark W. Robertson**
O'Melveny & Myers, LLP
1301 Avenue of the Americas Suite 1700
New York, NY 10019
212-326-4329
Email: mrobertson@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kelly S. Wood**
O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
949-823-6900
Email: kwood@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

12

**Jason Zarrow**
O'Melveny & Myers, LLP
400 S HOPE ST FL 19
LOS ANGELES, CA 90071
Firm: 213-430-6000
jzarrow@omm.com
*ATTORNEY TO BE NOTICED*

**Ryan K. Stumphauzer**
**Matthew M. DellaBetta**
**Timothy Kolaya**
Stumphauzer, Kolaya, Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard
Ste 1600
Miami, FL 33131
305-614-1413
Email: mdellabetta@sknlaw.com
*ATTORNEY TO BE NOTICED*

**Counsel for Appellee - American Airlines. Inc.**

13

**Exhibits:**

**1.** Defendant American Airlines, Inc.'s Reply in Support of its Motion to Dismiss, *Meadows v. Allied Pilots Ass'n*, No. 2:14-cv-00115 (D. Utah Sept. 16, 2014), ECF No. 31.

# EXHIBIT 1

James M. Barrett, Utah State Bar No. 11983
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: (503) 552.2140
james.barrett@ogletreedeakins.com

Todd C. Duffield
Georgia Bar No. 141905
  Admitted *Pro Hac Vice*
Todd.duffield@ogletreedeakins.com
Kathleen E. Kubis
Georgia Bar No. 744783
  Admitted *Pro Hac Vice*
kathleen.kubis@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

Attorneys for Defendant American Airlines, Inc.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAWRENCE M. MEADOWS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALLIED PILOTS ASSOCIATION and<br>AMERICAN AIRLINES, INC.<br><br>　　　　　Defendants. | Case No.: 2:14-CV-00115-DS<br><br>**DEFENDANT AMERICAN AIRLINES, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Fed. R. Civ. P. 12(b))<br><br>Judge David Sam |

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and local rule DUCivR 7-1(b), Defendant American Airlines, Inc. ("American") respectfully files this reply to Plaintiff Lawrence M. Meadows' ("Plaintiff" or "Meadows") Opposition to American's Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.

## AMERICAN'S BRIEF IN SUPPORT OF REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Meadows served American with the initial Verified Complaint on June 16, 2014, and he filed his first Amended Verified Complaint on July 22, 2014. (Ct. Doc. Nos. 1 and 21.) In response, American filed Motions to Dismiss both the Verified Complaint and the Amended Complaint, because Meadows failed to state a plausible claim against American. (Ct. Doc. Nos. 8 and 24.)

More specifically, the Amended Complaint, like the initial Verified Complaint, is devoid of any allegation that Meadows or the Allied Pilots Association ("APA") requested that American present the grievances to the System Board of Adjustment ("System Board") pursuant to the parties' collective bargaining agreement ("CBA") or that American has refused to afford Meadows or the APA access to the System Board for Meadows' grievances. The lack of any viable claim against American in the initial Verified Complaint or the Amended Complaint prompted American to file its Motions to Dismiss.

Recognizing the fallacy of his claim against American, subsequent to filing the Amended Complaint, Meadows submitted a request directly to American to process his grievances individually, without the involvement or the consent of the APA. (*See* Ct. Doc. No. 25, *available at* https://ecf.utd.uscourts.gov/doc1/18303140928.) At this juncture, however, the APA has argued that Meadows has no individual right to process his grievances and that

Meadows delegated grievance processing authority to the APA under the APA's Constitution and Bylaws. (Ct. Doc. No. 23 at 11-12, *available at* https://ecf.utd.uscourts.gov/doc1/18303118953.) Therefore, whether Meadows has an individual right to arbitrate his grievances before a System Board, or whether he has given that authority to the APA as his union representative will be resolved by the Court.

American has informed Meadows and the APA that it will comply with any agreement of the parties to submit the grievances to a System Board hearing or, if no agreement can be reached between Meadows and APA, with any order of this Court.

## CONCLUSION

For the reasons set forth above and in American's Motion to Dismiss Plaintiff's First Amended Complaint, American respectfully requests that the First Amended Complaint be dismissed as to American pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this 16th day of September, 2014.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

By: /s/ Todd C. Duffield

James M. Barrett
Utah State Bar No. 11983
james.barrett@ogletreedeakins.com
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR 97201
Telephone: (503) 552.2140
Facsimile: (503) 224-4518

Todd C. Duffield (Admitted *Pro Hac Vice*)
Georgia Bar No. 141905
Todd.duffield@ogletreedeakins.com

Kathleen E. Kubis (Admitted *Pro Hac Vice*)
Georgia Bar No. 744783
kathleen.kubis@ogletreedeakins.com
One Ninety One Peachtree Tower
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

*Counsel for Defendant American Airlines, Inc.*

Case 2:14-cv-00115-DS Document 31 Filed 09/16/14 Page 5 of 5

## CERTIFICATE OF SERVICE

I hereby certify that on the date set out below, I electronically transmitted the foregoing

**DEFENDANT AMERICAN AIRLINES, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to the Clerk's Office using the CM/ECF Systems for filing, causing a Notice of Electronic Filing to be sent to the following CM/ECF registrants:

Arthur F. Sandack
8 E Broadway, Suite 411
Salt Lake City, UT 84111
asandack@msn.com

Steven K. Hoffman
James & Hoffman, P.C.
1130 Connecticut Avenue, N.W., Suite 950
Washington, D.C. 20036
skhoffman@jamhoff.com

Of Attorneys for Defendant Allied Pilots Association

I further certify that I served the following non-CM/ECF participant by email and United States First Class Mail, postage prepaid:

Lawrence Meadows
P.O. Box 4344
Park City, UT 84060
lawrencemeadows@yahoo.com
*Pro Se* Plaintiff

Dated: September 16, 2014.

/s/ Todd C. Duffield
Todd C. Duffield (Admitted *Pro Hac Vice*)
todd.duffield@ogletreedeakins.com

18937169
037394-000010