June 23, 2026

**VIA CM/ECF PRO SE PORTAL**

The Honorable Eric R. Komitee
United States District Judge, E.D.N.Y.
225 Cadman Plaza East, Brooklyn, NY 11201

**RE: *Meadows v. Allied Pilots Association*, Case No. 2:26-cv-00679-EK-ARL**
**Plaintiff's Reply Letter in Support of Transfer or, in the Alternative, a Stay**

Dear Judge Komitee:

Pursuant to Your Honor's June 9, 2026 Order, Plaintiff Lawrence Meadows respectfully submits this reply to Defendant Allied Pilots Association's ("APA") Response (ECF No. 36) to Plaintiff's request to transfer this action to the Southern District of Florida (S.D. Fla.) or, in the alternative, to stay these proceedings (ECF Nos. 32, 31). APA's response attempts to preserve a localized, state-law narrative that no longer exists, while presenting a fictional depiction of "virtual finality" in the first-filed Florida action. Immediate transfer is compelled by the first-to-file rule and the interests of justice.

## I. Plaintiff's Residency and the Elimination of All State-Law Claims

APA's attacks regarding Plaintiff's residency are both legally irrelevant and factually misleading. At the time of filing, Plaintiff resided in this District to care for his aging father with serious health challenges, with the intent to remain. More importantly, APA's argument that this case is governed by localized New York state law is entirely obsolete.  By voluntarily dismissing individual defendants  Nick Silva, Sue Edwards, and American Airlines without prejudice on May 4, 2026 (ECF Nos. 28, 29, 30), Plaintiff effectively withdrew from this action of all state-law claims (tortious interference, civil conspiracy, and intentional infliction of emotional distress). What remains is a **pure federal question case** against a single national pilots' union. The surviving claims, brought under the Americans with Disabilities Act ("ADA"), the Railway Labor Act ("RLA") - Duty of Fair Representation ("DFR"), and the Labor-Management Reporting and Disclosure Act ("LMRDA"),  arise from a ongoing post-2021 pattern of discrimination, bad-faith representation, and retaliation.

Even if APA disputes Plaintiff's New York residency, they do not dispute personal jurisdiction or venue in the Southern District of Florida. Under 28 U.S.C. § 1631, where otherwise here personal jurisdiction is contested in the transferor court - as APA admitted (ECF No. 26 at 2, ¶ 1) - but undisputed in the transferee court. The "interest of justice" overwhelmingly favors transferring the action to the first-filed forum rather than dismissing it.

## II. The Florida Action is on the Verge of Implosion, and the Transfer Factors Heavily Favor Florida

APA's argument that the Florida case is "near resolution" is a legal fiction. The S.D. Fla. docket is a procedural quagmire where a trial is a calendrical impossibility. As of this filing, the S.D. Fla. court must conduct a *de novo* review of **ten (10) pending and unresolved**

1

**Objections** and **two (2) pending, fully briefed Spoliation Motions (S.D. Fla. ECF Nos. 187, 223)** detailing failure to provide key custodians litigation hold letters, systemic evidence destruction, including the "wiping" of a former president's laptop and the destruction of his five milk crates of contemporaneous notes. The pending objections directly challenge the fitness of counsel (Eighth Objection, ECF No. 259, seeking disqualification for criminal witness tampering and an impermissible firm-wide conflict), the integrity of the record (Tenth Objection, ECF No. 264, detailing APA counsel's fraud on the court), and the scope of the case (First and Ninth Objections, ECF Nos. 149, 260, challenging the fraudulently procured Protective Order).

To demonstrate the gravity of these unresolved issues, Plaintiff attaches the **Second Supplemental Declaration of former APA President Edward F. Sicher** attached hereto as **Exhibit A**, and the **Declaration of Lawrence Meadows** attached hereto as **Exhibit B**. These declarations, currently before the Florida court, prove that the Florida record is compromised and that APA's portrayal of the case as "near resolution" is demonstrably false. No trial can occur until these threshold constitutional and evidentiary challenges are resolved.

To evade transfer under 28 U.S.C. § 1404(a), APA makes the verifiably false representation to this Court that it "is not aware of any witnesses (other than Plaintiff), documents, or facts that are located in Florida." (ECF No. 36 at 2, ¶ 5). In reality, the key witnesses are heavily concentrated in Florida. Former APA President Dan Carey (a Naples, Florida resident) is explicitly listed on **APA's own Florida Trial Witness List (S.D. Fla. ECF No. 273)**. Furthermore, APA's own S.D. Fla. Initial Disclosures identify former President Edward F. Sicher and former Secretary-Treasurer Pam Torell as Florida residents, while Plaintiff's S.D. Fla. Initial Disclosures identify current Miami Domicile Chairman Jay Wilhelm, Kathy Emery, and Pete Lepore as Florida-resident witnesses.

None of these critical witnesses reside in New York, and this Court lacks subpoena power to compel their attendance under Fed. R. Civ. P. 45. Every convenience and fairness factor under *Armstrong v. Costco Wholesale Corp.*, 234 F. Supp. 3d 367, 370 (E.D.N.Y. 2017) compels transfer: Plaintiff is a Florida resident, APA has a major Miami domicile, all New York state-law related Defendants with their associated claims have been voluntarily dismissed, and the S.D. Fla. court is intimately familiar with this eight-year litigation.

### III. This Second-Filed Action Was Forced by APA's Misrepresentations

APA's response attempts to frame this New York action as a vexatious, duplicative filing. In reality, this lawsuit was necessitated solely by the fraudulent conduct of APA's counsel, John Pellettieri. During discovery in the Florida action, Mr. Pellettieri made numerous material misrepresentations to the court to secure a highly restrictive Protective Order (S.D. Fla. ECF No. 138), which artificially limited the temporal scope of discovery to December 31, 2021, and quashed eight key depositions. When APA subsequently engaged in egregious post-2021 misconduct - including executing a collusive, secret settlement in January 2025 that reinstated other disabled pilots while pretextually excluding Plaintiff, and summarily terminating Plaintiff's 34-year union membership on May 1, 2025, to prevent him from exposing the fraud to the Board of Directors - the Florida Magistrate refused to allow Plaintiff to supplement his pleadings. Plaintiff was procedurally forced to file this second action in New York to preserve his post-2021 claims. Now that the individual defendants have been dismissed, transferring this case to Florida

2

is the only mechanism to consolidate these inextricably linked federal claims, lift the fraudulent Protective Order, and facilitate a single, coordinated, and efficient resolution of the entire dispute.

## IV. APA's Lack of Diligence and Failure to Monitor the Docket

In a desperate bid to excuse their failure to oppose Plaintiff's Motion to Stay (ECF No. 31), APA's counsel claims they did not receive automated ECF notifications. This excuse is legally and professionally untenable. On May 4, 2026, Plaintiff filed three separate Notices of Voluntary Dismissal (ECF Nos. 28, 29, 30), leaving APA as the sole remaining defendant - as a matter of basic professional competence, the receipt of three dismissal notices should have prompted a premier Washington, D.C. law firm to immediately inspect the docket. Had they done so, they would have seen Plaintiff's Motion to Stay (ECF No. 31), which remained pending and unanswered for nearly a month. APA's failure to monitor their own active dockets cannot serve as a legal basis to excuse their default or reward them with an expedited motion to dismiss schedule.

## V. In the Alternative, a Stay is Mandatory Pending the Eleventh Circuit's Ruling

Should this Court decline to transfer this action, it must, at a minimum, grant Plaintiff's Motion to Stay (ECF No. 31) pending a ruling on Plaintiff's motion for sanctions for fraud on the court, currently pending before the U.S. Court of Appeals for the Eleventh Circuit (*Meadows v. American Airlines, Inc.*, Case No. 25-10297). The Eleventh Circuit appeal involves the very same January 2025 secret settlement agreement co-signed by APA. The appellate court's determination as to whether that agreement was predicated on a fraudulent pretext (that Grievance 12-011 was "closed since 2013") is directly dispositive of Plaintiff's ADA retaliation claims (Counts I & II), DFR claims (Count III), and LMRDA claims in this action. Proceeding with merits-based litigation in this Court while the core evidentiary document is under active fraud review by a superior appellate court would be a profound waste of judicial resources.

## VI. Conclusion

The "first-to-file" rule is a doctrine of orderly administration of justice. See *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). APA's own personal jurisdiction objections, combined with the voluntary dismissal of all individual defendants and the procedural quagmire in Florida, make transfer the only logical, efficient, and lawful path forward. Plaintiff respectfully requests that this Court **expeditiously transfer** this action to the Southern District of Florida or, in the alternative, **stay all proceedings** pending the Eleventh Circuit's ruling.

Respectfully submitted,

/s/ Lawrence M. Meadows
**Lawrence M. Meadows, Plaintiff, Pro Se**
1900 Sunset Harbour Drive, #2112, Miami Beach, FL 33139
Telephone: (516) 982-7718
Email:lawrencemeadows@yahoo.com

3