# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

LAWRENCE MEADOWS,
    Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

## SECOND SUPPLEMENTAL DECLARATION OF CAPTAIN EDWARD F. SICHER

I, Captain Edward F. Sicher, declare and state as follows:

1.      I am over the age of eighteen and am competent to make this declaration. The facts stated herein are based on my personal knowledge.

2.      I previously submitted two sworn declarations in this matter, filed at ECF No. 180, Exhibit 3, and ECF No. 187, Exhibit 1. I have reviewed those declarations and re-affirm all statements made therein as true and correct.

3.      I submit this supplemental declaration to correct certain factual errors in the Magistrate Judge's May 25, 2026 Report and Recommendation ("R&R") [ECF No. 269]. I have dedicated a decade of my career, from 2014 to 2024, to advocating on behalf of First Officer Meadows and similarly situated disabled pilots, first as his Miami Domicile Representative and later as APA President. My knowledge spans the entire period of this litigation, both within and beyond the Court's December 31, 2021 temporal scope limitation.

1

4.     **Regarding Spoliation of Evidence:** The Magistrate's R&R recommends summary judgment on a record whose integrity is subject to a pending Motion for Sanctions for Spoliation [ECF No. 187]. As I stated in my prior declaration (ECF 187, Ex. 1) and re-affirm here, I was never placed on a litigation hold by APA's Legal Department during my entire tenure as President, and I was never instructed by APA counsel to preserve my emails text messages, or other ESI related to my union duties with respect to First Officer Meadows. Because of this failure, I routinely deleted my emails and text messages. Most egregiously, after I was removed from office, my APA-issued laptop was "effectively wiped clean" by APA staff.

5.     In addition to my laptop, I was known for keeping copious contemporaneous handwritten notes on standard yellow legal pads regarding all aspects of my union duties. These notes amounted to hundreds of individual legal pads, which I stored in approximately five milk crates. Each pad was typically dated and labeled by topic, such as "Meadows Litigation" or matters related to the REDDI committee. I relied on these contemporaneous notes for accuracy, including during sworn deposition testimony in other litigation. As I was never instructed by APA's Legal Department to preserve these materials, I discarded and destroyed all five crates of these handwritten notes when cleaning out my garage after I was removed from office in late 2024.

6.     **Regarding Fraud on the Court:** The R&R is predicated on a Protective Order that was procured by fraud. As I attested in my prior declarations (ECF 180, Ex. 3, ¶ 26; ECF 187, Ex. 1, ¶ 5), I have direct, personal knowledge that APA counsel John Pellettieri's representations to the Court that attorney Sue Edwards never represented First Officer

2

Meadows were false. I personally retained Ms. Edwards on behalf of APA to represent First Officer Meadows and authorized her retainer.

7. **Regarding Counts I & II (DFR - Seniority Integration):** The R&R's finding that APA's actions were reasonable is contradicted by the record. As I attested in my prior declaration (ECF 180, ¶ 18), I proffered APA Board of Directors Resolution R2016-30, which explicitly acknowledged that legacy American Airlines' Medically Disabled Dropped ("MDD") pilots suffered "disparate treatment" and were improperly removed from the seniority list due to the "subjective interpretation of the CBA", and that some were deemed "problematic employees" and unfairly denied reinstatement. This resolution documented the Board's acknowledgment of these issues during the ISI proceedings.

8. **Regarding Count III (DFR - Grievance 12-012):** The R&R's finding that Grievance 12-012 did not apply to First Officer Meadows is false. As I previously attested (ECF 180, ¶ 23), in March 2023, I converted Grievance 12-012 into Sicher Expedited Presidential Grievance 23-031 for the express purpose of advancing Meadows' claim. demonstrating that APA itself treated the grievance as applying to him.

9. **Regarding Counts IV & V (Breach of Contract):** The R&R's finding that these claims are preempted ignores APA's own, duplicitous legal position. As I previously attested (ECF 180, ¶ 19), I am aware that APA's Legal Department, relying on the secret "Babb-Denison" legal opinion based a false narrative, internally maintained that APA owed no statutory duty of fair representation ("DFR") to MDD pilots under the Railway Labor Act ("RLA").

10. **Regarding Counts VI & VII (LMRDA - Membership & Free Speech):** The R&R's reliance on the 2017 *Valverde* arbitration award is a clear error. As I previously

3

attested (ECF 180, ¶¶ 21-22), my official September 2, 2022, "Presidential Constitutional Interpretation, Inactive Member Standing" superseded that award and affirmed First Officer Meadows' status as a member in good standing, pursuant to which I appointed him to the APA National Aeromedical sub-committee to serve as the Miami Domicile's Long-term Disability Coordinator. I have firsthand knowledge that First Officer Meadows was previously permitted to speak at multiple Board of Directors meetings as a member in good standing. Following his request to speak and expose the secret settlement at the APA Spring 2025 Board of Directors Meeting, his membership was terminated by President Nick Silva on May 1, 2025.

11. **Regarding Count VIII (LMRDA - Retaliation):** The R&R's finding that this claim is barred is erroneous. It ignores new, independent acts of retaliation. As I attested in my prior declarations (ECF 180, ¶ 26; ECF 187-1, ¶ 5), I have personal knowledge that APA leadership pressured First Officer Meadows to drop this lawsuit, and his legal representation was terminated after he refused. Most egregiously, the pretext used in the January 15, 2025 Settlement Agreement was the deliberate falsehood that Grievance 12-011 was "closed since 2013," a fact I know to be false as I had personally directed that same grievance to be moved to arbitration in June 2024.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __29__ day of May, 2026.

_Captain Edward F. Sicher_

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LAWRENCE MEADOWS,
Plaintiff,

v.

ALLIED PILOTS ASSOCIATION, et al.,
        Defendants.

CASE NO. 17-cv-22589-EA
HONORABLE JUDGE ED ARTAU
_____/

### DECLARATION OF PLAINTIFF LAWRENCE M. MEADOWS
### IN SUPPORT OF PLAINTIFF'S CONSOLIDATED REPLY

I, Lawrence Meadows, declare under penalty of perjury that the following is true and correct:

1. I am the Plaintiff in this action and make this declaration based on my personal knowledge and contemporaneous notes. I have the utmost respect for this Honorable Court and have endeavored at all times to proceed in a manner consistent with Federal Rule of Civil Procedure 1, which requires that actions be administered to secure the "just, speedy, and inexpensive determination of every action." In doing so, I have strived to preserve the resources of the parties and this Court and to avoid the "undue burden or expense" prohibited by Federal Rule of Civil Procedure 26(c).

2. On April 23, 2026, counsel for APA, Joshua Shiffrin, sent an *ex parte* email to Magistrate Judge Reid's chambers seeking to have the court impose his proposed pretrial schedule upon me. This communication occurred after our morning meet-and-confer and at a time

1

Mr. Shiffrin knew I was unavailable, as I was required to take an unscheduled break from my duties as a flight simulator instructor to respond.

3. After Magistrate Judge Reid's chambers declined to intervene and instructed the parties to comply with Judge Artau's order, I immediately acted with prudence and diligence by requesting that APA join me in a motion to adjourn. When APA refused, I filed my Unopposed Motion to Adjourn Trial on April 24, 2026 (ECF No. 257), after securing Mr. Shiffrin's agreement not to oppose it.

4. After that motion was fully briefed by May 5, 2026, and the Court had not ruled, I again diligently sought relief by filing my Emergency Motion for a Protective Order to Stay Trial Preparations on May 11, 2026 (ECF No. 263). APA's counsel advised me they took "no position" on that motion. This followed APA's pretextual opposition to my Motion to Adjourn, wherein APA strenuously argued for over a page that proceeding with trial preparation before a summary judgment ruling would "render those submissions "obsolete.", and that an adjournment was necessary to "facilitate the efficient resolution of this case." (ECF No. 261 at 2-3).

5. In separate emails on May 7, 2026, and May 14, 2026, Mr. Shiffrin proposed a pretrial exchange schedule that required APA to provide me with draft jury instructions on May 20, 2026, as the first step in the process. APA never provided these instructions and initiated no exchanges.

6. During a telephonic meet-and-confer on May 29, 2026, Mr. Shiffrin began the call by stating, **"I see in general that it's absurd we have to go through any pre-trial process at this point…,"** but stated APA intended to file its submissions anyway.

2

7. During that same May 29, 2026 call, after I noted that APA had failed to adhere to its own proposed schedule and effectively abandoned it. Specifically, that APA failed to serve its jury instructions on May 20 as twice proposed via email; to which Mr. Shiffrin stated, **"we certainly had no obligation to send you our materials when you were unwilling to send us anything."** Late of the submission deadline of May 29, APA unilaterally filed on the docket its pre-trial submissions all at once, without previously serving them upon Plainitff.

8. On June 1, 2026, after Judge Artau issued his Order resetting the trial date to July 13 (ECF No. 277), I conferred with Mr. Shiffrin regarding my intent to file a Renewed Motion for Protective Order based on the new trial date. In an email that morning, he stated APA "takes no position." Hours later, during our telephonic conferral, after I reminded him of his prior "absurd" comment, he became hostile, reversed course, and stated APA would "oppose the motion", claiming I was in default.

9. My decision to seek a stay was based on a good-faith belief that it made no sense to prepare for trial while fundamental, case-altering motions remained undecided by this Court. I was confused and uncertain how a trial could proceed.

10. This uncertainty stemmed from numerous unresolved foundational issues, including:

    **a. The Fitness of Counsel:** My Eighth Objection (ECF No. 259) seeks to disqualify APA's counsel based on a "swearing match" over a conflict of interest, created when APA counsel John Pellettieri falsely represented that APA never retained attorney Sue Edwards on my behalf (ECF No. 142). This is directly contradicted by former APA President Ed Sicher, who attests: "I personally retained Ms. Edwards on behalf of APA to represent First Officer Meadows and authorized her retainer." (Second Supplemental Declaration of Captain Edward F. Sicher ("2nd Supp. Sicher Decl."),

3

attached hereto as **Exhibit A**, 2nd Supp. Sicher Decl. ¶ 6; See also ECF No. 285, Ex. 1). This dispute requires a mandatory evidentiary hearing. *See Baxter v. Roberts*, 54 F.4th 1241, 1257 (11th Cir. 2022).

**b. The Integrity of the Record:** My two un-ruled-upon Motions for Spoliation Sanctions (ECF Nos. 187, 223) allege systemic destruction of evidence, including the deletion of text, emails, and ESI, along with the wiping of a former president's laptop hard drive and destruction of five milk crates of irreplaceable notes, because, as Captain Sicher attests, he was **"never issued a litigation hold notice"** by APA's Legal Department. (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 4; See also ECF No. 285, Ex. 1). These motions require an evidentiary hearing and could result in case-altering sanctions, including adverse jury instructions.

**c. The Scope of the Case:** My First, Eighth, and Tenth Objections (ECF Nos. 149, 259, 264) challenge the fraudulently-procured Protective Order (ECF No. 138). That order was obtained based on Mr. Pellettieri's serial misrepresentations, including his false claims that: (1) attorney Sue Edwards was never retained by APA to represent me, a statement Captain Sicher attests is false (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 6); and (2) that Grievance 12-012, which goes to the heart of Count III of my complaint, did not apply to me, a statement Captain Sicher also attests is false. (**Exhibit A**, 2nd Supp. Sicher Decl. ¶ 8). If this fraudulently obtained order is vacated, the scope of discovery would be fundamentally altered.

11. At no point did I ever willfully refuse to comply with the Court's orders. I consistently stated to opposing counsel that I must defer pretrial exchanges pending a ruling on my motions for a protective order.

Executed on June 5th, 2026.

Lawrence M. Meadows