*** Filed ***
02:18 PM, 10 Aug, 2026
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAWRENCE MEADOWS,
    Plaintiff,

v.

AMERICAN AIRLINES, INC., et al.,
    Defendants.

CASE NO. 2:26-cv-00679-EK-ARL
HONORABLE JUDGE ERIC R. KOMITEE
_____/

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

#### PRELIMINARY STATEMENT

APA's opposition does not resolve the narrow issue presented. APA stated in ECF No. 36 that it was **"not aware of any witnesses (other than Plaintiff), documents, or facts that are located in Florida."** After Plaintiff identified contrary Florida ("FLSD") case materials in ECF No. 37, APA maintained that position in ECF No. 38. Then in ECF No. 39 APA acknowledged only that former APA President Captain Ed Sicher "may have information relevant" to this action, without withdrawing the categorical statement or addressing the other identified Florida witnesses.

The issue is whether counsel could reasonably make that representation, given APA's Florida filings, and whether ECF No. 39 corrected it. Plaintiff relies on the Florida case materials of former APA President Ed Sicher's January 28, 2026 declaration and APA's March 31, 2025 Document Retention and Preservation Memorandum identifying three Florida-resident custodians.

### I. THE RELEVANT CHRONOLOGY

1. On June 6, 2026, Plaintiff filed his pre-conference letter seeking transfer to the Florida Southern District (ECF No. 32).

1

**2.** On June 22, APA's response stated that it was "not aware of *any* witnesses (other than Plaintiff), documents, or facts located in Florida." (ECF No. 36). The FLSD docket showed otherwise.

**3.** On June 23, Plaintiff identified Florida-resident witnesses in related FLSD materials, including Dan Carey, Ed Sicher, Pam Torell, Jay Wilhelm, Kathy Emery, and Pete Lepore (ECF No. 37).

**4.** On June 24, APA maintained "there was no reason to assume" Carey or other Florida witnesses possessed information relevant to the alleged events at issue in this case. (ECF No. 38).

**5.** Plaintiff served the Rule 11 motion via email on June 25 and by paper service on June 29, with exhibits of FLSD filings showing six Florida witnesses and three custodians (ECF Nos. 41–41-2).

**6.** On July 1 at 2:30 p.m., APA filed ECF No. 39. It acknowledged Sicher but did not identify the other Florida-resident witnesses—Carey, Torell, Wilhelm, Emery, or Lepore—or withdraw the broader categorical statement in ECF No. 36, which ECF No. 38 later re-advocated.

**7.** That same day at 5:42 p.m., Plaintiff sent APA written notice identifying the clarification's remaining deficiencies and requesting a complete correction. That notice bears on Plaintiff's good faith and APA's fee request but is not offered as a new safe-harbor period.

**8.** On July 21, after the 21-day safe-harbor period expired, Plaintiff filed the Rule 11 motion (ECF No. 41). APA filed its opposition on August 4, 2026 (ECF No. 44), and Plaintiff submits this reply.

This chronology bears on objective reasonableness and correction, not subjective intent.

## II. APA'S CATEGORICAL STATEMENT WAS UNSUPPORTED AS WRITTEN

ECF No. 36 did not state that APA was unaware of Florida witnesses relevant only to a specified period, claim, or case. APA categorically stated that it was unaware of **"any witnesses (other than Plaintiff), documents, or facts that are located in Florida"** (ECF No. 36 at 2 ¶ 5). APA's present effort to characterize the statement as meaning that Florida residents were "not necessarily witnesses in this case" (ECF No. 44 at 6) does not change what ECF No. 36 said when

2

filed. Nor does that later assertion answer the antecedent Rule 11 question: whether counsel, before making an unqualified statement that APA knew of no Florida witnesses, documents, or facts, conducted a reasonable inquiry into the Florida records and known custodians identified in APA's own filings who were asked to preserve evidence relevant to the same time-frame in this case.

## III. APA'S FLORIDA RECORD REQUIRED INQUIRY

APA's Florida Trial Witness List identified former APA President Captain Dan Carey as a deposition witness (ECF No. 41, Ex. A; FLSD ECF No. 273 at 1). Carey's role in reinstatement and grievance matters made his Florida knowledge relevant to Plaintiff's EDNY claims. The narrower point is that Carey was a known Florida-resident witness whose role overlapped with Plaintiff's grievances, reinstatement efforts, and union decisions identified in ECF No. 37. That fact required inquiry and qualification before APA made its categorical statement.

The January 28, 2026 Sicher declaration addresses facts bearing on Plaintiff's EDNY claims concerning grievance handling, reinstatement, membership status, the January 15, 2025 settlement, and membership termination (FLSD ECF No. 180, Ex. 3, Sicher Decl. ¶¶ 21, 23, 30–31, Exs. G, K, L, **attached as Exhibit A**). APA's March 31, 2025 Preservation Memorandum identifies Florida-resident custodians Carey, Sicher, and Torell and directs preservation of Plaintiff-related information (FLSD ECF No. 207-1, Myers Decl., Ex. F, **attached as Exhibit B**). These sworn materials identify Florida custodians and firsthand information bearing on Plaintiff's grievances, settlement, and membership termination, undercutting APA's immateriality characterization and supporting the need to investigate and qualify ECF No. 36.

## IV. APA's CLARIFICATION ECF NO. 39 DID NOT FULLY CORRECT THE RECORD

APA conflates two propositions: (1) APA knew of Florida witnesses and disputed their relevance to the New York claims; and (2) APA was unaware of any Florida witnesses, documents,

or facts. The first may be a defensible position—but it is not what ECF No. 36 said. APA's later dispute over relevance cannot cure the original categorical statement or substitute for the reasonable inquiry required before counsel made it. Plaintiff treats ECF No. 39 as a clarification, *not* a correction. It acknowledged only that Sicher may have relevant information; it did not withdraw the categorical statement, identify Carey or other relevant Florida-resident witnesses, address APA's own records, or explain the original wording. ECF No. 39 therefore narrowed APA's position without fully correcting the record—leaving the material deficiency unresolved.

## V. THE GOVERNING RULE 11 INQUIRY IS OBJECTIVE

Rule 11(b)(3) requires evidentiary support for factual contentions, and the governing inquiry is "objective." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008); *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017); *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542–46 (1991). Plaintiff submits that APA's categorical statement did not satisfy that "reasonable inquiry" standard because it was directly contradicted or materially qualified by APA's own Florida docket filings.

## VI. TRANSFER AND JURISDICTION DO NOT RESOLVE RULE 11

APA emphasizes that the Court denied transfer on a jurisdictional or pleading ground. That issue may bear on transfer, but it does not establish that APA's separate factual representation was reasonable. APA presented the categorical assertion in a context where witness convenience and access to evidence were relevant under 28 U.S.C. § 1404(a); another ground for decision does not retroactively make it accurate. Plaintiff does not ask the Court to revisit transfer here. The Florida proceedings are cited only to show what APA knew or should have known and why ECF No. 36 required qualification. Reconsideration and leave to amend remain separate from this inquiry.

## VII. PLAINTIFF'S MOTION IS RECORD-BASED; FEES SHOULD BE DENIED

4

Plaintiff identifies a particular statement, related Florida case materials, the service chronology, and an incomplete clarification. He served the motion before filing, complied with the Rule 11(c)(2) safe-harbor period, and promptly notified APA that ECF No. 39 remained materially incomplete—giving further opportunity to correct its position. APA need not have acted in bad faith for Rule 11 to apply; the relevant question is whether its categorical statement was objectively supportable after reasonable inquiry into its own Florida records. This is a concrete, record-based issue, not a generalized accusation. Accordingly, APA's fee request should be denied.

## VIII. REQUESTED RELIEF

For these reasons, Plaintiff respectfully requests that the Court:

**A.** Grant the Rule 11 motion, or alternatively deny APA's request for fees and expenses;

**B.** Find that APA's opposition does not eliminate the objective reasonable-inquiry issue presented by ECF Nos. 36–39;

**C.** If the Court finds a Rule 11 violation, impose narrowly tailored non-monetary corrective relief, including, if appropriate, correction or withdrawal of the categorical representations in ECF Nos. 36 and 38; and

**D.** Grant such other relief as the Court considers just and proper.

Dated: August 10, 2026

Respectfully submitted,

Lawrence M. Meadows, Plaintiff
1900 Sunset Harbour Drive, #2112
Miami Beach, FL 33139
Telephone: (516) 982-7718
Email: lawrencemeadows@yahoo.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Meadows, hereby certify that on August 10, 2026, I filed the foregoing via the Court's CM/ECF Pro Se Portal, which will cause a Notice of Electronic Filing (NEF) to be sent to all registered counsel of record, and also served the same via email and U.S. Mail.

Lawrence M. Meadows
Plaintiff, Pro Se

### Service List

**Joshua Shiffrin**
**John M. Pellettieri**
**Lloyd M. Shadgett**
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W., Suite 1000
Washington, D.C. 20005
jshiffrin@bredhoff.com
lshadgett@bredhoff.com
jpellettieri@bredhoff.com

*Counsel for Defendants Allied Pilots Association*

# EXHIBIT A

**To Plaintiff's Reply to Motion for Sanction Pursuant to Rule 11**

**EDNY Case No. 2:26-cv-00679-EK**

**January 28, 2026 Sicher Declaration (FLSD ECF No. 180, Ex. 3)**

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


LAWRENCE M. MEADOWS,
    Plaintiff,

    v.

ALLIED PILOTS ASSOCIATION, et al.,
    Defendants.

CASE NO. 17-cv-22589-EA
Honorable Judge Ed Artau
_____/

## DECLARATION OF CAPTAIN EDWARD F. SICHER

I, Captain Edward F. Sicher, declare as follows pursuant to 28 U.S.C. § 1746:

1.    I am over the age of eighteen and all statements made herein are true and correct to the best of my knowledge.

2.    I am a veteran who served over 20-years as a U.S. Air Force Officer, am a decorated combat fighter pilot, who retired at the rank of Lt. Colonel, and was hired as a pilot for American Airlines in 1998, where I've worked for over 27 years, and am currently a B-777 Captain (CA) flying intentional routes.

3.    During my military career I was disabled and grounded from flying to due to being temporarily paralyzed as the result of a vaccine reaction during Desert Storm. My wife was pregnant with my first-born at the time and the Air Force threatened me with removal. Thus, I have experienced first-hand what it means to be a long-term disabled (LTD) pilot who has lost their flying career and suffered the associated difficulties and long fight to get medically re-certified and return to the cockpit. This is a primary reason why I am a staunch advocate for American Airline's LTD and MDD (Medical Disabled Dropped from AA seniority list) pilots.

1

Interpretation on Sep 2, 2022, defining "members in good standing" (The APA President is the only union official allowed to interpret the Constitution and By-Laws at APA).

21. The formal Constitutional Interpretation (see attachment) confirmed that inactive members, including MDD pilots, like FO Meadows, who had fulfilled all prior membership requirements, were "members in good standing." And could certainly serve on APA committees and in official APA capacities. A copy of that Presidential interpretation is attached hereto as **Exhibit G.**

22. As a direct result of my Constitutional Interpretation FO Meadows, as a member in good standing, was able to serve as the MIA Domicile LTD Coordinator, where he sponsored and helped scores of disabled pilots.

23. As APA President, I also took steps to address FO Meadows' long-pending individual and collective seniority reinstatement grievances. On March 13, 2023, at FO Meadows request, I converted the collective Grievance 12-012 into expedited Presidential Grievance 23-031. A copy of G-23-031 is previously attached as **Exhibit B.**

24. I also created the National Dropped Reinstatement ad hoc Committee ("NDRC"), and around April 2023, I appointed First Officer ("FO") Thomas Rempfer as Chairman, to ensure that APA leaves "no pilot behind". The NDRC was tasked with finding avenues of reinstatement for those who have been dropped from the seniority list, by virtue of disability, merger, or other reason, not including retirement or discipline. This was intended to help obtain reinstatement of FO Meadows and other similarly situated MDD pilots. A copy of the NDRC power point presentation that FO Rempfer created in collaboration with MDD pilots FOs Meadows and Preitz is attached hereto as **Exhibit H.**

IT upgrades, problems with AA's Safety program and the FAA oversight of the airline, etc. etc. all Nick wanted to discuss was the issue of Larry Meadows. This was a huge surprise to me and indicative of how much pressure he was under by the APA legal department to fold on APA's advocacy for Meadows and the grievances I had filed as President. The question he dwelled on for most of the 45' he had scheduled for me was "Why wouldn't you approve the proposed MDD settlement by removing Larry Meadows?"

30. I have since learned that on January 15, 2025, the new APA President FO Silva executed a settlement that finalized the exclusion of FO Meadows and falsely claimed that his individual Grievance 12-011, the very same grievance I had ordered to arbitration months earlier, was now being declared "closed since 2013." A copy of this January 15, 2025 Grievance 12-012/23-031 Settlement are attached hereto as **Exhibit K.**

31. I have also been informed by FO Meadows that on or around May 1, 2025, the current APA President Nick Silva, terminated Meadows 34-years of APA membership via a letter, in response his request to speak during membership guest hour at the 2025 Spring Board of Directors Meeting. A copy of this correspondence is attached hereto as **Exhibit L.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of January, 2026.

_____
Captain Edward F. Sicher
MIA/777/International

13

# EXHIBIT G

Case 1:17-cv-22588-FAM   Document 180   Entered on FLSD Docket 01/29/2026   Page 51 of 85

**ALLIED PILOTS ASSOCIATION**

*Representing the pilots of American Airlines*

O'Connell Building • 14600 Trinity Boulevard, Suite 500, Fort Worth, TX 76155-2512 • 817.302.2270 • www.alliedpilots.org

From: CA Ed Sicher, APA President

Date: September 2, 2022

Re: Presidential Constitutional Interpretation, Inactive Member Standing

---

The Allied Pilots Association Constitution and Bylaws (C&B) gives the President the authority to "enforce" the C&B and issue "written interpretations" thereof. *See* Article IV, Section 8.A.3. A question has arisen as to the standing afforded to Inactive Members.

## Article III.2.D

D. Inactive Membership shall be assigned to flight deck operating crew members (including Check Airmen) who have completed the probationary period and meet the qualifications set forth in Article III, Section 1A, upon application and approval. Pilots in the following employment statuses shall be eligible for inactive membership: *(06/07/2006)*

1. Furlough
2. Medical or Personal Leave of Absence
3. Military Leave of Absence
4. Pilots not on active flying status with AA concurrently owing back dues. *(02/28/2008)*

Inactive Member. A member in good standing shall automatically be transferred to inactive membership status upon: *(02/25/99)*

1. Being furloughed by the Company.
2. Being on leave of absence from the Company thirty-six (36) months after the expiration of paid sick leave, or *(11/02/2018, R2018-45 Rev 2)*
3. Being in the United States military forces on continuous active duty in excess of sixty (60) months. *(02/28/2008)*
4. When that pilot is not on active flying status with AA and that pilot owes back dues, that pilot will remain on inactive membership status until he/she returns to work at AA. At that time, he/she will resume payment of back dues and will be returned to active membership. *(02/28/2008)*

## Article III.5.A

### Section 5. Membership Status

A. A member in good standing shall remain a member in good standing as long as such member has paid current dues, assessments or other financial obligations due to the Association. The Secretary-Treasurer shall transfer a member from good to bad standing if such member shall be delinquent in either dues, assessments or other financial obligations due to the Association. A member will be placed in inactive

**APA** ALLIED PILOTS ASSOCIATION
*Representing the pilots of American Airlines*

O'Connell Building • 14600 Trinity Boulevard, Suite 500, Fort Worth, TX 76155-2512 • 817.302.2270 • www.alliedpilots.org

membership status by the APA Secretary-Treasurer when that member owes back dues and is not on active flying status. *(03/18/2011)*

## Interpretation

Prior to October 2017, Inactive Members who were members in good standing at the time that they became inactive retained their good standing while in Inactive Member status. Following an arbitration award in the matter of *Meadows v. Wilson*, in which the arbitrator found that Inactive Members have no standing, neither good or bad, a Presidential constitutional interpretation was issued adopting that same position. For the reasons set forth below, I hereby rescind that interpretation and issue the following interpretation:

Article III, Section 2.A of the Constitution & By-Laws provides that "[a] member in good standing shall automatically be transferred to inactive membership status upon the occurrence of one of the specifically identified events therein. Article III, Section 5.A of the Constitution & By-Laws provides that "[a] member in good standing shall remain a member in good standing as long as such member has paid current dues, assessments or other financial obligations due to the Association."

Per Article III.2.A, only a member in good standing may be transferred to inactive membership status. As a result, at the time a member is transferred to inactive status, he or she must be in good standing. Article III.5.A provides that a member in good standing shall remain in good standing "as long as such member has paid current dues, assessments or other financial obligations due to the Association." Inactive Members do not receive compensation from American Airlines and thus do not have any ongoing dues, assessments or other financial obligations to the Association while they are in inactive status.

The C&B clearly provides that an Inactive Member must be a member in good standing at the time he/she becomes an Inactive Member. The C&B further provides that a member in good standing shall retain such standing as long as the member is current on all financial obligations to the Association. Because Inactive Members have no ongoing financial obligations to the Association while in such status, it is my interpretation that under the relevant provisions of the Constitution & By-Laws, Inactive Members, other than those who owed back dues at the time they went into inactive status, retain their good standing while in Inactive Member status.

This interpretation is solely intended to address the issue of standing of Inactive Members and does not bestow or vest any rights or privileges not already provide by the APA Constitution & By-Laws or APA benefit plans.

# EXHIBIT K

# SETTLEMENT AGREEMENT

### Between

### AMERICAN AIRLINES, INC.

### and the

### ALLIED PILOTS ASSOCIATION

American Airlines, Inc., including its subsidiaries, affiliates, and parent companies, (collectively "American" or "Company"), and the Allied Pilots Association ("APA" or "Union") (collectively referred to as the "Parties"), mutually desire to settle and resolve Sicher Expedited Presidential Grievance 23-031 (converted from DFW Domicile Grievance No. 12-012). Accordingly, the Parties hereby agree to the following terms to compromise, settle, fully and finally resolve Sicher Expedited Presidential Grievance 23-031, including the underlying DFW Domicile Grievance No. 12-012, in its entirety, as follows:

WHEREAS, on May 22, 2012, the APA DFW Domicile Representatives filed Grievance No. 12-012 protesting the Company's alleged violation of the 2003 Collectively Bargained Agreement for failing to provide pilots notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five (5) years; and

WHEREAS, on March 13, 2023, the APA converted the DFW Domicile Grievance No. 12-012 into Sicher Expedited Presidential Grievance 23-031 (collectively with DFW Domicile Grievance No. 12-012, the "Presidential Grievance"). The Presidential Grievance continued to protest the Company's alleged violation of the Collectively Bargained Agreement for failing to provide pilot notice of termination prior to terminating the employment status of pilots who have been on inactive status, unpaid sick, or disability for more than five years; and

WHEREAS, in the Presidential Grievance the APA contended that the Company's failure to provide notice to pilots of their impending removal from the seniority list and separation from employment precluded those pilots from either attempting to return to service prior to being dropped from the seniority list and separated from their employment, and/or filing a grievance challenging the Company's decision to drop them from the seniority list and separate them from employment; and

WHEREAS, the remedy sought in the Presidential Grievance was an award ordering the Company to provide affected individuals with notice of their removal from the seniority list and separation from service thereby allowing them to then file a grievance challenging that action based upon the facts that existed at the time the original notice should have been given; and

WHEREAS, the Company contends the APA may not convert a domicile grievance into a presidential grievance and the APA disagrees with same;

WHEREAS, the Company contends the Presidential Grievance is without merit; and

WHEREAS, the Parties conducted a mediation on November 7, 2024, before a Neutral, and

Settlement Agreement                                                    Page 1 of 6

through subsequent discussions, reached an agreement to resolve the Presidential Grievance; and

WHEREAS, the Parties desire to avoid further controversy and fully settle and compromise the Presidential Grievance, without any further proceedings.

NOW, THEREFORE, in exchange for the mutual considerations described herein, the sufficiency of which is hereby acknowledged, the Parties agree to fully resolve the Presidential Grievance, as follows:

1. Although no specific pilots are referenced in the Presidential Grievance or the underlying Domicile Grievance, the Parties have identified the following four (4) individuals who were on inactive status, unpaid sick, or disability for more than five years, were removed from the pilot seniority list and separated from employment with the Company, and have represented that they have since obtained, or have filed paperwork to obtain, an FAA First Class Medical Certificate, and expressed a desire to be reinstated to employment as a pilot with the Company: Timothy Curren (354581), Dale Churovich (354629), Lawrence Meadows (332713), and Roger Wagner (318588) (collectively the "Identified Individuals").

2. One of the Identified Individuals, however, Lawrence Meadows, was provided and received the notice attached as Exhibit A during his prior employment in advance of his removal from the seniority list and separation from employment in 2011, and the Parties agree that none of the other Identified Individuals received similar communications from the Company prior to their separation from employment. Following Mr. Meadows' removal from the seniority list and separation from employment, he filed two grievances challenging the Company's actions. The Company disputes that the notice given was required by the CBA while the APA contends that the notice was required and that the provided notice may not have been compliant in form. However, the APA has concluded that, under the totality of circumstances of this case, it is unlikely to prevail on its argument before the System Board, particularly in light of the fact that Mr. Meadows filed Grievance 12-011 and Grievance 13-064 challenging the Company's decision to separate him from employment at the time. Both grievance 12-011 and 13-064 were subsequently disposed of and closed after the APA declined to advance them in 2013 and 2014, respectively. As a result, Mr. Meadows is deemed not to be an Eligible Individual under this Agreement, and thus, he is not eligible for reinstatement under this Agreement.

3. Based on the Parties' knowledge, Timothy Curren (354581), Dale Churovich (354629), and Roger Wagner (318588) (collectively "Eligible Individuals") did not receive notice prior to their removal from the seniority list and separation from employment and did not file a grievance challenging the Company's actions at the time. The Eligible Individuals may elect to utilize the process detailed below for possible reinstatement to the Pilot Seniority List and return to employment and active status at the Company, provided they satisfy the conditions detailed below.

4. The Parties agree to offer a one-time opportunity to the Eligible Individuals to utilize the following process for possible reinstatement to the Pilot Seniority List and return to

employment with the Company (the "Process for Possible Reinstatement"). The Process for Possible Reinstatement must commence within thirty (30) days of the full execution of this Settlement Agreement. Each Eligible Individual may elect to pursue or may decline to pursue this one-time opportunity to pursue the Process for Possible Reinstatement as described below.

a. The APA will provide each Eligible Individual with the terms of the Process for Possible Reinstatement and advise them of their right to opt into pursuing reinstatement through the Process for Possible Reinstatement and that, regardless of whether they seek reinstatement, the Presidential Grievance will be withdrawn with prejudice pursuant to this Agreement. In the event an Eligible Individual does not timely and properly opt to pursue the Process for Possible Reinstatement, then the Eligible Individual will have waived his right to pursue the Process for Possible Reinstatement and will have elected not to return to employment with the Company and the APA will not advance any subsequent request for reinstatement, reemployment, or rehire on their behalf.

5. Process for Possible Reinstatement. The Parties agree the following steps comprise the Process for Possible Reinstatement for the Eligible Individuals:

a. **Step 1**: In the event an Eligible Individual opts to pursue the Process for Possible Reinstatement, the Eligible Individual must send an email to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org) so indicating no later than thirty (30) consecutive calendar days after the date this Settlement Agreement is fully executed. The Eligible Individual must include a true and correct copy of his First Class Medical Certificate along with the email.

b. **Step 2**: Within 14 days of providing the Notice in Step 1, the Eligible Individual must execute a General Release (attached as Exhibit B) and email it to Maranda Rosenthal (maranda.rosenthal@aa.com) and Jim Clark (jclark@alliedpilots.org).

c. **Step 3**: The Eligible Individual shall submit to and successfully clear the standard pre-employment background checks for American pilots, including PRIA records review, submission to the Rap Back Program, fingerprinting, drug and alcohol testing, and any other standard, pre-employment requirement for New Hire American pilots.

d. **Step 4**: The Eligible Individual shall execute and submit a request to the FAA for a complete copy of their medical file (commonly referred to as a "Blue Ribbon File") to be released and sent to Natasha Narayan, MD, American's Corporate Medical Director. Dr. Narayan will review the Blue Ribbon File received from the FAA. Dr. Narayan shall have twenty (20) days to review the file upon receipt of same. In the event American's Corporate Medical Director concludes that the Blue Ribbon File is complete and accurate on its face, the Company will accept the determination rendered by the FAA in granting the medical certificate.

In the event American's Corporate Medical Director determines that the Blue Ribbon File indicates a need for further information or clarification in order for the Eligible Individual to continue on the Process for Possible Reinstatement, the Company will notify the Eligible Individual and APA in writing and identify the information/clarification needed. The criteria used in determining whether further information/clarification is necessary will be limited to: (a) suspected non-disclosure of material information; (b) evidence of non-compliance with an established treatment plan, (c) a prescribed treatment plan being inconsistent with a diagnosis or evaluation, or (d) clearance reports from a physician or specialist whose credentials are not consistent with the reported diagnosis. The Eligible Individual will then have the opportunity to provide additional information/clarification in response to the item(s) identified by the Medical Director.

Within ten (10) days of receipt of a response from the Eligible Individual, the Company will notify the Eligible Individual and APA in writing if additional information/clarification is needed and detail the basis for such determination. The Eligible Individual will be given an opportunity to withdraw their reinstatement request in writing to both the Company and the APA within ten (10) days of receipt of notification. If the Eligible Individual elects to withdraw their reinstatement request, then the Company will not take any further action. If the Eligible Individual does not withdraw his request for reinstatement or affirmatively confirms in writing his intention to continue with the reinstatement process under this Agreement, the Company shall copy the pilot on an email submission of Dr. Narayan's request for an FAA aeromedical general review at 9-AMC-GRCustomerSvc@faa.gov. An FAA request for information is not a denial. If the FAA denies the Eligible Individual's medical certificate, such Eligible Individual's reinstatement request shall be denied. If the FAA does not deny the Eligible Individual's medical certificate in response to the request for review, then the FAA determination on the medical certificate will be deemed final and binding with regard to reinstatement of the Eligible Individual.

If the Company seeks a general review of an Eligible Individual's medical certificate and the FAA confirms the medical certificate, the Eligible Individual will be entitled to be paid retroactive to the date the request for FAA general review was made at the hourly pay rate based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold. This period of retro pay will not be included in the 18-month guarantee provided in paragraph 6(b) below. In the event the FAA requests information directly from the Eligible Individual during the general review process, the period of time between when the request is made and when the Eligible Individual responds to the request will not be considered compensable in the event retroactive pay is required under this paragraph.

e. **Step 5**: If an Eligible Individual successfully completes Steps 1 through 4, he will be reinstated to employment with the Company and placed on the Pilot Seniority list at the number representing approximately where he would have

been had he remained continuously employed by the Company ("relative seniority"). Reinstatement will begin effective with the commencement of training.

f. **Step 6**: The Eligible Individual shall be assigned the first available training spot within three (3) months of the date reinstatement is approved, and will be given five (5) days' notice of same. The Eligible Individual will receive the standard AQP training course proffered to New Hire American pilots, inclusive of the standard remedial training offered to New Hire American pilots. Once the Eligible Individual successfully completes his training, he is considered an active employee and governed by the 2023 AA-APA Agreement and Company policies except as noted herein. In the event the Eligible Individual does not successfully complete training due to a training failure, he will not advance any further on the Process for Possible Reinstatement, and APA will not advance any subsequent request for reinstatement, reemployment, or rehire on his behalf.

6. The following terms apply to each Eligible Individual who successfully completes the Process for Possible Reinstatement ("Reinstated Pilot"):

a. Upon successful completion of training, each Reinstated Pilot shall be assigned as a First Officer on a narrow body aircraft until such time as the Reinstated Pilot has accomplished 1,000 hours of flight time as a narrowbody First Officer. After the completion of the required 1,000 hours of flight time, the Reinstated Pilot may exercise his seniority to bid for and be awarded whatever bid status his relative seniority can hold in the first vacancy bid award following completion. Prior to assigning the Reinstated Pilot a narrow body bid status, the Company shall confer with the Reinstated Pilot about his aircraft and base preferences and take such preferences into consideration when assigning the Reinstated Pilot a narrow body bid status.

b. Compensation will commence once the Eligible Individual successfully completes Steps 1 through 4 above and timely reports for training as directed and described in this Settlement Agreement. Regardless of what seat and equipment is being flown, the Reinstated Pilot's hourly pay rate will be based on the Equipment Pay Band (AA-APA Agreement Section 3) that his relative seniority will allow him to hold for the first 18 months of his reinstatement. At the conclusion of the first 18 months, the Reinstated Pilot will assume the pay rate associated with whatever bid status the Reinstated Pilot holds at that time.

c. Upon completion of training, the Reinstated Pilot's vacation bank and sick bank will reflect zero hours and will begin to accrue based upon the pilot's length of service in accordance with the 2023 Agreement. The Parties agree that the terms of LOA 18-001 do not apply to the Eligible Individuals. The Parties agree that the Reinstated Pilot's length of service will reflect the following upon timely reporting for training at the Training Academy:

Timothy Curren (354581) – updated Class Date 1/20/2016 – 9 years

Dale Churovich (354629) – updated Class Date 1/29/2017 – 8 years
Roger Wagner (318588) – updated Class Date 2/16/2020 – 5 years

7.   The Parties agree that the Eligible Individuals defined above cannot be changed, expanded, or modified in any way.

8.   The APA agrees to immediately withdraw with prejudice the Presidential Grievance and is resolved on a no citation and no precedence setting basis.

9.   This Agreement does not constitute an admission of any kind by the Company or the APA and is being entered into to avoid the expense and uncertainty of arbitrating the Presidential Grievance.

10.  The Parties agree that this Agreement constitutes the complete agreement between the Parties concerning the Presidential Grievance and that no other representations or promises have been made by the Parties in that regard.

11.  This Agreement may not be modified in any manner except in a writing signed by both Parties.

**ALLIED PILOTS ASSOCIATION**

By: _____
First Officer Nick Silva
President

Dated:  January 15, 2025

**AMERICAN AIRLINES, INC.**

By: _____
Maranda Rosenthal
Managing Director, Labor Relations/Flight
Assoc. General Counsel

Dated:  January 15, 2025

# EXHIBIT L

Case 1:17-cv-22500-FA    Document 180    Entered on FLSD Docket 01/29/2026    Page 84 of 85



**ALLIED PILOTS ASSOCIATION**
*Representing the pilots of American Airlines*

O'Connell Building • 14600 Trinity Boulevard, Suite 500 • Fort Worth, TX 76155-2512 • 817.302.2272 • www.alliedpilots.org

May 1, 2025

CA Lawrence Meadows
*Via Electronic Mail*

Dear Mr. Meadows,

It has been brought to my attention that you have requested to be included as a speaker during the Membership/Guest hour at the upcoming Spring Board of Directors meeting as a "member in good standing" of the Association.

As has been recently reaffirmed by the United States District Court for the Southern District of Florida, you were terminated from your employment as a pilot with American Airlines in 2011 pursuant to the terms of the Pilot Collective Bargaining Agreement. Following your termination by American, you were converted to Inactive Member status based on the fact that you were dropped from the seniority list, and thus terminated, due to having been out for more than five years due to a disability.

In 2018, you were able to obtain a first-class medical certificate and sought reinstatement to your position as a pilot with American Airlines. APA supported your request for reinstatement in accordance with its established protocols for seeking reinstatement for MDD pilots who regained their medical certificates. As you are aware, the decision to reinstate a pilot to employment is solely within the discretion of the Company and MDD pilots have no right to reinstatement. As you alleged in your recent lawsuit against the Company, American denied your request for reinstatement in 2019.

In light of the fact that you have not been employed by American Airlines as a flight deck crewmember since 2011 and then subsequently sought and were denied reinstatement by the Company after regaining your first class medical certificate, you are not qualified to retain any membership status in APA under Article III of our Constitution & Bylaws. Accordingly, you are not a member of APA, and you are thus not eligible to speak as a member during the membership hour of the upcoming Board of Directors meeting.

Respectfully,

First Officer Nick Silva
President, Allied Pilots Association

# EXHIBIT B

**To Plaintiff's Reply to Motion for Sanction Pursuant to Rule 11**

**EDNY Case No. 2:26-cv-00679-EK**

**March 31, 2025 APA Document Retention and Preservation Memorandum**

**(FLSD ECF No. 207-1, Ex. F)**

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**LAWRENCE MEADOWS,**

      Plaintiff,                          **CASE NO. 17-CV-22589-EA**

v.

**ALLIED PILOTS ASSOCIATION,**
*et al.*

      Defendants.

---

## SUPPLEMENTAL DECLARATION OF MARK MYERS

I, MARK MYERS, hereby declare and state as follows:

1. I am a resident of Texas. I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth below.

2. I submit this declaration upon personal knowledge and upon review of relevant documents maintained by the Defendant Allied Pilots Association ("APA").

3. I am an in-house attorney for APA. I have been employed in that position continuously since 2008. In my position, I am familiar with the policies and procedures used by APA to preserve information for potential litigation, both generally and related to this litigation.

4. On September 20, 2013, in anticipation of potential litigation by Plaintiff, the legal department distributed a memorandum informing likely custodians of their "obligation to preserve all documents that relate in any way to FO Meadows." A true and correct copy of that memorandum is attached to this declaration as Exhibit A.

5. The APA legal department sent the document preservation memorandum to individuals employed by APA whom the legal department identified as likely custodians of information and documents related to Mr. Meadows' anticipated claims.

6. On August 18, 2017, shortly after Plaintiff filed his complaint in this case, the 2013 memorandum was redistributed to likely custodians by email. A true and correct copy of that email is attached to this declaration as Exhibit B. The memorandum was again redistributed by email on November 17, 2017 (Exhibit C), March 2, 2018 (Exhibit D), and August 1, 2019 (Exhibit E).

7. The APA legal department circulated an additional document preservation memorandum on March 31, 2025 (Exhibit F), after the stay was lifted in this case.

8. Ed Sicher was President of APA from July 1, 2022, through October 7, 2024, when he was recalled by the Board of Directors. Prior to serving as President, Mr. Sicher served as a domicile representative. APA national officers, domicile representatives, and committee members are APA members either elected or appointed to various union positions.

9. Pat Clark was elected as APA's Secretary-Treasurer in 2019 and took office on July 1, 2019. Mr. Clark remained in that position through June 30, 2025. He has not held any office or position with APA since June 30, 2025. APA is not aware of a connection between Plaintiff's claims in this case and Pat Clark that would have led APA to conclude Mr. Clark was a likely custodian of relevant information or documents in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: February 18, 2026

Mark Myers

2




## ALLIED PILOTS ASSOCIATION
Representing the pilots of American Airlines

O'Connell Building • 14600 Trinity Boulevard, Suite 500 • Fort Worth, TX 76155-2512 • 817.302.2272 • www.alliedpilots.org

## MEMORANDUM

## ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL – DO NOT FORWARD

TO: Wes Meyer (wmeyer@alliedpilots.org); Tricia Kennedy (tkennedy@alliedpilots.org); Mark Myers (mmeyers@alliedpilots.org); APA Legal Department (legdep@alliedpilots.org); and APA IT Department (helpdesk@alliedpilots.org).

FROM: Jim Clark, Sr. Director of Legal Affairs

DATE: March 31, 2025

RE: **Document Retention and Preservation Related to Litigation Brought Against APA by Lawrence Meadows**

Allied Pilots Association ("APA") has been named as a defendant in a lawsuit filed by Lawrence Meadows pending the United States District Court for the Southern District of Florida (the "Lawsuit"). The Lawsuit asserts claims against APA for breach of contract and breach of duty of fair representation among other claims.

As a party to a lawsuit, APA is legally obligated to preserve all documents, records and data (referred to together as "documents") related to the subject of this lawsuit. This would include, but not be limited to, all documents, records, communications, and data related to:

- Lawrence Meadows and/or the allegations in the Lawsuit;
- Communications within APA related to Lawrence Meadows or the allegations in the Lawsuit; and
- Communications with the Company or any other related to Lawrence Meadows or the allegations in the Lawsuit;

*IT Department:* In addition to the identified staff members listed above, the litigation hold obligations also cover the APA email and other files belonging to former Presidents Keith Wilson, Dan Carey, Eric Ferguson, and Ed Sicher and former Secretary-Treasurer Pam Torell.

The term "all documents" is **very** broad. It includes any documents, in any form whatsoever, that in any way relate to or reference the issues mentioned above or any related matters. "All documents" includes both electronic and paper documents. It includes:

- emails, text messages, letters, memoranda, reports, notes, calendars, Microsoft Word and Excel files;
- photographs, audio and video recordings, and any other type of electronic recording, including those from or maintained on smartphones (such as iPhones, iPads, Androids and Blackberries) and cell phones;

- posts and messages on social media and online forums (such as Facebook, Instagram, Snapchat, Twitter, Challenge & Response, and The Line, etc.); and
- all drafts of any document and any non-identical copy of the document that exists whether in hard copy or electronic form.

The retention requirement applies regardless of the source of the information. In other words, the information may come from hard (paper) copies, computer drives, computer servers, cloud-based storage services, removable media (CDs or DVDs), laptop computers, PDAs such as iPhones, Androids, tablets such as iPads, flash drives, cell phones, social media websites, web-based email accounts, and any other location where hard copy and electronic data is stored, including Case&Point or Legal Files.

Keep in mind that any of the sources mentioned above are not limited to APA-provided equipment and may include other computers, mobile devices you use for union purposes or have access to either at home or at other locations. The term "all documents" includes any relevant emails or documents saved in personal email accounts (such as gmail accounts), as well as in online storage media maintained by you.

In order to comply with APA's legal obligations, you, and all others identified above, must immediately preserve all of the information described above and must not delete, overwrite or otherwise destroy or possibly destroy any of that information. This means that you must no longer delete any of the information described above even if it would be deleted in the normal course of business, for example, deletion of emails. In order to be certain that no potentially relevant material is deleted or destroyed, please do not delete any documents or email messages, even if they are in your "trash" folder, or on any electronic device (iPhones, Androids, iPads, etc.).

This obligation is ongoing. These document retention obligations supersede APA's normal document retention practices with respect to the documents described above, and the retention obligations described in this memorandum are in addition to any other obligations to preserve documents in connection with other litigation. You must take every reasonable step to preserve this information until further notice from me. *Failure to preserve this information could result in extreme penalties to the Union.*

If you or anybody else has any questions about your or their preservation obligations, please contact me.