**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**LAWRENCE MEADOWS,**

Plaintiff, **CASE NO. 26-CV-679 (EK) (ARL)**

v.

**ALLIED PILOTS ASSOCIATION,**

Defendant.
_______________________________________/

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT APA'S MOTION TO DISMISS ALL CLAIMS**

This is Plaintiff's fourth lawsuit against Allied Pilots Association growing out his 2011 separation from employment at American Airlines. Plaintiff's prior lawsuits were all found to be procedurally or substantively deficient, and the same is true of this lawsuit. Most fundamentally, this Court lacks personal jurisdiction over APA, and venue is lacking in this district as well. The Court can and should dismiss this case on either of those grounds alone. In addition, the complaint fails to state a claim upon which the Court can grant relief.

**BACKGROUND**

Defendant Allied Pilots Association (APA) is a union based in Fort Worth, TX, that serves as the exclusive representative for a bargaining unit composed of pilots at American Airlines ("American"). ECF No. 1 (Compl.) ¶ 5. Plaintiff Lawrence Meadows became a pilot at American and a member of APA in 1991. *Id.* ¶ 14. In 2003, Plaintiff ceased flying for American due to disability and commenced a long period of disability and/or unpaid sick leave, and in 2004, his medical certification from the Federal Aviation Administration—a prerequisite for a pilot to operate commercial aircraft—expired. *Id.* ¶ 20 & n.4; *see Meadows v. APA*, No. 1:17-CV-22589,

2026 WL 2595234, at *2 (S.D. Fla. May 25, 2026), *report and recommendation adopted*, 1:17-CV-22589 (S.D. Fla. Aug. 18, 2026), ECF No. 304. In October 2011, American terminated Plaintiff's employment with American and removed him from the pilot seniority list pursuant to provisions in the then-operative collective bargaining agreement (CBA) between American and APA that permitted American to terminate a pilot who had been on unpaid sick or disability leave for five years or more. Compl. ¶¶ 20-22 & n.4; *see Meadows v. APA*, 2026 WL 2595234, at *2.[1] Plaintiff regained his medical certification in 2018, but American—which retained sole discretion whether to reinstate him to employment—denied APA's and Plaintiff's requests to reinstate Plaintiff. Compl. ¶¶ 17, 33; *see Meadows v. APA*, 2026 WL 2595234, at *3.[2]

Plaintiff has unleashed a flood of legal proceedings against APA (and others) aimed at challenging his 2011 separation from American. *See, e.g.*, *Meadows v. Am. Airlines*, No. 1:24-CV-20518, 2024 WL 5248006, at *1 (S.D. Fla. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 5245945 (S.D. Fla. Dec. 30, 2024) (noting at least "33 litigation matters" brought by

---

[1] For ease of reference, we will refer to this as the "five-year rule."

[2] Plaintiff alleges that he remains an employee at American and that his separation from American in 2011 violated the CBA between APA and American. Compl. ¶¶ 19-20. However, he is precluded from asserting either allegation. First, the Second Circuit and the Southern District of Florida have held that Plaintiff is estopped from asserting that he remains employed at American. *See In re AMR Corp*., No. 11-CV-15463, 2016 WL 1559294, at *6 (Bankr. S.D.N.Y. Apr. 14, 2016), *subsequently aff'd*, 764 F. App'x 88 (2d Cir. 2019); *Meadows v. Am. Airlines*, No. 1:24-CV-20518, 2024 WL 5248006, at **8-15 (S.D. Fla. Oct. 22, 2024), *report and recommendation adopted*, 2024 WL 5245945 (S.D. Fla. Dec. 30, 2024). Second, collateral estoppel precludes Plaintiff from asserting that his 2011 separation violated the CBA because Plaintiff fully litigated the issue in his case against APA in the District of Utah, in which the court concluded that "the CBA . . . expressly allows American to remove a pilot from the Seniority List if the pilot exhausts his or her sick leave of absence," and "[t]hus, when American removed Plaintiff from the Seniority List, it acted within the confines of the CBA." Order, *Meadows v. APA*, No. 2:14-CV-00115, at 6-7 (D. Utah Nov. 3, 2014), ECF No. 35; *see, e.g.*, *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 284 (2d Cir. 2012) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.").

Plaintiff, most concerning his termination from American in 2011); *In re AMR Corp.*, No. 11-CV-15463, 2016 WL 1559294, at **7-9 (Bankr. S.D.N.Y. Apr. 14, 2016), *aff'd*, 764 F. App'x 88 (2d Cir. 2019). Two lawsuits that Plaintiff filed against APA in the District of Utah and the Northern District of Illinois were dismissed. *Meadows v. APA*, No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015), *aff'd order*, 822 F. App'x 653 (10th Cir. 2020); *Meadows v. Am. Airlines*, No. 1:15-CV-03899, 2016 WL 4011231 (N.D. Ill. July 27, 2016). A court recently granted summary judgment for APA in a third lawsuit that Plaintiff filed in the Southern District of Florida. *Meadows v. APA*, No. 1:17-CV-22589, 2026 WL 2595234 (S.D. Fla. May 25, 2026) (report and recommendation); *Meadows v. APA*, 1:17-CV-22589 (S.D. Fla. Aug. 18, 2026), ECF No. 304 (adopting report and recommendation and granting summary judgment).

This lawsuit—Plaintiff's fourth federal lawsuit against APA—focuses on alleged events in 2024 and 2025:

1. <u>January 2025 Settlement Agreement.</u> On January 15, 2025, APA and American agreed to settle a contractual grievance, called Presidential Grievance 23-031, that had been filed pursuant to the grievance procedure under the CBA. That grievance asserted that American had violated the CBA by failing to give pilots notice before terminating them pursuant to the CBA's five-year rule. Ex. A, at 1 (settlement agreement).[3] Presidential Grievance 23-031 was a successor to DFW Base Grievance 12-012, which was a grievance the Chair and Vice Chair of APA's

[3] When ruling on a motion to dismiss under Rule 12(b)(6), a court may consider a document the plaintiff relies on in the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). APA accordingly attaches the settlement agreement to this brief. *See* 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 1327 (4th ed. 2026) ("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, the defendant may be permitted to introduce the document as an exhibit to a motion attacking the sufficiency of the pleading if the plaintiff has referred to the item in the complaint and it is central to the affirmative case.").

Dallas/Fort Worth ("DFW") Base had filed in 2012 on behalf of DFW-based pilots. *Id.* On March 23, 2023, APA's then-president Ed Sicher converted DFW Base Grievance 12-012 into an "expedited" presidential grievance (Presidential Grievance 23-031) on behalf of all pilots at American. Compl. ¶ 26; Ex. A, at 1. Attorney Sue Edwards represented APA in connection with Presidential Grievance 23-031. Compl. ¶¶ 7, 42.

The January 2025 settlement stated that American and APA had identified four individuals, including Plaintiff, who had been terminated under the five-year rule and had subsequently re-obtained the medical certification required to fly commercial aircraft. Ex. A, ¶ 1. The settlement agreement further stated that whereas Plaintiff had received advance notice before his termination pursuant to the five-year rule, the other three individuals had not. *Id.* ¶ 2. The settlement agreement created a potential path to reinstatement for the three individuals who had not received pre-termination notice but did not provide a path to reinstatement for Plaintiff and specifically stated that Plaintiff was "not eligible for reinstatement under this Agreement." *Id.*

2. Plaintiff's 2024 Lawsuit Against American. In 2024, Plaintiff filed a lawsuit against American in the Southern District of Florida alleging violations of the Americans with Disabilities Act (ADA). *See Meadows v. Am. Airlines*, No. 1:24-CV-20518, 2024 WL 5248006 (S.D. Fla. Oct. 22, 2024) (report and recommendation recommending granting American's motion to dismiss). In or around May 2024, APA's then-president Ed Sicher asked attorney Sue Edwards—who at the time represented APA in connection with Presidential Grievance 23-031—whether she would assist Plaintiff in his ADA lawsuit against American. Compl. ¶ 31. Plaintiff alleges that he entered into an attorney-client relationship with Ms. Edwards and that APA (via Mr. Sicher) reneged on its agreement to retain and pay Ms. Edwards to represent him in the ADA suit because Plaintiff refused to drop a separate lawsuit he had filed against APA—*i.e.*, the lawsuit Plaintiff had filed

against APA in the Southern District of Florida in 2017. Compl. ¶¶ 31-32.[4]

3. May 2025 Communication Regarding Membership Status. On May 1, 2025, APA President Nick Silva sent Plaintiff a letter denying his request to speak at an upcoming meeting of APA's board of directors. *Id.* ¶ 43. Mr. Silva's letter explained that, because Plaintiff had "not been employed by American Airlines as a flight deck crewmember since 2011" and had been "denied reinstatement by the Company" in 2019 "after regaining [his] first class medical certificate," he was "not qualified to retain any membership status" in APA under APA's Constitution & Bylaws and was therefore ineligible to speak at the meeting. Ex. B (Silva letter).

* * *

Based on those allegations, Plaintiff asserts ten claims against APA.[5]

Counts I and II allege that APA violated the Americans with Disabilities Act. Compl. ¶¶ 44-47. Count I alleges that APA "unlawfully subjected [Plaintiff] to adverse employment actions, including excluding him from reinstatement opportunities offered to other nondisabled or differently disabled pilots in the January 2025 settlement." Compl. ¶ 45. Count II alleges that in retaliation for Plaintiff's activities "opposing unlawful discrimination," APA terminated his legal representation by Sue Edwards, entered into the January 2025 settlement agreement, and terminated his union membership. Compl. ¶ 47.

---

[4] APA accepts these allegations as true for purposes of its motion to dismiss under Rule 12(b)(6). However, we note that the parties have litigated this issue in the Southern District of Florida case, and the court found that Plaintiff was never a client of Ms. Edwards; rather, Ms. Edwards, who was "outside counsel for APA and represented APA in relation to [Presidential] Grievance 23-031," had "established a prospective client relationship with Plaintiff," and "when Ms. Edwards realized that the instant case [against APA] was still pending, she declined to represent Plaintiff because it would create a conflict of interest." *Meadows v. APA*, No. 1:17-CV-22589, 2026 WL 2595132, at *6 (S.D. Fla. Apr. 15, 2026).

[5] Plaintiff initially asserted claims against American, APA President Nick Silva, and Sue Edwards, but he has voluntarily dismissed those claims. *See* ECF Nos. 28-30.

Count III alleges that APA's settlement of Presidential Grievance 23-031 violated its duty of fair representation toward Plaintiff under the Railway Labor Act. Compl. ¶¶ 48-49.

Counts IV, V, VI, and VII allege claims under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). Compl. ¶¶ 50-57. Title I of the LMRDA sets forth a "bill of rights" for union members. 29 U.S.C. § 411(a)(1)-(5). Counts IV, V, VI, and VII allege that APA violated Plaintiff's rights under Title I of the LMRDA by terminating his legal representation by Sue Edwards, entering into the January 2025 settlement agreement, and terminating his union membership. Compl. ¶¶ 50-57.

Counts VIII, IX, and X allege state-law claims against APA. Counts VIII and IX are breach-of-contract claims alleging that APA violated contractual obligations under its Constitution and Bylaws by failing to advance three grievances and by settling Presidential Grievance 23-031. Compl. ¶¶ 58-61. Count X is a civil conspiracy claim alleging that APA, American, APA President Nick Silva, and Sue Edwards conspired to discriminate and retaliate against Plaintiff by settling Presidential Grievance 23-031 in January 2025. Compl. ¶¶ 62-64.

## LEGAL STANDARDS

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a complaint must include allegations that, "if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). Although factual allegations are construed in the light most favorable to the plaintiff, the plaintiff ultimately "bears the burden" to allege facts to establish jurisdiction. *DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001). "In deciding a motion to dismiss . . . for lack of personal jurisdiction, the district court may consider materials outside the pleadings, including affidavits and other written materials." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276 (2d Cir. 2024) (quotation marks omitted), *cert. denied*, 145 S. Ct. 1130 (2025).

To survive a Rule 12(b)(3) motion to dismiss for improper venue, "the plaintiff has the burden of showing that venue in the forum district is proper." *Cold Spring Harbor Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011). "A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of personal jurisdiction," accepting factual allegations as true and construing "all reasonable inferences in the plaintiff's favor." *Id*. "Whether to dismiss an action for improper venue is in the district court's sound discretion." *Id.* (citing *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993)).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a court must "accept[ ] as true the factual allegations in the complaint and draw[ ] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009). A court may consider, in addition to the complaint itself, "documents that are incorporated [into the complaint] by reference, documents which are integral to the pleading, and documents of which the Court takes judicial notice, including those filed in another court proceeding." *Perez v. Horseracing Integrity & Safety Auth.*, 797 F. Supp. 3d 155, 158 (E.D.N.Y. 2025).

## ARGUMENT

Plaintiff's complaint should be dismissed because this Court lacks personal jurisdiction over APA. Dismissal is also warranted because venue is improper in this district. The Court need not consider anything beyond jurisdiction or venue, but even setting aside those defects, the

complaint should also be dismissed for failing to state a claim upon which relief can be granted.

## I. This Court Lacks Jurisdiction and Venue Is Improper in This District

### A. The Court Lacks Personal Jurisdiction over APA

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994). The Supreme Court has recognized two forms of personal jurisdiction, general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). "Under New York law, a court may exercise general jurisdiction over a defendant under N.Y. C.P.L.R. § 301 or specific jurisdiction under New York's long arm statute, N.Y. C.P.L.R. § 302." *Hecklerco, LLC v. YuuZoo Corp. Ltd.*, 252 F. Supp. 3d 369, 375 (S.D.N.Y. 2017). Even where these statutes authorize jurisdiction, jurisdiction must also comport with constitutional due process principles. *See, e.g.*, *Reich v. Lopez*, 858 F.3d 55, 62 (2d Cir. 2017).

#### *1. General Jurisdiction*

A court may exercise general jurisdiction over a defendant "based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). A court may exercise general jurisdiction only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home" there. *Daimler*, 571 U.S. at 127. In *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court held that "except in a truly exceptional case, a corporate defendant may be treated as 'essentially at home,'. . . only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (discussing *Daimler*). As this Court has recognized, "[t]he same test applies to unincorporated entities." ECF No. 46, at 3 (citing *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016)); *see also Parker v. Bursor*, No. 24-CV-0245,

2024 WL 4850815, at *2 & n.2 (S.D.N.Y. Nov. 21, 2024) (applying *Daimler* to an unincorporated association); *Elliot v. HBO Home Ent. Corp.*, No. 4:23-CV-01611, 2024 WL 5119283, at *5 (E.D. Mo. Sept. 30, 2024) (same); *Keanaaina v. NCAA*, No. 26-CV-01283, 2026 WL 1213385, at *4 & n.3 (D. Colo. May 4, 2026) ("Courts routinely conclude that *Daimler*'s 'at home' test applies to non-corporate entities, as well.").

Plaintiff does not—and cannot—allege facts establishing general jurisdiction in New York. APA's headquarters and principal place of business are in Texas, Compl. ¶ 5, and the complaint does not allege anything suggesting that this is an "exceptional case." *Brown*, 814 F.3d at 628; *see* ECF No. 46, at 3. Plaintiff alleges that APA "maintains a pilot Domicile and represents members in New York," Compl. ¶ 5, but as this Court has correctly concluded, "representation of union members in a state does not itself place a union 'at home' there." ECF No. 46, at 3 (citing *DiOrio v. Nat'l Educ. Ass'n*, No. 23-CV-246, 2023 WL 7300080, at *4 (D.R.I. Nov. 6, 2023)). An entity such as APA is not at home in every jurisdiction in which its "contacts can be said to be in some sense continuous and systematic" but rather where it was formed and where it has its principal place of business. *Daimler*, 571 U.S. at 138-39 (quotation marks omitted); *see, e.g.*, *Elliot*, 2024 WL 5119283, at *5 (applying *Daimler*). Just as APA is not at home in Florida merely because it maintains a domicile and represents members in that state, ECF No. 46, at 3, neither is it at home in New York. This Court lacks general jurisdiction over APA.

*2. Specific Jurisdiction*

Specific personal jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation modified). To plead specific jurisdiction, a plaintiff must allege that the lawsuit arises out of contacts "the

'defendant *himself*' creates with the forum state." *Walden*, 571 U.S. at 284. The "defendant's suit-related conduct must create a substantial connection with the forum." *Id.* New York's long-arm statute authorizes New York courts to exercise specific jurisdiction over a "non-domiciliary" defendant when the cause of action asserted by the plaintiff arises from (1) the defendant's transaction of business within New York; (2) the defendant's commission of a tortious act within New York; (3) the defendant's commission of a tortious act outside New York that causes injury to person or property within New York; or (4) the defendant's ownership, use, or possession of real property situated within New York. N.Y. C.P.L.R. § 302(a).

Plaintiff does not—and cannot—allege facts that permit the exercise of jurisdiction over APA under any prong of the New York long-arm statute. Plaintiff's allegations regarding the January 2025 settlement agreement, the termination of his representation by Sue Edwards, and the termination of his APA membership do not have any connection with New York—let alone a connection between APA and New York from which the causes of action asserted by Plaintiff in his complaint arise.[6] Moreover, even if Plaintiff were domiciled in New York, which he is not, the Court lacks specific jurisdiction over APA under due process principles. *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 745 (2d Cir. 2020); *Johnson v. UBS AG*, 791 F. App'x 240, 242-43 (2d Cir. 2019). This Court lacks personal jurisdiction over APA, and the case should be dismissed for this reason alone.

---

[6] Plaintiff alleges that "because Plaintiff resides in this District . . . a substantial part of the harm and injury giving rise to this action has been suffered by Plaintiff in this District." Compl. ¶ 10. Contrary to the allegations in complaint, Plaintiff has informed the Court that he does not reside in New York. *See* ECF No. 40, at 3 ("Plaintiff is domiciled in Miami Beach, Florida; his temporary stay in New York to care for his elderly father did not alter his permanent domicile."); *see also* ECF No. 18.

B. Venue Is Not Proper in This Court

In addition to dismissal for a lack of personal jurisdiction, this case should also be dismissed for the independent reason that venue is improper in this district.

Venue is determined by statute. *See* 14D Charles A. Wright & Arthur R. Miller, *Fed. Practice & Proc.* § 3801 (4th ed. 2026). "[T]he purpose of venue statutes is to protect defendants against the risk that plaintiffs will select an unfair or inconvenient place for trial." *Sompo Japan Ins. Co. of Am. v. Yang Ming Marine Transp. Corp*., 578 F. Supp. 2d 584, 594 (S.D.N.Y. 2008). To accomplish that purpose, "Congress has established both 'general venue' statutes, *see* 28 U.S.C. §§ 1391-92, and 'special venue' statutes that expressly cover venue for a particular type of action." *Id*. For any particular cause of action, "[s]pecial venue provisions control over general venue statutes." *Id.* That means, "[w]hen a special venue statute is restrictive, and not permissive in nature, the action may *only* be brought in a district permitted by the restrictive special venue provision." *Id.* at 595 (emphasis added).

Plaintiff asserts four claims under Title I of the LMRDA. That statute contains a restrictive special venue provision providing that any action "against a labor organization *shall be brought* in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located." 29 U.S.C. § 412 (emphasis added); *see McPartland v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus. of U. S. & Canada*, 85 F.R.D. 727, 730 (E.D.N.Y. 1980) (dismissing LMRDA claim for improper venue). Plaintiff does not allege any violation of the LMRDA that occurred in this district, and APA is not headquartered in this district. Compl ¶ 5. Venue over Plaintiff's LMRDA claims is thus plainly lacking in this district.

The lack of venue for Plaintiff's LMRDA claims compels dismissal of the entire complaint, including Plaintiff's non-LMRDA claims. "[W]here a special venue provision lays venue of a

claim in certain specified districts, such provision controls venue for all claims arising out of the same nucleus of operative facts." *Sompo*, 578 F. Supp. 2d at 595 (citing *Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.,* 272 F. Supp. 2d 784, 790 (E.D. Wis. 2003)); *see also Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009) ("Where a special venue provision places venue in a specific district, such a provision controls venue for that claim, even where it arises from a common nucleus of operative fact as a properly situated claim."); *Michael v. Thompson*, No. 07-0838-DRH, 2007 WL 4390342, at *4 (S.D. Ill. Dec. 14, 2007) (applying this principle to dismiss a suit including improperly venued LMRDA claims). Here, Plaintiff's LMRDA claims (Counts IV, V, VI, and VII) and non-LMRDA claims (Counts I, II, III, VIII, IX, and X) arise out of the same nucleus of operative facts—the January 2025 settlement, the alleged termination of his membership, and the alleged termination of his legal representation by Sue Edwards. This Court therefore lacks venue over all claims in the complaint.[7]

**C. The Jurisdictional and Venue Defects in the Complaint Warrant Dismissal**

Transfer of this case would not be "in the interest of justice" under 28 U.S.C. § 1406(a) and thus the Court should dismiss the complaint. This case is part of a pattern of vexatious and harassing litigation against APA that has spanned years, with Plaintiff repeatedly asserting unfounded and repetitive claims against APA. *See Blakely v. Lew*, No. 13-CV-2140, 2013 WL 6847102, at *4 (S.D.N.Y. Dec. 30, 2013), *aff'd*, 607 F. App'x 15 (2d Cir. 2015) ("A court may

[7] Venue over the non-LMRDA claims is also lacking under the general venue statute, 28 U.S.C. § 1391(b)(1)-(3). First, this is not "a judicial district in which any defendant resides," 28 U.S.C. § 1391(b)(1), because, as discussed above, this is not a "judicial district in which [APA] is subject to the court's personal jurisdiction with respect to the civil action in question," 28 U.S.C. § 1391(c)(2) (defining "residency" for an "an entity with the capacity to sue and be sued"). Second, this is not "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Third, this is not a case in which "there is no district in which [the] action may otherwise be brought." 28 U.S.C. § 1391(b)(3).

decline to order a transfer if it determines that the case was filed in bad faith or as a form of harassment."); *see also Williams v. Nathan*, 897 F. Supp. 72, 77 (E.D.N.Y. 1995), *aff'd*, 101 F.3d 687 (2d Cir. 1996) (declining to transfer where three prior legal proceedings had been dismissed, because that "dubious history" suggested harassment). Indeed, as APA has explained, Plaintiff tried to use this case to evade unfavorable rulings in another case against APA in the Southern District of Florida. *See* ECF No. 38, at 2; ECF No. 36, at 1-2, 3. The obvious jurisdictional and venue defects in this case, as well as Plaintiff's apparent attempt to justify his lawsuit in this Court through a false allegation that he resides in this district—which he abandoned when he found it expedient to do so (ECF No. 40, at 3)—provide further indications that this lawsuit is a vehicle to harass APA. *See Williams*, 897 F. Supp. at 77 (declining to transfer where "plaintiff's behavior has caused me to doubt the veracity of his representations"). Dismissal is also appropriate because transfer would be futile given the complaint's failure to state viable claims, as discussed below. *See, e.g.*, *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) (explaining that dismissal is appropriate when the case would be subject to dismissal on transfer). APA has been required to expend considerable resources that it otherwise could have devoted to representing its members to instead defend the barrage of litigation brought by Plaintiff in this case and others. The interests of justice require dismissal.

## II. The Complaint Fails to State Claims Upon Which Relief Can Be Granted

In the alternative, even setting aside the jurisdictional and venue defects in the case, each of the claims in Plaintiff's complaint must be dismissed for failure to state a claim.

### A. Plaintiff's ADA Claims (Counts I-II) are Time-Barred and Fail on the Merits

Plaintiff's claims against APA under the Americans with Disabilities Act (ADA) in Counts I and II are time-barred and fail to state a claim on the merits. Both claims should be dismissed.

*1. Count I Is Time-Barred*

Count I alleges that APA violated the ADA by subjecting him to "adverse employment actions" that were "motivated by discriminatory animus." Compl. ¶ 45. The only action alleged in Count I is APA's "excluding him from reinstatement opportunities offered to other nondisabled or differently disabled pilots in the January 2025 settlement." *Id*. "To state a viable gender, age, or disability discrimination claim, [Plaintiff] must have filed a charge of discrimination with the Equal Employment Opportunity Commission ('EEOC') within 300 days of the last allegedly unlawful employment practice." *Vallimont v. Eastman Kodak Co.*, 198 F.3d 235, 235 (2d Cir. 1999). The unlawful employment practice alleged by Plaintiff, the settlement of Presidential Grievance 12-031, took place on January 15, 2025. Ex. A. Because Plaintiff filed a charge with the EEOC on December 30, 2025, Compl. ¶ 11, more than 300 days after the allegedly unlawful employment practice, Count I is untimely.

*2. Count II Is Time-Barred and Otherwise Fails to State a Claim*

Count II alleges that APA violated the ADA by "terminating [Plaintiff's] legal representation, entering into a collusive settlement to extinguish his rights, and terminating his union membership." Compl. ¶ 47. According to Plaintiff, those actions were retaliatory because he had "engaged in statutorily protected activities by opposing unlawful discrimination." *Id.*

Plaintiff's claim based on APA's termination of his representation by Ms. Edwards (on June 14, 2024) and the settlement agreement (on January 15, 2025) are time-barred for the same reasons that Count I is untimely. Plaintiff did not file a charge with the EEOC until December 30, 2025, more than 300 days after each of those actions. Compl. ¶ 11 & p.30; *Vallimont*, 198 F.3d at 235.

As for Plaintiff's claim that the May 2025 membership letter was retaliatory, even assuming Plaintiff has alleged that he engaged in an activity that is protected under the ADA, Plaintiff fails

to allege non-conclusory facts that would plausibly establish a causal link between President Silva's interpretation of APA's Constitution and Bylaws and that activity. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *22 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016). Here, Plaintiff has not alleged temporal proximity. His laundry list of alleged "protected advocacy," Compl. ¶ 24, includes no specific activities that occurred on a date close to May 2025. Nor has Plaintiff made sufficient allegations of animus. "A bare assertion of discriminatory animus, without any specific factual support, is not sufficient to state a claim under the ADA." *Moore v. City of New York*, No. 15-CV-6600, 2017 WL 35450, at *19 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017). Plaintiff alleges no factual support for the bare and conclusory allegation that Mr. Silva's letter was "motivated by discriminatory animus toward Plaintiff's psychiatric condition." Compl. ¶ 45. Indeed, the complaint is entirely silent as to facts that would evidence Mr. Silva's attitude towards Plaintiff's alleged disability. The only allegations that arguably suggest animus are those alleged to have been made by executives at *American*, not APA. *Id.* ¶¶ 33, 45.

B. Plaintiff's Duty-of-Fair-Representation Claim (Count III) Is Time-Barred and Otherwise Fails to State a Claim

Under the Railway Labor Act, APA owes a duty of fair representation to the employees whom it represents as exclusive bargaining representative. *See, e.g.*, *In re AMR Corp.*, 536 B.R. 360, 366 (Bankr. S.D.N.Y. 2015), *aff'd*, 610 B.R. 434 (Bankr. S.D.N.Y. 2019). Plaintiff alleges that APA violated its duty when it settled Presidential Grievance 23-031. Compl. ¶¶ 37, 40-41, 49.

The statute of limitations for a duty-of-fair-representation claim under the Railway Labor Act is six months. *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1106 (2d Cir. 1991). American and APA settled Grievance 23-031 in January 2025, more than a year before the complaint was filed. Compl. ¶ 37. Count III is therefore untimely.

Count III also fails on the merits. To allege a viable duty-of-fair-representation claim, a plaintiff must allege facts to show that a union's conduct toward the plaintiff was "arbitrary, discriminatory, or in bad faith." *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). "Judicial review of union action . . . 'must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" *Id.* Accordingly, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' . . . as to be irrational." *Id.* at 129. "A union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." *Id.*

APA did not violate its duty-of-fair-representation by settling Presidential Grievance 23-0310—which alleged that American violated the CBA by terminating pilots under the five-year rule without providing notice—in a way that only benefitted pilots who had not received notice as alleged in the grievance. Nor can Plaintiff show that settlement of the grievance was discriminatory when he cannot show that the settlement benefitted any other pilot that was similarly situated to him (*i.e.*, a pilot who had received notice in advance of their termination under the five-year rule). *Id.* at 130.

C. Plaintiff's LMRDA Claims (Counts IV-VII) Fail as a Matter of Law

Plaintiff makes four claims under Title I of the LMRDA. Counts IV and V allege that APA infringed his rights under the LMRDA to participate in union governance and to freedom of speech,

*see* 29 U.S.C. § 411(a)(1)-(2), when APA determined, on May 1, 2025, that Plaintiff no longer qualified as a member of the union. Count VI alleges that various actions by APA, including the membership determination, were taken in retaliation for Plaintiff exercising his "right to sue" under the LMRDA, 29 U.S.C. § 411(a)(4). Count VII alleges that the membership determination constituted illegal union discipline that was imposed without notice or a "full and fair hearing" as required by the LMRDA, 29 U.S.C. § 411(a)(5).

Each of those claims fails as a matter of law. APA reasonably determined that Plaintiff no longer qualified as a member of APA because he did not meet the requirements for APA membership as set forth in APA's Constitution and Bylaws, and Plaintiff fails to allege facts plausibly establishing a causal connection between APA's actions and any protected activity.

#### 1. *Counts IV, V, and VII Fail to State a Claim Because Plaintiff Did Not Qualify for APA Membership*

Title I of the LMRDA "governs the relationship among unions and their members." *Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1056 (2d Cir. 1992). It does not establish the criteria for union membership, leaving that determination to the union itself. *See* 29 U.S.C. § 402(o) (a union member is "any person who has fulfilled the requirements for membership"); *Phelan*, 973 F.2d at 1057 (looking to the union's constitution and bylaws for those requirements). Indeed, the LMRDA expressly permits unions to enact "reasonable rules" affecting membership rights. 29 U.S.C. §§ 411(a)(1), (a)(2). Moreover, as the Second Circuit has held, "[a] Union's interpretation of its own constitution is entitled to great deference[] in order to avoid interference with internal union affairs . . . and [t]herefore, the interpretation of bylaw provisions by Union officials will be upheld unless patently unreasonable." *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 470 (2d Cir. 1999).

APA's governing document is its Constitution and Bylaws. *See* Ex. C (Constitution and

Bylaws). According to Article III of the Constitution and Bylaws, to qualify as a member of APA, an individual must be "qualified as a flight deck operating crewmember with American Airlines, Inc., and is accruing seniority, furloughed, or on a leave of absence." Ex. C, at 10 (Art. III.1.A).

As of 2025, Plaintiff did not satisfy those requirements. American terminated Plaintiff and removed him from the seniority list in 2011. As APA President Silva explained in his May 1, 2025, letter to Plaintiff, Plaintiff did not qualify as a member because he had "not been employed by American Airlines as a flight deck crewmember since 2011 and then subsequently sought and [was] denied reinstatement by the Company after regaining [his] first class medical certificate." Ex. B. Plaintiff cannot plausibly establish that it was patently unreasonable for APA to apply the membership requirements stated in its Constitution & Bylaws to exclude from membership an individual who had not been employed by American for nearly a decade-and-a-half, had regained the ability to operate commercial aircraft (by obtaining the necessary FAA medical certificate), and who no longer had any prospect of returning to employment at American after his request for reinstatement was denied. *See, e.g., Taylor v. Great Lakes Seamen's Union, Loc. 5000, United Steelworkers of Am.*, 701 F.2d 590, 592 (6th Cir. 1983) (finding "nothing 'unreasonable' about a rule which, in effect, guarantees that internal union affairs will be governed by those whose interests are most at stake-workers presently employed"). In short, Plaintiff has not alleged facts that plausibly establish that APA's determination that he did not qualify for membership in APA under the terms of the APA Constitution and Bylaws was patently unreasonable, and thus the counts predicated on the determination that he did not qualify for membership—Counts IV, V, and VI—do not state claims for relief.[8]

---

[8] Count VII fails on the merits for an additional reason. Count VII alleges that the membership determination constituted union discipline under 29 U.S.C. § 411(a)(5), and Plaintiff failed to receive the notice and hearing required before the imposition of union discipline. But the

*2. Count VI Fails to State a Claim*

In Count VI, Plaintiff alleges that in retaliation for filing suit against APA in the Southern District of Florida in 2017, APA settled Presidential Grievance 23-031, notified him that he did not qualify as a member of APA, and terminated his representation by outside counsel in a 2024 lawsuit against American. *See* 29 U.S.C. § 411(a)(4). To successfully plead LMRDA retaliation, a plaintiff must allege that they engaged in protected conduct, that the conduct was the cause of the union acting against them, and damages. *Commer v. McEntee*, No. 00-CV-07913, 2006 WL 3262494, at *10 (S.D.N.Y. Nov. 9, 2006). Plaintiff fails to plausibly allege a connection between the allegedly retaliatory acts and his prosecution of a lawsuit against APA in the Southern District of Florida. Plaintiff has pursued litigation against APA for well over a decade in four lawsuits in four different districts. Plaintiff cannot plausibly claim that APA has retaliated against Plaintiff for prosecuting those lawsuits merely because APA has taken action that may be adverse to Plaintiff during that lengthy period. Plaintiff's allegations fail to cross "the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

D. <u>Plaintiff's Breach-of-Contract Claims (Counts VIII-IX) Are Preempted by the Railway Labor Act</u>

Counts VIII and IX are state-law breach-of-contract claims, alleging that APA violated its contractual obligations to Plaintiff under APA's Constitution and Bylaws. Count VIII alleges that

---

May 1, 2025, membership determination was not "discipline" that is subject to the requirements of § 411(a)(5). "Union action affecting a membership right constitutes 'discipline' for purposes of triggering [§ 411(a)(5)] where that action is 'imposed as a sentence on an individual by a union in order to punish a violation of union rules.'" *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 156 F.3d 354, 361 (2d Cir. 1998). Such discipline is "retrospective in focus, administering penalties in relation to the gravity of the past wrong." *Id.* (holding that the remedial disqualification of a candidate for union office was not discipline). Here, there are no allegations to suggest that Plaintiff was expelled from union membership as a punishment for violating union rules. The membership letter was a forward-looking determination that Plaintiff did not meet the requirements for membership to speak at board meetings.

APA violated the Constitution and Bylaws by failing to "timely prosecute" three grievances (Grievance 12-011, DFW Base Grievance 12-012, and Presidential Grievance 23-031). Compl. ¶ 59. Count IX alleges that APA's settlement of Presidential Grievance 12-031 violated APA's Constitution and Bylaws because the settlement "abrogated Plaintiff's seniority rights in a disparate manner compared to other similarly situated pilots." Compl. ¶ 61. Those claims all fail because they are preempted by the Railway Labor Act.

The "rights and duties of unions in carrying out their representational functions is an area where 'the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law.'" *Bensel v. APA*, 387 F.3d 298, 322 (3d Cir. 2004) (quoting *Condon v. Local 2944, United Steelworkers*, 683 F.2d 590, 594-95 (1st Cir. 1982)). A state-law claim "is subsumed by the duty of fair representation, and therefore preempted, if it imposes an obligation already imposed by the duty of fair representation." *Morillo v. Grand Hyatt N.Y.*, No. 13-CV-7123, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014); *see also Figueroa v. Foster*, 864 F.3d 222, 230 (2d Cir. 2017) (duty of fair representation preempts state-law breach-of-contract claims).

Plaintiff's breach-of-contract claims are plainly preempted by the Railway Labor Act. The fair and non-discriminatory resolution of grievances is a core requirement of the duty of fair representation. *See, e.g.*, *Scibilia v. Verizon Commc'ns, Inc.*, 493 F. App'x 225, 227 (2d Cir. 2012). Indeed, Plaintiff himself has made clear that the allegations undergirding his breach-of-contract claims in Counts VIII and IX are the same allegations undergirding his duty-of-fair representation claims in this and other lawsuits. Plaintiff's claims that APA failed to timely prosecute Grievance 12-011 and DFW Base Grievance 12-012 are functionally equivalent to the duty-of-fair-representation claims that Plaintiff brought (and lost) in previous lawsuits. *See Meadows v. APA*,

No. 2:14-CV-00115, 2015 WL 13650044 (D. Utah Apr. 27, 2015) (Grievance 12-011); *Meadows v. APA*, 2026 WL 2595234, at *8 (S.D. Fla.) (Grievance 12-012).[9] And Plaintiff's breach-of-contract claim predicated on the settlement of Presidential Grievance 23-031 rehashes the duty-of-fair-representation claim he alleges in Count III in this case. The breach-of-contract claims in Counts VIII and IX are preempted by the Railway Labor Act.[10]

E. Plaintiff's Civil Conspiracy Claim (Count X) Fails for Several Reasons

Finally, Plaintiff alleges that American entered into a civil conspiracy with American, APA president Nick Silva, and Ms. Edwards (none of whom remain defendants in this case) to "unlawfully discriminate and retaliate against Plaintiff" in violation of the ADA. Compl. ¶ 63.

Insofar as the complaint alleges a civil conspiracy to discriminate against Plaintiff on the basis of his disability, *see id.*, that claim fails because a civil conspiracy claim cannot be based on a conspiracy to violate the ADA. "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). In order to state a claim for civil conspiracy, therefore, a plaintiff must "allege a primary tort." *Elevation Health, LLC v. Wong*, No. 22-CV-10308, 2023 WL 3842256, at *4 (S.D.N.Y. June 6, 2023). A civil conspiracy claim cannot be based on a statutory claim that did not exist at common law, including claims under civil rights statutes like the ADA. *See Monsanto v. Elec. Data Sys. Corp.*, 529 N.Y.S.2d 512, 515 (2d. Dep't 1988) ("an action created by statute, which did not exist at common law, . . . cannot give rise to tort liability"); *see also, e.g.*, *Findlay v. CitiMortg., Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011)

---

[9] For the same reason, these claims are also barred by res judicata. "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002).

[10] The Southern District of Florida recently concluded that similar breach of contract claims asserted by Plaintiff were preempted. *See Meadows v. APA*, 2026 WL 2595234, at *9.

(reaching the same conclusion). Moreover, a civil conspiracy claim cannot be brought in the context of an ADA claim because it would create individual liability not otherwise permitted by the ADA. *See Monsanto*, 529 N.Y.S.2d at 515; *see also Yerdon v. Poitras*, 120 F.4th 1150, 1155 (2d Cir. 2024) (no individual liability under the ADA).

To the extent the complaint alleges a conspiracy to extinguish Plaintiff's grievance rights, *see* Compl. ¶ 64, that claim is preempted by the Railway Labor Act for the same reasons that statute preempts Plaintiff's state-law contract claims. *See supra* pp. 20-21; *see also Smith v. Grobet File Co. of Am.*, No. 02-CV-4149, 2003 WL 22047869, at *7 (S.D.N.Y. Aug. 29, 2003) (civil conspiracy claim preempted as alleging a breach of the duty of fair representation).

## CONCLUSION

The Court should dismiss the complaint in its entirety against Allied Pilots Association.

Respectfully submitted,

*/s/ Joshua B. Shiffrin*

Joshua B. Shiffrin*
John M. Pellettieri
Lane M. Shadgett*
BREDHOFF & KAISER PLLC
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Email: jshiffrin@bredhoff.com
Email: jpellettieri@bredhoff.com
Email: lshadgett@bredhoff.com
*Admitted *Pro Hac Vice*

*Counsel for Defendant Allied Pilots Association*

Dated: September 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all parties via ECF. In addition, a true and correct copy of the foregoing document was served on *pro se* Plaintiff via first class mail and email on September 22, 2026, as follows:

Lawrence Meadows
2110 Jackson Avenue
Seaford, NY 11783
516-982-7718
lawrencemeadows@yahoo.com

*/s/ Joshua B. Shiffrin*
Joshua B. Shiffrin